

Office of the Attorney General
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

FILED
DISTRICT COURT OF GUAM

JUL 13 2004

MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

THE GOVERNMENT OF GUAM, by and through the ATTORNEY GENERAL OF GUAM,

        Plaintiff,

        vs.

FELIX P. CAMACHO, in his official capacity as the Governor of Guam,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action Case No. **04-00035**

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Government of Guam has moved the Court for an Order setting date for a hearing on plaintiff's Motion for Preliminary Injunctive Relief seeking the following relief:

    1. That the Court issue a judgment declaring that defendant Governor Felix P. Camacho is usurping, intruding, and unlawfully holding and exercising the functions, powers and duties of the Office of Attorney General; and ordering defendant Governor Felix P. Camacho enjoined and restrained him from exercising the powers and duties of said office;

1

ORIGINAL

2. That the Court issue a declaratory judgment that the appointment or attempted appointment of a "special prosecutor," however denominated, by the Governor is an impermissible violation of the doctrine of separation of powers, and in particular, a violation of the powers and duties of the Office of Attorney General as "chief legal officer" of the Government of Guam, and thereby violates the Organic Act of Guam, 48 U.S.C. § 1421; and

3. That the Court issue a preliminary injunction enjoining the Governor, his successors, agents, employees, and all persons acting in concert with him from exercising or attempting to exercise any of the powers and duties of the Office of Attorney General by, *inter alia*, exercising any authority with respect to the investigation and/or prosecution of suspected crimes or criminal activity within the Territory of Guam, said authority being entirely within the powers and duties exclusively reserved to the Attorney General as Chief Legal Officer by Congress; or by appointing or attempting to appoint a "special prosecutor," however denominated, to investigate and prosecute allegations of criminal wrongdoing within the Territory of Guam.

## Applicability of the Writ of *Quo Warranto*

"An action in *quo warranto* is an extraordinary proceeding, addressed to preventing a continued exercise of authority unlawfully asserted." *State ex rel. Woods v. Block*, 189 Ariz. 269, 272, 942 P.2d 428, 431 (1997). "Historically *quo warranto* was 'the prerogative writ by which the government (could) call upon any person to show by what warrant he holds a public office or exercise a public franchise.' *Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 545-546, 35 S.Ct. 881, 883, 59 L.Ed. 1446 (1915); *Wirtz v. National Maritime Union of*

2

*America*, 399 F.2d 544, 548 (2nd Cir. 1968)." *United States v. Machado*, 306 F.Supp. 995, 998 (N.D.Cal. 1969). "*Quo warranto* lies to prevent the usurpation of an office." *Buckner v. Veuve*, 63 Cal. 304, 1883 WL 1445 (Cal. 1883). "The writ or order need not recite the facts showing that the petitioner is entitled to it, and is in the nature of a summons commanding the respondent to show by what authority he claims to hold the office, and, in effect, is an order to show cause." *In the matter of the application of David K. Sherwood*, 22 Haw. 385, 1914 WL 1757 (Sup. Ct. Hawaii. Terr. 1914). "The definition of this process is, that it is in the nature of a writ of right of the public against him who usurps any office, franchise, or liberty; to inquire by what authority he supports his claim, in order to determine his right." *People ex rel. Palmer v. Woodbury*, 14 Cal. 43, 46 1859 1129 (Cal. 1858).

Notice pleading is all that is required. The courts have held that "'a complaint which pleaded in general terms that defendant was 'usurping, intruding into, and unlawfully holding and exercising the office of Supervisor * * *' was sufficient." *People ex rel. Smith v. City of San Jose*, 100 Cal.App.2d 57, 59, 222 P.2d 947, 949 (1950) (editorial ellipsis in original); *People ex rel. Palmer, supra* ("The allegations of the complaint sufficiently show that the defendant is in possession of the place, and this without lawful authority, and this we take to be a sufficient allegation of intrusion and usurpation.").

And, in *quo warranto* proceedings, the burden of proof is reversed. "The ordinary rule in civil actions which imposes the burden upon the plaintiff to allege and prove his title does not apply in a *quo warranto* proceeding, the object of which is to require the occupant of a public office to show by what right or authority he holds and exercises the same; and, if he fails to show a complete title to it, judgment must go against him." *State ex rel. Carter v. Stevens*, 29 Or. 464, 472, 44 P. 898, 899 (1896); *accord, People ex rel. Smith v. City of San Jose, supra*.

3

1    Accordingly, the burden is on the defendant to show by what right he holds title to the office of

2    "special prosecutor."

3    The District Court of Guam, Appellate Division, has previously recognized that while

4    there is no statutory provision for the writ of *quo warranto*, the common law writ is available, if

5    instituted by the government. *Territorial Prosecutor for the Territory of Guam v. Superior*

6    *Court of Guam*, 1983 WL 30224 (D.Guam A.D. 1983) (citing *U.S. v. Machado*, *supra*). Finally,

7    the Federal Rules of Civil Procedure govern the conduct of the action as the writ is expressly

8    provided for in the rules. *See* Fed.R.Civ.P.,81(a)(2).

9

10

## THE ORGANIC ACT POWERS OF THE GOVERNOR
## AND THE ATTORNEY GENERAL

### The Governor Has No Authority to Investigate Allegations of Criminal Wrongdoing or to Appoint a "Special Prosecutor"

14    The "Organic Act of Guam," 48 U.S.C. § 1421 *et seq.*, functions as Guam's constitution.

15    *See Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980); *Haeuser v. Dept. of Law*, 97 F.3d

16    1152, 1156 (9th Cir. 1996); *see generally, In re: Request of Governor Felix P. Camacho*

17    *Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*,

18    2004 Guam 10, ¶¶ 19-32 (Guam Sup. Ct. June 11, 2004). The complaint in *quo warranto* and

19    the declaratory judgment is intended to clarify and delimit the executive powers of the Governor

20    of Guam to the extent the exercise of those powers is in conflict with the powers and duties of

21    the Office of Attorney General, the "chief legal officer of the government of Guam" under the

22    Organic Act of Guam. *See* 48 U.S.C. § 1421 *et seq*. The section of the Organic Act pertinent to

23    the discussion here that addresses the Governor's power while seemingly quite broad, is still

24    very specific and defined.

25

4

> The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam. He may grant pardons and reprieves and remit fines and forfeitures for offenses against local laws. He may veto any legislation as provided in this chapter. *He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam, and shall commission all officers that he may be authorized to appoint.* He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam.

48 U.S.C. § 1422 (emphasis added).[1]

With respect to the Governor's purported authority to appoint a "special prosecutor" or otherwise exercise investigative and prosecutorial functions, the Act is particularly specific with respect to the Governor's appointment powers, which refers to all officers and employees of the

---

[1] The Governor doubtless intends to argue that as he is "responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam," *see* 48 U.S.C. § 1422, *and see* Complaint, Exhibit 1, he is perforce authorized not merely to appoint someone to the office of special prosecutor, but, by necessity, to establish the office itself (as it is nowhere else provided for by law). Prior to the 1998 amendments to the Organic Act which removed the Office of Attorney General from the Governor's appointment authority, it may have been true, and, in fact, that may very well have been the practice historically. But the 1998 amendments to the Organic Act establishing the organically independent Office of Attorney General as "chief legal officer" changed all that. For that reason, reliance on historical practice or reference to the cases the Governor will likely cite which pre-date the Organic Act amendments, *see, e.g., People v. Camacho*, 1 Guam rep. 501 (1975), and *Government of Guam v. United States*, Civ. No. 82-0001 (D.C. Guam August 3, 1982), are inapposite, for they fail to take into consideration the significant structural changes to the balance of powers within the Government of Guam. Indeed, if anything, in light of the 1998 amendments to the Organic Act, a close reading of those cases supports the Attorney General's argument, not the Governor's, for those cases held it was a violation of the doctrine of separation of powers for the Legislature to abrogate the Governor's then-authority to appoint and remove the Attorney General. The Governor does not have that authority any longer, not since the election of Guam's first organically established Attorney General and "chief legal officer." Further, the Governor's reference in Exhibit 1 to *People v. Moylan*, Superior Court of Guam Case No. CM0864-03, "Decision and Order" dated January 23, 2004 as support for the argument that he has authority to appoint special prosecutors is simply wrong. That decision did not address the Governor's Organic Act authority, but merely denied a motion to disqualify a particular prosecutor and dismiss the complaint based upon allegations of conflict of interest. It is a limited decision that in no way stands for the Governor's assertion that he can unilaterally invade the province of the Office of Attorney General and appoint special prosecutors. Accordingly, unless the Governor intends to invoke his power to declare martial law in support of his argument that he can create an office out of thin air not otherwise authorized by Congress in the Organic Act, the Governor is not merely invading the province of the Attorney General with his intended appointment, but is invading the province of Congress and the Legislature of Guam as well. In short, before attempting to appoint anyone to the office of "special prosecutor," the Governor must first disregard the separation of powers doctrine, assume the legislative mantle of Congress, and "legislate" the office of "special prosecutor" into existence all by himself. This, he clearly has no authority to do.

5

executive branch "that he may be authorized to appoint." There is nothing in the Organic Act or the laws of Guam that authorizes the Governor to appoint a special prosecutor because, among other reasons, there is no such office authorized by the Organic Act or otherwise by the Legislature of Guam. Since the Organic Act is very clear concerning the powers of the governor, one cannot read into the Governor's powers an implied authority to create offices out of whole cloth, or to make an appointment to an office that does not exist. The statute compels one to read it by its terms and nothing more. When it comes to the appointment power, it specifically states the Governor "shall commission all officers *that he may be authorized to appoint.*" *Id.* (emphasis added). There is no authority to appoint someone to a nonexistent office.

The Organic Act is very specific concerning the separation of powers. "The government of Guam shall consist of three branches, Executive, Legislative and Judicial." 48 U.S.C. § 1421a. In *People of the Territory of Guam v. Camacho*, 1 Guam Rep. 501 (Sup. Ct. Guam 1975), the Supreme Court held invalid under the separation of powers doctrine of the Organic Act a local statute that authorized the appointment of a special prosecutor by the judiciary. In the case at bar, there is, of course, no local law authorizing the Governor to appoint anyone to the office, so this Court may never even reach the separation of powers issue. And although *Camacho* was decided over 20 years ago, at a time when the Governor appointed the Attorney General, the point to note is that there has been no effort by Congress or the Guam Legislature since *Camacho* to authorize the Governor to establish the office of "special prosecutor," let alone appoint anyone to fill it.

What has happened in the interim since *Camacho* was decided were Congressional amendments to the Organic Act in 1998. At that time, Congress fundamentally changed the

6

nature of the Office of the Attorney General, "organically" establishing the position as the "Chief Legal Officer" of the Government of Guam, 48 U.S.C. § 1421g(d)(1), and giving the Guam Legislature the option to provide that the Attorney General may be elected, 48 U.S.C. § 1421g(d)(2). The purpose of the Congressional amendments establishing the Office in the Organic Act and the subsequent Guam legislative action providing that it shall be an elected position was to remove the Attorney General from the sphere of political influence, specifically to insulate the Office from the executive and legislative branches of the Guam government. Congress' intent was to "organically" establish the position, and the Guam Legislature's intent was to provide that the office holder would be elected rather than appointed as it had previously, so that the office holder would be immune from political interference from other branches of government.

In sum, plaintiff is seeking a Declaratory Judgment that affirms the common law duties and powers of the Attorney General as "chief legal officer," and delimits the Governor's authority to intrude upon or otherwise compromise the powers and duties of the Attorney General as envisioned in the Organic Act. As the Governor has no independent Organic Act authority to create the office of "special prosecutor," he certainly has no authority to appoint anyone to the position. And since the 1998 amendments to the Organic Act, whatever historical practice may have been, he has no authority to investigate or oversee the prosecution of allegations of criminal wrongdoing on Guam. That is reserved to the Attorney General alone.

7

## The Powers of the Attorney General in the Organic Act
## and at Common Law

Prior to 2002, with the election of the Guam's first Organic Act empowered Attorney General, the Attorney General was a cabinet position, appointed by the Governor of Guam. In 1998, the United States Congress amended the Organic Act to provide that there shall be an Attorney General of Guam who shall be the "chief legal officer of the government of Guam," 48 U.S.C. § 1421g(d)(1). By establishing the Office of the Attorney General in the Organic Act itself, and defining the holder of that office as "chief legal officer of the government of Guam," Congress intended to prevent the Legislature of Guam from diminishing, reducing or destroying those powers inherent in the office at common law.

The 1998 amendment further authorized the Guam Legislature to determine how this constitutional officer was to be selected, whether by election or appointment. 48 U.S.C. § 1421g(d)(2). In 1999, pursuant to Congressional authorization in the Organic Act as amended, the Legislature of Guam passed P.L. No. 25-44 providing that the Attorney General of Guam would be elected in the next gubernatorial election. Guam legislative history also reflects that it was the intent of the Legislature to insulate the Office of Attorney General from politics by declaring that the holder of the Office was to be elected, no longer appointed or to be removed by, or to serve at the pleasure of, the Governor.

The phrase "chief legal officer," is a legal term of art used by a select number of States. Guam's Organic Act provision arose after local law had already created and empowered an Office of the Attorney General, but nowhere in the Congressional record is there any evidence that the Legislature of Guam was still authorized to prescribe the powers and duties of the Attorney General under the Organic Act, or that the Governor retains any residual powers to appoint a "special prosecutor" as was true previously, when the Attorney General was appointed

8

by, and served at the pleasure, of the Governor.[2] And there is no evidence that Congress intended to ratify pre-existing local law in this regard. Indeed, case law holds to the contrary. *Nelson v. Ada*, 878 F.2d 277 (9th Cir. 1989) (there is no implied ratification of prior inconsistent local law by Congressional silence in amending the Organic Act). Accordingly, the Governor's anticipated citations to cases which pre-date the Organic Act are unavailing. Since the 1998 amendments to the Organic Act, whatever authority the Governor held in the past to oversee the investigation and prosecution of alleged criminal wrongdoing is just that, a thing of the past.

Congress intended to make Guam's Attorney General autonomous and independent, and that intent is reflected in its deliberate choice of the term "chief legal officer." Courts in many states recognize that the independence of the Attorney General reflects a conscious choice by the framers of their constitutions to provide an additional check and balance in the traditional tripartite scheme of government. *State v. Gattavara*, 47 P.2d 18 (Wash. 1935). The Attorney General is the people's "watchdog." Guam's elected Attorney General offers what no other elected or appointed official can bring to the government of Guam, uniformity, consistency and a coherent legal policy for the government of Guam removed from the political control, oversight and interference by the executive and legislative branches. Placing the legal affairs in the hands of a single official, the Attorney General, and vesting in that Office the discretion to,

---

[2]By way of comparison, the case of *Territorial Prosecutor for the Territory of Guam v. Superior Court of Guam*, 1983 WL 30224 (D.Guam. A.D.) is instructive. In that case the U.S. District Court of Guam Appellate Division held that a local act by the Guam Legislature creating a territorial prosecutor, the Territorial Prosecutor's Act, setting forth limitations on the Governor's broad appointment and removal powers was "inconsistent with the mandate of the Organic Act in that it impermissibly encroaches upon the Governor's removal powers under the Organic Act. As noted by that court, "the legislature may not enact a law encroaching upon the Governor's authority and powers which are mandated by the Organic Act.... [T]o permit the legislature to do so, not only would [] render the concept of separation of powers meaningless, and be inconsistent with the mandate of the Organic Act, but it could possibly result in the Governor being divested of his executive authority and power at the whim of the legislature." *Id.* *5. Similarly, in the case at bar, without Organic Act authorization, neither the Legislature nor the Governor may encroach upon the powers and duties of the Attorney General as "chief legal officer." Else, it would render the term meaningless and could result in the Attorney General being divested of his authority as chief legal officer at the whim of the Governor. That is precisely the controversy presented here.

9

*inter alia*, appear in certain proceedings affecting the legal interests of the government of Guam creates uniformity, consistency and efficiency.

For an excellent discussion of the powers of the Attorney General at common law and application of the Organic Act in view of the Attorney General's statutorily derived common law powers, *see*, "Decision and Order," entered by then Superior Court of Guam Judge, now United States Magistrate Judge Joaquin V. E. Manibusan, Jr. in *Moylan v. Camacho*, Special Proceeding Case No. SP230-03, pp. 12 –37 (Superior Court of Guam Nov. 10, 2003). A true and correct copy of Judge Manibusan's Decision and Order is attached for the convenience of the Court. As "chief legal officer," the Attorney General is endowed with certain inherent common law powers, which extend the Attorney General's powers and duties beyond those created by statutory law. *See, e.g., State of Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (7th Cir. 1972). Indeed, in *Moylan v. Camacho, supra*, Guam Superior Court Judge Manibusan has already held that it is "undisputed that an Attorney General possesses common law powers." *Id.* at 20.

At common law, the powers of the Attorney General have been delineated as "to institute, defend or intervene in any litigation or quasi-judicial administrative proceeding which he determines in his sound official discretion involves a legal matter of compelling public interest." *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 271 (5th Cir. 1976). In states where the Office of Attorney General is constitutionally created, such as Illinois, the Attorney General's powers are regarded as powers that could not be diminished by local legislation. *American Legion Post No. 279 v. Barrett*, 20 N.E.2d 45, 51 (Ill. 1939) ("the General Assembly may not take away from a constitutional officer the powers or duties given him by the

constitution"); *People ex rel. Castle v. Daniels*, 132 N.E.2d 507, 509 (Ill. 1956) ("the Attorney General, whose office is created by the Illinois constitution, ... is the chief law officer of the State and has those powers which resided in the Attorney General at common law ... and neither the legislature nor the courts can deprive him of his constitutionally granted authority"); *Department of Mental Health v. Coty*, 232 N.E.2d 686, 689 (Ill. 1967) ("the common-law powers of the Attorney General were preserved to him by the constitution and while the General Assembly can impose additional power and duties upon him, it cannot strip him of his common-law powers"); *Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth.*, 456 N.E.2d 50, 67 (Ill. 1983) ("while the legislature may add to his powers, it cannot reduce the Attorney General's common law authority in directing the legal affairs of the state"); *People ex rel. Hartigan v. E. & E. Hauling, Inc.*, 607 N.E.2d 165, 170 (Ill. 1992) ("although the legislature may add to the Attorney General's common law powers, it may not detract from them").

Accordingly, the Attorney General respectfully submits that in the absence of express provisions in the law to the contrary, not only are those common law powers "inherent" in the Office of the Attorney General, they are inalienable. *Cf. Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980) (Guam Legislature cannot lawfully reduce the governor's functions with respect to the governance of the Guam hospital to "mere ministerial function of validating appointments made by others to Guam Hospital's governing body" in derogation of the Governor's ultimate responsibility in the Organic Act for the governance of the hospital); *In re: Request of Governor Felix P. Camacho Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*, 2004 Guam 10, ¶ 75 (noting instances wherein "the Legislature may limit the Governor's power by 'otherwise provid[ing] ... under the laws of Guam.' 48 U.S.C. § 1422.") (editorial brackets in the original). These two cases involved attempted legislative

11

abrogation of the *Governor's* Organic Act powers, but the analysis is the same as applied to the question presented here, namely: whether the Governor has the power or authority to abrogate or otherwise diminish the common law powers of the Attorney General as "chief legal officer" under the Organic Act who, himself, stands on equal constitutional footing as the Governor. While the Governor may have had the power to appoint a special prosecutor before the 1998 Organic Act amendments organically establishing the Attorney General as "chief legal officer," and before the Guam Legislature passed P.L. No. 25-44 establishing the position as an elected office, the Governor has no authority to usurp or invade the province of that office now. Not unless Congress otherwise provides.

In *In re House of Representatives (Special Prosecutor)*, 575 A.2d 176 (R.I. 1990), the Supreme Court of Rhode Island issued an advisory opinion to the House of Representatives on the validity of proposed legislation that would have created a procedure for the appointment of a special prosecutor to investigate and prosecute any crime involving certain public officials, including the Governor; Lieutenant Governor; Secretary of State; Attorney General and any assistant attorneys general; and persons serving as directors of departments within the executive branch. The procedures envisioned that upon receipt of an application, the chief justice of the Rhode Island Supreme Court would appoint a special prosecutor from among the members of the Rhode Island bar and define the limits of the special prosecutor's jurisdiction.

The Rhode Island Supreme Court found the proposed law invalid as a violation of the doctrine of separation of powers in two respects. First, the Court found the law would compromise the independence of the judiciary by imposing administrative duties on the chief justice that would effectively eliminate the chief justice from participating in any appeals involving the special prosecutor. Pertinent to the case at bar, the Court also found that the

12

legislation would unconstitutionally interfere with the common law powers and duties of the attorney general with respect to his authority to supervise and direct criminal investigations and prosecutions. The decision in the case is directly on point:

> **As a constitutional officer, the individual who holds the office of Attorney General in this state is in a unique position independent from the other branches of government.** In Rhode Island the Attorney General is an elected official, who is different from attorneys general in many other states and the Federal government wherein the attorney general is appointed by the chief executive officer. **There have been instances in which other jurisdictions have invalidated the appointment of a special prosecutor on the basis of the constitutional status of the attorney general.** In *Murphy v. Yates*, 276 Md. 475, 494, 348 A.2d 837, 847 (1975), the court concluded that "the General Assembly may not abrogate the common law powers of the Attorney General of Maryland * * * having been constitutionally stated as those 'prescribed by law.'" The court also reasoned, "If an office is created by the Constitution * * * the position can neither be abolished by statute nor reduced to impotence by the transfer of duties characteristic of the office to another office created by the legislature." Id. at 492, 348 A.2d at 846. *See also Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority*, 98 Ill.2d 58, 74 Ill.Dec. 548, 456 N.E.2d 50 (1983).

> **The core function of the constitutionally established office of Attorney General is the power and discretion to prosecute crimes. This court has held that the essential duty of the Attorney General is that of "public prosecutor."** *Suitor v. Nugent*, 98 R.I. 56, 58, 199 A.2d 722, 723 (1964). A key aspect of the Attorney General's role as public prosecutor is the element of discretion. **"It is well settled in this state that the Attorney General is the only state official vested with prosecutorial discretion."** *State v. Rollins*, 116 R.I. 528, 533, 359 A.2d 315, 318 (1976).

13

> The proposed legislation transfers full prosecutorial authority to a special prosecutor appointed by a member of the judicial branch of government. **It is our opinion that this transfer of power to the special prosecutor severely infringes upon the fundamental powers of the Attorney General.** Accordingly, we find that the proposed legislation violates article IX, section 12, of the Rhode Island Constitution.

575 A.2d 179-80 (emphasis in bold added; editorial ellipsis in original).

In *Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (Md. App. 1975), the Maryland Court of Appeals held that an act creating the office of state prosecutor as an independent unit within the executive branch was an unconstitutional invasion of the constitutionally recognized common law powers and duties of the state's attorneys and Attorney General. The court first held that the Maryland Legislature was without authority to limit the constitutional duties and powers of the Attorney General. "It seems clear to us that from and after the adoption of the Constitution of 1867, the General Assembly was without power to limit or modify the constitutional duties of either the State's Attorneys or the Attorney General by transferring the duties of either of these offices to another officer created by statute." *Id.*, 276 Md. 489, 348 A. 844. Later in the opinion, the Court held that the argument that the special prosecutor's powers and duties were "concurrent" with the Attorney General and state's attorneys did not ameliorate the fact that it was nevertheless an invasion of their constitutional offices.

> We do not find persuasive the contention that the duties imposed on the Special Prosecutor are concurrent with the powers of the State's Attorneys. **The simple fact is that the Special Prosecutor's power to initiate an investigation and to commence prosecution if a State's Attorney does not act is a clear invasion of the State's Attorney's most awesome discretionary power: to determine whether or not to prosecute.** Furthermore, the Special Prosecutor is empowered by the Act to represent the State in any appeal or post conviction proceeding resulting from his prosecutions. **Such power is an invasion on the constitutional duty imposed upon the Attorney General. Moreover, in each instance the power is transferred**

14

> **from what has traditionally been an elected official to an
> appointed official.** Praiseworthy though the purpose of the
> General Assembly might have been in enacting the legislation, the
> result can only be validly achieved by a constitutional
> amendment.

*Id.*, 276 Md. 495, 348 A. 848 (emphasis in bold added). It is noteworthy that the

Maryland court was troubled by the Legislature's transfer of core prosecutorial functions from

an elected to an appointed official. In the case at bar, not only is the Governor's appointment

wholly unauthorized by the Organic Act or even local legislation (assuming the legislature were

authorized to enact such legislation by the Organic Act), it transfers those core prosecutorial

functions from an elected to an appointed officer. The Governor's appointment of a special

"prosecutor" is an affront to the intent of both Congress and the Legislature of Guam.

## CRITERIA FOR ISSUANCE OF A PRELIMINARY INJUNCTION

In the Ninth Circuit, there are two tests for the issuance of preliminary injunctive relief, the

"traditional" test and an alternative test. "The traditional test for granting preliminary injunctive

relief requires the applicant to demonstrate: (1) a likelihood of success on the merits; (2) a

significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and

(4) whether any public interest favors granting an injunction." *Raich v. Ashcroft*, 352 F.3d 1222,

1227 (9th Cir. 2003) (citations omitted).

The alternative test for issuance of a preliminary injunction "requires the applicant to

demonstrate either: a combination of probable success on the merits and the possibility of

irreparable injury; or serious questions going to the merits and that the balance of hardships tips

sharply in the applicant's favor." *Raich v. Aschcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003).

"These two tests are not inconsistent. Rather, they represent a continuum of equitable discretion,

whereby 'the greater the relative hardship to the moving party, the less probability of success

15

must be shown.' *Nat'l Ctr. For Immigrants Rights, Inc. v. INS,* 743 F.2d 1365, 1369 (9th Cir. 1984)." *Id.* "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810 (9th Cir. 2003); *accord, Rodde v. Bonta,* 357 F.3d 988, 994 (9th Cir. 2004); *Earth Island Institute v. United States Forest Service,* 351 F.3d 1291, 1297-98 (9th Cir. 2003); *Brown v. California Dept. of Transportation,* 321 F.3d 1217, 1221 (9th Cir. 2003); *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1038 (9th Cir. 2003). Under either test, a preliminary injunction is due to be issued.

## THE TRADITIONAL TEST

**Because the Office of Special Prosecutor is Not Authorized by the Organic Act or Otherwise, and the Governor Therefore Has No Authority to Appoint a Special Prosecutor, there is a Significant Likelihood of Success on the Merits**

There is no authority for the Governor's actions, either in federal law under the Organic Act or in Guam law, making declaratory and injunctive relief and *quo warranto* particularly appropriate. Historical practice aside, nothing in the present Organic Act as amended permits the exercise of any such authority. In short, the Governor's actions rest on no statute, federal or local. They are wholly without legal authority, *ultra vires.* The Governor's actions are a blatant violation of the doctrine of separation of powers as set forth in the Organic Act itself. The absence of authority for the Governor's actions and the violation of the separation of powers makes likelihood of success on the merits and judgment for the plaintiff not merely significant, but inevitable.

16

## There Exists a Significant Threat of Irreparable Injury
## if the Injunction is Not Issued

In certain cases, particularly where a significant likelihood of success on the merits is shown, irreparable injury is presumed.[3] Even without a presumption of injury, the threat of irreparable injury in the case at bar is easily demonstrated. The Attorney General cannot perform his duties as chief legal officer responsible for the enforcement of Guam's laws in the shadow of an unlawfully appointed and constitutionally unauthorized "special prosecutor" (who responds only to the Governor and to the Governor alone) to investigate and countermand or usurp the prosecutorial discretion of the Attorney General. The Governor is attempting to exercise powers Congress expressly took away from him, that is, supervision and control of the Office of Attorney General. There is no longer any authority in the Organic Act or elsewhere for the creation by the Governor of the office of "special prosecutor," and his argument that 48 U.S.C. § 1422 authorizes him to do so because he is "responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam," is simply unavailing. The Governor has no business investigating or overseeing the prosecution of alleged criminal wrongdoing. Absent Congressional authorization, the Governor's actions complained of here not only invade the province of the Attorney General to investigate and prosecute criminal wrongdoing, a responsibility now reserved exclusively to the Office of the Attorney General by Congress, but also invade the province of the local legislature to even establish such an office in the first place (assuming, of course, that the Legislature of Guam was itself authorized under the

---

[3] *See Miller v. California Pacific Medical Center*, 19 F.3d 449, 460 (9th Cir. 1994) ("if the Board demonstrates that it is likely to prevail on the merits, we presume irreparable injury"). In *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, (9th Cir. 1987), the court held that in statutory enforcement actions brought by the government irreparable injury to the government had to be presumed. That holding dovetails perfectly with the fact that in *quo warranto* actions, the burden of proof is reversed, and it is the defendant who must prove by what right he holds office, not the government to prove the office is being usurped. *See again, State ex rel. Carter v. Stevens*, 29 Or. 464, 472, 44 P. 898, 899.

17

Organic Act to create such an office and endow it with duties and powers otherwise reserved at common law to the Attorney General). What the facts of this case present is the creation of a "special prosecutor" beholden only the political whims and caprices of the Governor, in no ways answerable to the electorate. That is not what Congress had in mind in insulating the Office of the Attorney General from political influence in the Organic Act, nor is it what the local Legislature envisioned in making the Attorney General an elected office.

The essential role of the Attorney General, relative to other constitutional offices, if the Governor is not enjoined, would be radically transformed from that envisioned by Congress. In effect, the Governor would be become a super-Attorney General, within unfettered discretion to usurp the constitutional or Organic Act authority of the Attorney General as intended by Congress.

The independence of the Attorney General is critical to the integrity of law enforcement and prosecution services that the people of Guam have come to expect from the designated elected Attorney General. It is for the Attorney General to reconcile the interests of individual government officials with the interests of the Territory and of the people. Sometimes this responsibility requires the Attorney General to take positions to which individual officials or agencies object. To permit these officials, even the Governor, to displace the Attorney General's determination of what best serves the public interest is to tear down the edifice of independence built by the 1998 Congressional Amendments.

18

## The Balance of Hardships Favors the Applicant

The danger to the very essence of the Office of Attorney General as envisioned in the Organic Act cannot be underestimated. An injunction works no hardship upon the Governor at all. His power to manage and supervise the Executive Branch remains the same. All that he may lose should the injunction issue is the power to usurp the powers and duties of the Attorney General, a power he never had to begin with, at least, not since the 1998 amendments to the Organic Act and the 199 amendments to local law.

## The Public Interest Favors Granting an Injunction

The Governor's actions completely undermine the role accorded the Attorney General by the people of Guam, by the Legislature of Guam, and by the Congress. There is nothing more detrimental for public – a public that insists upon objective, independent enforcement of the rule of law – than to have the creation of a legally unauthorized law officer to oversee, harass and usurp the Attorney General it elected. What disserves the public interest most would be to permit the Governor to continue to violate the Organic Act. To preserve the public interest requires that the creation of such an office without authority in the law, and the appointment of anyone to fill that office, must be enjoined.

## THE ALTERNATIVE TEST

As noted previously, the alternative test for issuance of a preliminary injunction in the 9th Circuit "requires the applicant to demonstrate either: a combination of probable success on the merits and the possibility of irreparable injury; or serious questions going to the merits and that the balance of hardships tips sharply in the applicant's favor." *Raich v. Aschcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003).

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 19 of 67

1    With respect to the first alternative, the likelihood of probable success and the possibility

2    of irreparable injury have clearly been demonstrated. The Governor has no authority to appoint

3    anyone to the office of "special prosecutor," because the office does not exist, nor is it

4    authorized under the Organic Act. In order for the Governor to appoint someone to the position,

5    he would have to, in essence, legislate the office into existence by himself, an obvious violation

6    of the doctrine of separation of powers. Moreover, even if the office had been established by the

7    Guam Legislature, which it has not, it would literally take "an act of Congress" for the

8    Governor to get over the constitutional hurdle imposed by the 1998 amendments to the Organic

9    Act establishing the Attorney General as chief legal officer for the government of Guam,

10   because the Governor's attempted appointment of anyone to the position of "special prosecutor"

11   is an unlawful and inorganic usurpation of the powers and duties of the Office of Attorney

12   General. And the possibility of irreparable injury, as discussed earlier, is presumed where, as

13   here, the Governor is violating Guam's constitution in his usurpation of the role and function of

14   the Attorney General.

15       Similarly with respect the second part of the alternative test – serious questions going to

16   the merits and that the balance of hardships tips sharply in the applicant's favor – a preliminary

17   injunction is clearly warranted. The questions presented here on the merits are, indeed, very

18   serious, for those questions go to the very heart of Congressional intent in the Organic Act with

19   respect to the separation and distribution of powers and duties in the Territorial Government of

20   Guam. As demonstrated previously, the Governor will suffer no hardship, for he cannot suffer

21   the loss of a power he did not have to begin with; but the hardship to the Office of the Attorney

22   General, and to the people of Guam who elected him, is quite severe, and will result in a return

23   to the days of political cronyism devoid of independent prosecutorial discretion and judgment.

That is not what Congress intended in organically establishing the Office as "chief legal officer for the government of Guam," nor is it what the Guam Legislature intended in making the Office an elected position. Accordingly, under the alternative test, a preliminary injunction is due to be issued.

## CONCLUSION

The establishment of the Attorney General in the Organic Act by Congress as a "constitutional" or "organic" officer, and the Legislature of Guam's decision that the position be elected, were intended to protect against the very thing the Governor has stated he intends to do, namely: attempt to seize control of the Office of Attorney General by appointing a super-Attorney General to harass him and undermine his efforts. But it was the intent of Congress and the Legislature of Guam to insulate the Attorney General from politics so that the enforcement of law is responsive to the public directly, not to the political whims of other government officials.

Based upon the foregoing, plaintiff respectfully submits that a preliminary injunction is due to be issued as follows:

an injunction enjoining the Governor, his successors, agents, employees, and all persons acting in concert with him from exercising or attempting to exercise any of the powers and duties of the Office of Attorney General by, *inter alia*, exercising any authority with respect to the investigation and/or prosecution of suspected crimes or criminal activity within the Territory of Guam, said authority being entirely within the powers and duties exclusively reserved to the Attorney General as Chief Legal Officer; or by appointing or attempting to appoint a "special prosecutor,"

21

however denominated, to investigate and prosecute allegations of criminal wrongdoing within the Territory of Guam.

Respectfully submitted this 13th day of July, 2004.

OFFICE OF THE ATTORNEY GENERAL
DOUGLAS B. MOYLAN, Attorney General of Guam

Robert M. Weinberg
Assistant Attorney General

# IN THE SUPERIOR COURT OF GUAM

DOUGLAS B. MOYLAN, as Attorney
General of Guam,

Petitioner,

v.

FELIX P. CAMACHO, as Governor
of Guam,

Respondent.

SPECIAL PROCEEDING CASE
NO. SP230-03

*DISISIÓN YAN OTDEN*[1]

---

The Court heard this matter on November 4, 2003, pursuant to a briefing and hearing

schedule to address the issues raised by the Supreme Court of Guam Order dated October 10, 2003

in Supreme Court Case No. WRP03-005. **J. Basil O'Mallan, III**, Esq., Deputy Attorney General,

Civil Division, represented the Petitioner, *Douglas B. Moylan*, the Attorney General of Guam.

**Douglas B. Moylan**, Esq., also appeared in his own behalf. **Shannon Taitano**, Esq., of the Office

of the Governor, and **Michael A. Pangelinan**, Esq., and **Daniel Benjamin**, Esq., of Calvo and Clark,

LLP, represented the Respondent, *Felix P. Camacho*, the Governor of Guam. The Court listened

to the arguments and inquired into several issues raised by the parties. At the conclusion of the

---

[1]Decision and Order

# EXHIBIT "A"

hearing, the Court advised the parties that it reserved decision on the matter. After carefully considering the arguments of the parties, their legal memoranda, and after giving this matter much deliberation, the Court now issues this decision and order.

## I MANMALLOFAN[2]

On September 29, 2003, the Attorney General of Guam filed an ex parte petition for an alternative writ of mandate against Felix P. Camacho, the Governor (*I Maga'lahi*) of Guam to appoint members and alternate members for the purpose of empaneling a Procurement Appeals Board. An Order directing the issuance of the Alternative Writ of Mandate to empanel a Procurement Appeals Board was signed by the Honorable, Elizabeth Barrett Anderson. The Alternative Writ ordered *I Maga'lahi* to immediately appoint and transmit to the Guam Legislature members and alternates to fully comprise the Procurement Appeals Board. In the alternative, *I Maga'lahi* was ordered to answer and show cause on October 13, 2003 why he has not complied with the alternative writ.

On October 9, 2003, *I Maga'lahi* filed a Writ of Prohibition and/or Writ of Mandamus in the Supreme Court of Guam - WRP03-005. Therein, *I Maga'lahi* sought a writ "directing the Superior Court of Guam to cease and desist and refrain from presiding over and hearing any matters and taking further action" in the within case. At noon on October 10, 2003, *I Maga'lahi* filed an ex parte motion to stay this action pending resolution of the Writ of Prohibition filed in the Supreme Court. The ex parte motion was set for hearing at 4:00 p.m. Prior to the hearing, the Supreme Court issued its Order. It provided in part:

In issuing the Alternative Writ of Mandamus, the trial court implicitly found that it

---

[2]Background

had jurisdiction. The Governor's petition raises the argument that the trial court erred because the Attorney General had no standing to sue, therefore the trial court acted without jurisdiction. In the face of this serious question and because we find no circumstances demanding exigency, the trial court should have thoroughly considered and required briefing on standing and jurisdiction before granting the Alternative Writ of Mandamus. We hereby order as follows:

1. this court will stay ruling on the Governor's petition for Writ of Prohibition and/or Writ of Mandamus for a period of thirty days.

2. the Superior Court shall address the issue of whether the Attorney General has standing to sue the Governor and whether the action was properly within the trial court's jurisdiction; and

3. the Alternative Writ of Mandamus issued by the Superior Court on September 29, 2003 is stayed pending the resolution of the jurisdictional issues.

The order was signed by F. Philip Carbullido, Chief Justice; Frances M. Tydingco-Gatewood, Associate Justice; and John A. Manglona[3], Justice Pro Tempore.

In accordance with the Supreme Court order, the parties agreed upon a scheduling order. The parties were ordered to file opening briefs on October 24 and respective replies on October 30. The parties have filed their opening as well as reply briefs.

### *DINISKUTA*[4]

On November 5, 2002, Respondent, Felix P. Camacho, was elected by the People of Guam as the seventh[5] Governor of Guam, succeeding to an office his father, Carlos G. Camacho, [Guam's last appointed and first elected Governor] had occupied before him. At the same time that Respondent was being elected Governor of Guam, the People of Guam were electing Petitioner, Douglas B. Moylan, as Guam's first elected Attorney General. Respondent Camacho was

---

[3]Manglona is an Associate Justice of the Supreme Court of the Commonwealth of the Northern Mariana Islands.

[4]Discussion

[5]Ricardo J. Bordallo was the second and fourth Governor of Guam.

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 25 of 67

inaugurated *I Maga'lahi* on January 6, 2003 and is and has been *I Maga'lahi* since then. Petitioner

Moylan was inaugurated Attorney General likewise on January 6, 2003 and he is and has been the

Attorney General since then.

Prior to the election of Petitioner, the Attorneys General before him were all appointed by

*I Maga'lahi* with the advice and consent of the Guam Legislature. The Attorney General has filed

this action seeking the aid of the Superior Court to order *I Maga'lahi* to appoint members and

alternates to the Procurement Appeals Board. The Attorney General has chosen to proceed in this

matter through a mandamus procedure and more particularly by means of an alternative writ of

mandate. The alternative writ was issued by the Superior Court on September 29, 2003 and directs

*I Maga'lahi* to appoint the remaining members and alternates to the Procurement Appeals Board or

show cause before the Court why he has not done so. The alternative writ which has been issued has

been stayed by the Supreme Court, pending compliance with its order referenced above.

## I. NATURE OF PETITION FOR ALTERNATIVE WRIT OF MANDAMUS

### A. *The Mandamus Process.*

Petitions for mandamus are provided for under 7 GCA §31201 et. seq. The relevant statutes

provide:

§ 31202. **When and by What Court Issued.**
It may be issued by any court, [except a commissioner's court or police court,] to any
inferior tribunal, corporation, board, or person to compel the performance of an act
which the law specially enjoins, as a duty resulting from an office, trust, or station;
or to compel the admission of a party to the use and enjoyment of a right or office to
which he is entitled, and from which he is unlawfully precluded by such inferior
tribunal, corporation, board, or person.

§ 31303. **Writ: Either Alternative or Peremptory.**
The writ must be either alternative or peremptory. The alternative writ must
command the party to whom it is directed to desist or refrain from further
proceedings in the action or matter specified therein, until the further order of the

court from which it is issued, and to show cause before such court, at a specified time and place, why such party should not be absolutely restrained from further proceedings in such action or matter. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he should not be absolutely restrained, etc., must be omitted, and a return day inserted.

### § 31204. Writ: Alternative or Peremptory.

The writ may be either alternative or peremptory. The alternative writ must command the party to whom it is directed, immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed or to show cause before the court at a specified time and place why he has not done so. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he has not done as commanded must be omitted and a return day inserted.

### § 31205. When Application is Made Without Notice.

When the application is made to the court without notice to the adverse party, and the writ is allowed, the alternative must be first issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance. With the alternative writ and also with any notice of an intention to apply for the writ, there must be served on each person against whom the writ is sought a copy of the petition. The notice of the application, when given, must be at least ten (10) days. The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not.

### § 31206. Adverse Party may Answer Under Oath.

On the return of the alternative, or the day on which the application for the writ is noticed, the party on whom the writ or notice has been served may answer the petition under oath, in the same manner as an answer to a complaint in a civil action.

A party seeking an alternative writ of mandate relief need not provide notice to the adverse party. See 7 G.C.A. §31205, supra. Moreover, the ex parte notice requirements of Rule 9 of the Rules of the Superior Court do not apply to such an application.

The purpose of the Attorney General's petition for an alternative writ was to order *I Maga'lahi* to appoint the remaining members and alternate members of the Procurement Appeals Board.

### B. The Procurement Appeals Board and its Appointment Process.

Page 5 of 45

The Procurement Appeals Board was created by Public Law 18-44. Its sponsors were then Senators C. T. C. Gutierrez and T. S. Nelson. It became law on November 14, 1986. The act added a new Chapter 12 to Title VII-A of the Government Code of Guam. It is now codified under 5 G.C.A. §5701, et seq. The purpose of the act was to provide a forum for procurement appeals. The relevant portions of the act are as follows:

### § 5701. Creation of the Procurement Appeals Board.
There is established an independent entity to be known as the Procurement Appeals Board to be composed of a chairperson and at least six (6) other members. **The chair person and members of the Board shall be appointed by the Governor** and confirmed with the advice and consent of the Legislature and shall serve part-time as necessary.

### § 5702. Terms and Qualifications of Members of the Procurement Appeals Board.
(a) Term. The term of office of the chairperson and each member of the Procurement Appeals Board shall be six (6) years except that in making the initial appointments, the Governor shall appoint one member for a term of four (4) years, and the chairperson for a term of six (6) years, so that a term of office shall expire every two (2) years. Thereafter, their successors shall be appointed for terms of six (6) years, or for the balance of any unexpired term, but members may continue to serve beyond their terms until their successors take office. Members may be reappointed for succeeding terms. If there is no chairperson, or if such officer is absent or unable to serve, the senior member in length of service shall be temporary chairperson.

(b) Authority of the Chairperson. The chairperson may adopt operational procedures and issue such orders, not inconsistent with this Chapter, as may be necessary in the execution of the Board's functions. The chairperson's authority may be delegated to the Board's members and employees, but only members of the Board may issue decisions on appeals.

©) Support. The Civil Service Commission is authorized to provide for the Board such services as the chairperson requests, on such basis, reimbursable or otherwise, as may be agreed upon between the Civil Service Commission and the chairperson. The Board is empowered to hire legal counsel, accountants, staff and other personnel, and to provide for training of its staff and members.

Page 6 of 45

(d) Qualifications for Board Membership.

(1) One (1) member shall be a member in good standing of the Guam Bar Association who has been admitted to practice before the highest court of a state, territory or the District of Columbia for at least five (5) years prior to that person's appointment, one (1) member shall be a certified public accountant, one (1) member shall have demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large.

(2) No member shall be an employee of the government of Guam nor a member of any board or commission of the government of Guam.

(3) The appointment of any person to the Commission shall become void if at any time during his term of office he shall become an employee of the government or accept an annuity from the government.

(4) When a vacancy occurs, the Governor shall appoint a new member within sixty (60) days of the commencement of the vacancy.

(e) Removal of Members. Notwithstanding any other provision of this Chapter, the Governor or the Procurement Appeals Board by three (3) positive votes of its members may recuse a member of the Procurement Appeals Board from participation in a matter before the board due to:

(1) disability,

(2) conflict of interest with respect to service on the Board and engagement in any private business,

(3) for other good cause.

Any removal pursuant to items (2) and (3) of this Subsection shall be effective no sooner than ten (10) calendar days subsequent to the delivery of written notice of such removal by the Governor or the Board to the Legislative Secretary of the Legislature. Removal pursuant to item (1) of this Section shall be effective pursuant to the notice of the action taken.

A member of the Procurement Appeals Board may recuse himself.

For purposes of this Section, recuse means to disqualify from hearing the matter and taking any action on it.

(f) Appointment, Qualifications and Function of Alternates. At the same time as members of the Procurement Appeals Board are appointed by the Governor, **the Governor shall appoint three (3) alternate members to the Board**, all of whom shall serve for a term of six (6) years.

(1) Each alternate shall, at the time of his appointment, be designated either First Alternate, Second Alternate or Third Alternate. For the first year of his appointment each alternate shall serve in the order designated, and each year thereafter they shall rotate the order, so that during the second year, the First Alternate shall serve second, the Second Alternate third, and the Third first, and so on for each successive year until their terms expire.

(2) Each alternate shall fulfill the same requirements for membership on the Board as any of the regular board members fulfill and shall be subject to the same removal procedures as regular board members.

(3) The alternates shall fill in on matters before the Procurement Appeals Board when

Page 7 of 45

a member is absent or recused pursuant to Subsection (e) of this Section and each alternate shall fill in for an absent or recused member in the order they are designated to serve, so that the alternate serving first fills in for the first absence or recusal, the alternate serving second fills in for the second absence or recusal, and so forth.

The Procurement Appeals Board has seven members, which includes a chairperson. The chairperson as well as the six remaining members are all appointed by *I Maga'lahi* with the advice and consent of the Guam Legislature. The Act also requires *I Maga'lahi* to appoint three alternates to the Board, all three likewise requiring legislative confirmation.

The Court is unclear whether this Board has ever been implemented. The Attorney General, however, advised the Court during oral arguments that this Board has never been empanelled since its creation. Thus, seventeen (17) years has passed since this Board was created and its office has still not been implemented. In his petition, the Attorney General alleges that *I Maga'lahi* has only appointed two members to the Board. Attorney David J. Highsmith was appointed by *I Maga'lahi* on June 24, 2003 and confirmed by the Guam Legislature on September 18, 2003. *I Maga'lahi* also appointed Carmen C. De Oro to the Board and she awaits confirmation by the Legislature. In addition to Highsmith, the Board has another existing member, Richard K. Lim, who was appointed by previous Governor Gutierrez on February 5, 2002 and confirmed on May 21, 2002. The Attorney General alleges that despite being in office for approximately ten months, *I Maga'lahi* has failed to appoint seven more individuals to the Board, four (4) regular members and three (3) alternates.

In the creation of the Procurement Appeals Board, the Legislature saw fit to qualify its membership. Thereunder, one (1) member must be an attorney [a member in good standing of the Guam Bar Association... who has been admitted .... to practice for at least five (5) years prior to his appointment]; one (1) member shall be a certified public accountant; one (1) member shall have

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 30 of 67

demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large. When initially passed, the Act required all its members [other than the attorney and certified public accountant members] to have demonstrated experience of at least five (5) years in procurement as a necessary qualification. In addition to the aforesaid qualifications, a member could not be a recipient of any annuity from the government of Guam nor a member of the immediate family of a government of Guam employee. It is apparent from the law as it now exists that subsequently enacted legislation has removed certain impediments in the nomination of members to the said Board.

In filing this action, the Attorney General seeks empaneling of a Procurement Appeals Board which prior hereto has never been empaneled since its creation in 1986.

## II. THE ATTORNEY GENERAL'S POSITION

In his opening brief, the Attorney General sets forth two basic arguments in support of his position. Petitioner first argues that an **elected Attorney General has standing to bring a mandamus action against *I Maga'lahi*.** In this regard, Petitioner points to the 1998 congressional amendments [48 U.S.C.§1421g(d)] made to the office of the Attorney General and the congressional testimony in support thereof from then Senators Elizabeth Barrett-Anderson and Vicente Pangelinan. The Attorney General uses that testimony as indicative of the legislative intent in the amendment with regard to the nature of the office in relation to the election of the Attorney General and his powers and authority. Letters from the Compiler of Laws, Charles Troutman[6], to Delegate Underwood was referenced to illustrate the purpose of the amendment and its interpretive effect [designation of the Attorney General as the Chief Legal Officer]. It is thus argued that being an

---

[6]Charles Troutman was a former Attorney General.

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 31 of 67

elected public official on the same executive level as the Governor [both created Organic Act positions] allows the Attorney General to bring this suit against *I Maga'lahi.*. More important, the Attorney General's designation as Chief Legal Officer of the government of Guam further cements his ability and provides statutory as well as common law authorization to bring the present action.

The Attorney General argues further that, in addition to the Congressional change in the position of the Attorney General, local law also permits him to sue *I Maga'lahi* to compel him to perform a ministerial act required by law. Petitioner refers the Court to his authority under Sections 30102 and 30109 of 5 G. C. A. Section 30102 grants the Attorney General "cognizance of all legal matters...involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council". Section 30109 authorizes the Attorney General to "conduct on behalf of the government of Guam all civil actions in which the government is an interested party". Petitioner cites the Court to various cases in support of his proposition.

In an effort to bolster his standing to bring this action, the Attorney General asserts that he is not the governor's attorney. Moreover, the Attorney General asserts that there is no attorney-client relationship with *I Maga'lahi.* This, for the purpose of countering claims by Respondent that the Attorney General is suing his own client, *I Maga'lahi.* The Attorney General is insistent that the government of Guam is his client and not *I Maga'lahi.* In this regard, Petitioner cites the Court to *State ex. Rel. Condon v. Hodges*, 562 S. E. 2d 623 (S.C. 2002) for the proposition that the Attorney General can sue the Governor if there is the possibility that the Governor is acting improperly.

The Attorney General next argues that the Superior Court has jurisdiction to entertain a mandamus action as the present one because such action is within the jurisdiction of this court, it

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 32 of 67

being a court of general jurisdiction.

## III. THE GOVERNOR'S POSITION

In his opening brief, *I Maga'lahi* argues that the faithful execution of the laws of Guam falls solely under his responsibility in accordance with the Organic Act of Guam [48 U.S.C. §1422]. The Organic Act grants the Governor supervision and control over the executive branch, which includes the Attorney General. In executing the laws of Guam, *I Maga'lahi* asserts that he has to prioritize among his many areas of responsibility, which include the appointment of members to vacant seats on numerous boards and commissions. The action by Respondent is an attempt to wrestle the executive power from the Governor.

*I Maga'lahi* sets forth three basic arguments in support of his position. He first argues that the Attorney General lacks standing to bring the present action because the Attorney General has no power to control the execution of the laws of Guam. *I Maga'lahi* emphatically points out that the entire executive power is vested in him. The Organic Act contains no provision granting any executive power to the Attorney General. Thus, the present action is merely an attempt to usurp the Governor's authority under the Organic Act. In support of this proposition, *I Maga'lahi* cites the Court to *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, (1981).

*I Maga'lahi* next argues that the Attorney General's authorities as set forth in his brief do not support his position that he has standing. In this regard, he advances several propositions:

1. An Attorney general's common law powers do not permit a civil action against a Chief Executive.

2. The Attorney General's enumerated statutory powers in the Guam Code do not permit the mandamus action.

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 33 of 67

3. The Attorney General's election is irrelevant to the maintenance of the present action.

4. The Attorney General has no case authority to support for this Court's jurisdiction over an action brought by the Attorney General to compel the Governor to execute the law.

5. Restraining the Attorney General within his powers is not a "chilling" effect.

*I Maga'lahi* finally argues that the violation of ethical duties caused by this action reinforces the Attorney General's lack of standing. When the Attorney General filed this action, he brought suit against his own client. This is so because the Attorney General is the attorney for the government of Guam and has cognizance over all legal matters involving the executive branch. *I Maga'lahi* is the head of the executive branch. As head of the executive branch, *I Maga'lahi*, it is argued, is the client of the Attorney General.

Guam's Rule of Professional Conduct [1.7(a)] mandates that a lawyer shall not "be directly adverse to another client" absent a waiver. *I Maga'lahi* has never given the Attorney General a waiver. Yet, the Attorney general has filed this action against *I Maga'lahi.* The Attorney General has therefore violated rule 1.7(a) of Guam's Rule of Professional Conduct.

## IV. THE ATTORNEY GENERAL AND HIS POWERS

### A. The Historical Perspective

Congress passed the Organic Act of Guam in 1949 and in that process, it granted American citizenship for Guam's indigenous people; it provided greater self government for its inhabitants; it established a civilian government [rather than governance by the Naval Government] and it established the Organic Act as the "constitution" of Guam. Pursuant to the Organic Act, Guam elected its lawmakers and these lawmakers became members of the First Guam Legislature (1950-1952). Part of the first order of business of Guam's lawmakers was the establishment of the order

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 34 of 67

of the government's business. Part of that order required the establishment of the Department of Law, headed by the Attorney General. The lawmakers passed P.L. 1-88, which created the Office of the Attorney General and the Department of Law. It provided:

§7000. **Attorney General.** The Department of Law of the government of Guam shall be administered by the Attorney General, who shall be appointed by the Governor of Guam, withe the advice and consent of the Legislature, and shall be subject to removal by the Governor.

§7001. **Department of Law, cognizance.** The Department of Law shall have cognizance of all legal matters in which the government of Guam is in anywise interested. It shall have cognizance on all matters pertaining to public prosecution. For this purpose the Island Attorney, deputy Island Attorneys ...shall form the prosecution division of the Department of Law....

§7002. **Opinions.** The Attorney General shall give, when required or requested, and without fee, his opinion in writing to public officers on matters relating to the duties of their respective offices, and verbal or written instructions to commissioners or others, acting for the courts of Guam on all matters relating to service of writs and process.

§7003. **Defense of judges.** When requested by any judge of any court of Guam so to do, the Attorney General shall appear for and represent such court or judge in his official capacity is made a party defendant in his official capacity is made a party defendant in any action.
*(Included in Original Government Code of Guam enacted by P.L.88, 1st G.L., 1952.)*

In addition to the above statutes, §7004 of the Government Code authorized the Attorney General to make rules and regulations for the conduct of the department with said rules becoming effective only upon the approval of the Governor. Thus, the office of the Attorney General commenced its existence with humble beginnings. There were only four statutes[7] which defined its role and responsibility.

---

[7]The Island Attorney, however, had five provisions dealing with its authority. See §§7100 through 7104 of the Government Code.

Page 13 of 45

P.L. 9-150 [effective February 23, 1968] amended §7001 to prohibit the Attorney General or Island Attorney from delegating to any attorney in private practice the collection of any account or other obligation owed to the government. On March 14, 1968, a new Section 7003.1 [P.L. 9-175] was added to the Government Code to allow the Attorney General to come to the defense of officers and employees of the government of Guam sued in their individual capacities for the performance of an authorized act. Such action, however, was subject to the approval of the Governor. This provision has essentially remained the same.

P.L. 10-1, effective February 3, 1969, made clear that the Attorney General [§7101] was the public prosecutor. It authorized the Attorney general to conduct on behalf of the government of Guam "the prosecution of all crimes against the laws of Guam ... and to conduct on behalf of the government of Guam all civil actions in which the government is a party interested.

On December 27, 1975, P.L. 13-117 amended the Attorney General's authority to give him common law powers. It provided:

> §7002. Same. The Attorney General shall have, in addition to the powers expressly conferred upon him by this Act, **those common law powers which include, but are not limited to,** the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for the redress of grievances which the citizens individually cannot achieve, **unless expressly limited by any law of Guam to the contrary.....**

The act which gave the Attorney General common law powers also limited the right of the Governor to remove the Attorney General. The Governor could only remove the Attorney General **for cause** (Section 7000, Government Code).

Indeed, the Office of the Attorney General has seen many amendments made to its governing statute since it was created by the First Guam Legislature and amendments continue up to the

present. Of all the amendments which have since been made, the most significant may be the amendment to the Organic Act to allow the government of Guam to legislate an elective Attorney General for Guam. That amendment to Guam's Organic Act and the subsequent resulting change in local law has lead to the election of Petitioner in the November, 2002 election and has ultimately lead that Petitioner to the present controversy which is presently before the Court.

### B. Current Laws which Define the Office and Powers of the Attorney General.

The Office of the Attorney General is now included in Guam's Organic Act. Specifically, 48 U.S.C.A. §1421g(d) provides:

> (1) The Attorney General of Guam shall be the **Chief Legal Officer of the Government of Guam.** At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.
> (2) Instead of an appointed Attorney General, **the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam** in general elections after 1998 in which the Governor of Guam is elected. **The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law.** A vacancy in the office of an elected Attorney General shall be filled--
> (A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or
> (B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

In 1998, Congress made the Attorney General position an Organic Act position. The purpose for including the position in the Organic Act was to provide a mechanism for Guam's legislature to provide for an elected Attorney General position. In setting into motion the election of the Attorney General position, Congress understood that the Attorney General position was not novel to Guam's

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 37 of 67

government but was an existing position with responsibilities and powers derived from the Guam Legislature. However, in making the Office of the Attorney General an Organic Act position, Congress only mandated that "the Attorney General of Guam shall be the **Chief Legal Officer of the Government of Guam**". Was it necessary for Congress to define or delineate the powers, duties, or authority of the Attorney General? Was Guam's law sufficient in that regard? In any event, what appears clear was that Congress intended to expressly repeal [or repeal by implication] any local law inconsistent with the Attorney General being the Chief Legal Officer of the government of Guam.

Regardless of the Organic Act amendment to the office of the Attorney General, the Guam Legislature has defined and given the Office of the Attorney General certain powers, authority and responsibilities. The basic powers of the Attorney General are contained in 5 G.C.A. §30101 et. seq. There are other statutes which refer to or grant certain powers to the Attorney General. These statutes are referenced in other parts of the Code. The powers and responsibilities of the Office of the Attorney General are illustrated in the following statutes:

**5 GCA § 30101. Attorney General.**
(a) The Department of Law of the government of Guam shall be administered by the Attorney General of Guam, who shall be elected by the people of Guam for a term of four (4) years.
(b) A candidate for the position of Attorney General of Guam shall declare no political party affiliation. Candidates for Attorney General of Guam shall be subject to the same campaign and personal financial reporting requirements as apply to candidates for I Maga'lahen Guåhan [the Governor], as well as all laws pertaining to campaign contributions. No nominating petition shall be required of a candidate for Attorney General of Guam.

**5 GCA § 30102. Department of Law, Cognizance.**
(a) Notwithstanding any other provision of law, the **Attorney General shall have cognizance of all legal matters**, excluding the Legislative and Judicial Branches of the government of Guam, **involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations,**

autonomous agencies and the Mayors Council, all hereinafter referred to as "agency'. Where any other law permits any agency or autonomous public corporation to retain counsel other than the Attorney General, this shall not preclude said agency or public corporation from requesting the services of the offices of the Attorney General, provided that said agency or autonomous public corporation shall reimburse the Office of the Attorney General for such services from funds of said agency or autonomous public corporation. Said reimbursement shall be deposited in the General Fund and credited to the Office of the Attorney General. In addition, and notwithstanding any other law to the contrary, any agency or autonomous public corporation of the government of Guam may advance funds to the office of the Attorney General for services and incidental travel to be rendered by said office on behalf of said agency or autonomous public corporation.

### 5 GCA § 30103. Common Law Powers of Attorney General.

The Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, those common law powers which include, but are not limited to, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve, unless expressly limited by any law of Guam to the contrary. The Attorney General may permit attorneys admitted to private practice in Guam or licensed collection agents to collect accounts or other obligations owing to the government of Guam, or to any agency or instrumentality thereof, if such procedure would be in the interest of the Government and expedite the collection of said account or obligation. Any agency or instrumentality not operating under yearly appropriations from the Legislature may retain counsel of its choice for the collection of obligations in the same manner as it may be permitted to retain counsel in other matters as permitted by its enabling legislation. Guam Memorial Hospital may permit the Attorney General or attorneys admitted to private practice in Guam and agents or licensed collection agents to collect accounts or other obligations owing to Guam Memorial Hospital.

### 5 GCA §30104. Attorney General as Public Prosecutor.

The Attorney General shall have cognizance of all matters pertaining to public prosecution., including the prosecution of any public officials.

### 5 GCA § 30109. Duties.

The Attorney General is the public prosecutor and, by himself, a deputy or assistant, shall:
(a) Conduct on behalf of the Government of Guam the prosecution of all offenses against the laws of Guam which are prosecuted in any of the courts of Guam, the District Court of Guam, and any appeals therefrom.
(b) Draw all informations, conduct grand jury proceedings, prosecute all recognizances forfeited in the courts and all actions for the recovery of debts, fines,

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 39 of 67

penalties and forfeitures accruing to the government of Guam, except as otherwise provided in this Act;

(c) **Conduct on behalf of the government of Guam all civil actions in which the government is an interested party**; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General.

(d) Deliver receipts of money or property received by him in his official capacity and file duplicates thereof with the Director of Administration;

(e) As soon as practical after the receipt of any money in his official capacity, turn the money over to the Director of Revenue and Taxation, and on the first Monday of each month file with the Director of Administration, an account, verified by his oath, of all monies received by him in his official capacity for the government of Guam during the preceding month;

(f) Be diligent in protecting the rights and properties of the government of Guam;

(g) Institute by any appropriate action proceedings on behalf of himself or any other public officer (not an employee) to have determined by the courts the validity of any law, rule or regulation of the government of Guam; and

(h)**Perform such other duties as are required by law.**

The statutes listed above enumerate some of the powers of the Attorney General existing within its basic statutory scheme. The Legislature has also enacted other laws which bear on the Attorney General's responsibilities. For instance, the Legislature has enacted Antitrust Laws and has made illegal any contract, combination, or conspiracy to restrain or monopolize trade (9 GCA §69.15). Criminal and civil penalties are established. 9 G.C.A. §69.45 authorizes the Attorney General to "bring an action for appropriate injunctive relief and civil penalties in the name of the people of Guam for a violation of this chapter." In authorizing the Attorney General to bring such action, the Legislature expressly recognized and provided that nothing in the chapter "shall limit any other statutory or common law rights of the Attorney General...".

The Guam Legislature has also enacted the Trade Practices and Consumer Protection Act. 5 G.C.A. §32101, et. seq. The Attorney General is authorized to maintain certain actions and may represent a consumer or consumers not in a class. Moreover, the Legislature has also provided that

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 40 of 67

nothing in this chapter shall limit any other statutory or "common law rights of the Attorney General". 5 G.C.A. §32105.

The Guam Legislature has clothed the Attorney General with the responsibility of collecting child support from non-custodial parents and absent fathers. It has also directed the Department of Public Health and Social Services to refer cases to the Attorney General for enforcement of support for public assistance rendered by the said department to families with dependent children. See 5 G.C.A. Section 34106.

The Attorney General has also been designated by the Legislature to play a vital role in the implementation and filing of claims against the government of Guam pursuant to the Government Claims Act. The Attorney General, subject to the approval of the Governor, may settle claims for damages to a motor vehicle under a certain sum. The Attorney General, along with the Governor, must also approve settlements entered into by autonomous boards and agencies for certain sums of money. See 5 G.C.A. Section 6206.

The Legislature has primarily entrusted to the Attorney General the responsibility for enforcing appropriate action against individuals who neglect or refuse to obey legislative subpoena or who refuse to testify or produce documents requested in legislative subpoenas. See 2 G.C.A. Section 3113.

With regard to the federal enforcement of territorial income taxes in Guam, the Attorney General has been entrusted with its enforcement. The appropriate federal statute provides:

§ 1424-4. Criminal offenses; procedure; definitions
Where appropriate, the provisions of part II of Title 18 and of Title 28, United States Code, and notwithstanding the provision in rule 54(a) Federal Rules of Criminal Procedure relating to the prosecution of criminal offenses on Guam by information, the rules of practice and procedure heretofore or hereafter promulgated and made effective by the Congress or the Supreme Court of the United States pursuant to

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 41 of 67

Titles 11, 18, and 28, United States Code, shall apply to the District Court of Guam and appeals therefrom; except that the terms, "Attorney for the government" and "United States attorney", as used in the Federal Rules of Criminal Procedure, shall, when applicable to cases arising under the laws of Guam, including the Guam Territorial income tax, mean the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.

It can be seen from some of the statutes (local and federal) which have made reference to the Attorney General that the Attorney General indeed is a primary figure, if not the chief figure, in the legal affairs and enforcement of the affairs of the government of Guam.

## V. STANDING PURSUANT TO THE COMMON LAW POWERS OF AN ATTORNEY GENERAL AND THE CONFLICTS IN DUTIES IN THE EXERCISE THEREOF

It undisputed that an Attorney General possesses common law powers. It is in the very essence of these common law powers [and its recognition by the Courts] that Courts have given the Attorney General the requisite standing to bring legal actions against appropriate persons, bodies, and entities. The extent and nature of those common law powers are illustrated in the following cases. The cases further illustrate that in the exercise of his common law powers, the Attorney General, many times, is faced with a conflicting duty.

In *State of Fla. Ex rel. Shevin v. Exxon Corp.*, 526 F. 2d 266, 1976, the State of Florida, through its Attorney General, brought an antitrust action against seventeen (17) major oil companies. The United States District Court for the Northern District of Florida dismissed the action as one beyond the Attorney General's authority and the Attorney General appealed. The Court of Appeals, Thornberry, Circuit Judge, held that the Attorney General's powers extended to the institution of suit under federal law without specific authorization of the individual government entities which allegedly had sustained the legal injuries asserted. The trial court's dismissal was reversed. The Court stated:

Page 20 of 45

Thus we conclude that (1) the Attorney General of Florida retains common law powers, (2) that those powers extend to institution of suits under federal law without specific authorization of the individual government entities who allegedly have sustained the legal injuries asserted, and (3) that neither the decisional nor statutory law of Florida negates such authority.

Commenting on the common law powers of the Attorney General, the Alabama Supreme Court in *Ex Parte Weaver*, 570 So. 2d 675, (1990) stated:

It is instructive to look at the history of the office of attorney general:
"The office of attorney general had its nascence in the *attornatus regis* of the thirteenth and fourteenth century England.

1 The *attornatus regis* served as the sovereign's primary legal representative, with considerable power subject to limitation only by the King. The office was carried over to colonial America, where it eventually became the office of attorney general. All fifty states have an office of attorney general created either by constitution or statute. The specific powers and duties vested in the office vary greatly among the states. Although some states restrict the attorney general's common-law powers by express statutory or constitutional language, the large majority of states have chosen to recognize the existence of these powers.

2 "The most far-reaching of the attorney general's common-law powers is the authority to control litigation involving state and public interests. It is generally accepted that the attorney general is authorized to bring actions on the state's behalf.

3 As the state's chief legal officer, 'the attorney- general has power, both under common law and by statute, to make any disposition of the state's litigation that he deems for its best interest.... [H]e may abandon, discontinue, dismiss or compromise it.'

4 In addition to having authority to initiate and manage an action, the attorney general may elect not to pursue a claim or to compromise or settle a suit when he determines that continued litigation would be adverse to the public interest.

5 "Most courts have given the attorney general 'a broad discretion ... in determining what matters may, or may not, be of interest to the people generally.'

6 The investment of such discretion is based on the premise that the attorney general should act on behalf of the public interest, or as the 'people's attorney.' In an early North Carolina Supreme Court decision, the court refused to interfere with the attorney general's use of his discretionary power to enter a nolle prosequi on grounds that the authority had not been used 'oppressively.'

7 Other courts have left undisturbed the use of the power to control litigation as long

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 43 of 67

as the attorney general's actions are not arbitrary, capricious, or in bad faith.

In *Com. Ex rel. Hancock v. Paxton*, 516 S.W. 2d 865, 1974, the court held that the Attorney General's constitutional, statutory and common law powers included power to initiate suit against State Department of Transportation and its commissioner to challenge constitutionality of two laws which made provisions for special automobile license plates for ham radio operators and for members of the General Assembly. The Kentucky Court of Appeals stated:

> As concerns the constitutional duties of the office, the only express one is that in the prescribed oath of office--to support the Constitution. The statutory powers and duties of the office are set forth in KRS 15.020. The most significant provisions of that statute, as concern the question here in issue, are that the Attorney General is 'the chief law officer of the commonwealth' and 'shall commence all actions or enter his appearance in all cases * * * in which the Commonwealth has an interest * * *.' **At common law, he had the power to institute, conduct and maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights.**

While the Kentucky Appeals Court upheld the power and authority of the Attorney General to file an action against the State Department of Transportation and its commissioner, it was not insensitive to the problems faced by the Attorney General when there are conflicts in duties. The Court commented:

> While KRS 15.020 imposes on the Attorney General the duty to 'attend to * * * any litigation or legal business that any state officer, department, commissioner, or agency may have in connection with, or growing out of, his or its official duties,' we believe the statute, in stating at the outset that the Attorney General is 'the chief law officer of the Commonwealth,' intends that in case of a conflict of duties the Attorney General's primary obligation is to the Commonwealth, the body politic, rather than to its officers, departments, commissions, or agencies. **We do not conceive that a suit brought by the Attorney General against a state officer, department or agency, seeking to uphold the Constitution, is a suit against the Commonwealth in the sense of a being a breach of the Attorney General's duty to represent the Commonwealth.**

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 44 of 67

In *Hansen v. Barlow*, 456 P. 2d 177, the Utah Supreme Court held that Attorney General, **by**

**virtue of inherent authority of his office**, had the power to commence an action to determine

whether a legislative amendment, providing for payment of per diem and expenses to members of

legislative council, and authorizing council to employ staff and fix their salaries, was constitutional.

The Court discussed the inherent common law powers of the Attorney General and stated:

> However, this court has repeatedly held that the attorney general has common- law
> ,powers and duties. The office of Attorney General is of ancient origin. The powers
> and duties appertaining to it were recognized by the common law, and the common
> law has been a part of our system of jurisprudence from the organization of Montana
> territory to the present day
>
> In this state the office of Attorney General is created by our state Constitution (sec.
> 1, Art. VII), which also provides that the incumbent of the office 'shall perform such
> duties as are prescribed in this Constitution and by the laws of the State,' The
> Constitution enumerates certain duties, * * * and then concludes by imposing upon
> the Attorney General 'other duties prescribed by law.' It is the general consensus of
> opinion that in practically every state of this Union whose basis of jurisprudence is
> the common law, the office of Attorney General, as it existed in England, was
> adopted as a part of the governmental machinery, and that in the absence of express
> restrictions, the common-law duties attach themselves to the office so far as they are
> applicable and in harmony with our system of government * * *.
>
> ...............................
>
> In discussing the powers of the attorney general the court in Darling Apartment Co.
> v. Springer, 25 Del. Ch. 420, 22 A. 2d 397, 403, 137 A.L.R. 803, 811, had this to say:
>
> 'The authorities substantially agree that, in addition to those conferred on it by statute,
> the office is clothed with all of the powers and duties pertaining thereto at common
> law; and, as the chief law officer of the State, the Attorney General, in the absence
> of express legislative restriction to the contrary, may exercise all such power and
> authority as the public interests may from time to time require. In short, the Attorney
> General's powers are as broad as the common law unless restricted or modified by
> statute.'

In *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 607 N.E. 2d 165, (1991),

the Supreme Court of Illinois dealt with the issue whether the Attorney General had standing to file

a suit against various contractors which had participated in various state highway projects with the

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 45 of 67

Metropolitan Fair and Exposition Authority. The Supreme Court held that the Attorney General had standing under common powers to assert on behalf of the state claims relating to Metropolitan Fair and Exposition Authority's contracts based upon common law fraud and the state's Consumer Fraud and Deceptive Business Practices Act. The Court stated:

> Before discussing the sufficiency of the complaint, we must first consider defendants' contention that the Attorney General has no standing to assert claims relating to the Authority's contracts. The standing doctrine assures that issues are presented to a court only by parties who have a sufficient stake in the outcome of the controversy. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill.2d 516, 527, 70 Ill.Dec. 195, 449 N.E.2d 69, citing *Sierra Club v. Morton* (1972), 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636.) Absent the necessary allegations of interest in the controversy, a party lacks standing to sue.
>
> The Authority is a public corporation established by the Metropolitan Fair and Exposition Authority Act (Ill.Rev.Stat.1985, ch. 85, par. 1223) to promote, operate and maintain conventions and to construct, equip and maintain buildings for these conventions (Ill.Rev.Stat.1985, ch. 85, par. 1224). Under its enabling statute, the Authority has the power to enter into contracts (Ill.Rev.Stat.1987, ch. 85, par. 1225(d)) and may sue and be sued in its own name (Ill.Rev.Stat.1987, ch. 85, par. 1223). Defendants argue that because the Authority has not filed suit itself, nor has it authorized the Attorney General to do so, the Attorney General lacks standing to bring claims arising out of the Authority's contracts.
>
> The Attorney General brings this action "on behalf of the people and taxpayers of Illinois," and he asserts three bases for his standing to bring this suit. First, he argues that he has standing under the common law powers delegated to him by the Illinois Constitution. Second, he argues the legislature has provided standing under the statutory powers of his office. Third, he argues that a taxpayer would have standing to bring this suit and, therefore, he has standing as the representative of all the taxpayers of this State. Because we believe the Attorney General has standing under his common law powers, we need not address the latter two arguments.
>
> Article V, section 15, of the Illinois Constitution of 1970 provides:
> "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."
> In *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130, this court held that the Attorney General has all the common law powers incident to that office. In *Fergus*, this court stated:
> "[T]he Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may

provide otherwise." (*Fergus*, 270 Ill. at 342, 110 N.E. 130.)

In addition to representing the State and its agencies, the Attorney General is responsible for representing the broader interests of the State. (*Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill.2d 394, 401, 14 Ill.Dec. 245, 372 N.E.2d 50.) Further, although the legislature may add to the Attorney General's common law powers, it may not detract from them. The holding of *Fergus* was incorporated into the Illinois Constitution of 1970. *People ex rel. Scott v. Briceland* (1976), 65 Ill.2d 485, 3 Ill.Dec. 739, 359 N.E.2d 149; *Stein v. Howlett* (1971), 52 Ill.2d 570, 289 N.E.2d 409.

In *Wade v. Mississippi Co-op. Extension Service*, 392 F. Supp. 229, N.D. Miss., (1975), the Court examined "whether in a case of undeniable statewide interest the Attorney General of the State of Mississippi has authority to assume defense of an action against the Board of Trustees of State Institutions of Higher Learning (the Board), an autonomous and constitutional state agency which wishes instead to retain private counsel to represent its official interests". The Board had been involved in a suit in which mammoth racial discrimination was alleged. The Board retained its own attorney during the course of the civil litigation. Several years after the case had been pending, the Attorney General advised the Court and the parties that he was now moving in to represent the interest of the Board and all affected state agencies. When the United Stated, as plaintiff-intervenor, moved to amend its complaint, the Board, through its retained counsel, filed an objection. The Attorney General moved to strike the opposition. The court stated:

> The Attorney General of Mississippi is a constitutional officer ordained by the State's original charter of 1817 and continued in every state constitution since.
>
> Although § 173, the provision of Mississippi's present constitution which establishes the office, is facially silent as to its powers and duties, specific legislative authorization for the power now claimed by the Attorney General is not wanting. Indeed, statutory designation of the Attorney General as legal counsel for the State in all civil cases stretches forward in unbroken succession since territorial times.If the present statutory language of § 7-5-1, granting the Attorney General 'the powers of the attorney general at common law and . . . the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide

Page 25 of 45

interest,' were the sole guide, it would be clear that the Attorney General is empowered to defend the Board against the comprehensive complaint of racial discrimination in the operation of statewide interest,' were the sole guide, its charge. The authority of the Attorney General to act on behalf of the Board, however, is more than statutory; it is of constitutional dimension.

Though § 173 makes no delineation of the nature and scope of the Attorney General's power, the Supreme Court of Mississippi has consistently ruled that the constitutional creation of the office, even without further statutory enactment, vested in the Attorney General all powers which that officer possessed at common law and incorporated that common-law authority into the constitution itself.

The duties of the Attorney General were not prescribed by the Constitution, nor did it provide that they would necessarily have to be prescribed by the legislature. They existed at common law . . .. The creation of the office of Attorney General by the Constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm. Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So.2d 480, 486 (Miss.1944).

See also Gandy v. Reserve Life Ins. Co., 279 So.2d 648, 649 (Miss.1973); State v. Warren, 254 Miss. 293, 180 So.2d 293, 299 (1965); *233 Dunn Const. Co. v. Craig, 191 Miss. 682, 2 So.2d 166, 174-75 (1941); Capitol Stages v. State, 157 Miss. 576, 128 So. 759, 763 (1930).

The Board's final, and most serious, contention is that § 213-A of Mississippi's Constitution, inserted in 1944, created the Board as an autonomous agency entrusted with the management and control of Mississippi's senior colleges and universities, and thus invested the Board with the power to employ legal counsel in all cases to which it is a party, independently of the Attorney General. Mississippi has no judicial precedents interpreting the scope of § 213-A or the statutes passed thereunder. Hence, this case is one of first impression. Since § 213-A nowhere expressly grants to the Board authority to engage counsel for the purpose of conducting litigation of state-wide interest, the Board's assertion that § 213-A bestows such authority can only be based upon a claim that § 213-A impliedly effects a pro tanto repeal of the plenary authority conferred on the Attorney General by § 173

to represent the State in all litigation of such character. This contention is bottomed upon the proposition that the Board has inherent power as a constitutionally-created autonomous entity, particularly in view of certain language found in Miss. Code Ann. § 37-101-7 (1972):

The board shall also have the authority to employ on a fee basis such technical and professional assistance as may be necessary to carry out the powers, duties and purposes of the board.

It is easily perceptible that even if the foregoing statute purports to give the Board authority to retain private legal counsel as professional advisors, no statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern.

Page 26 of 45

But we do not read either §37-101-7 or § 213-A of the State's constitution as conferring such authority upon the Board. Mississippi jurisprudence places high priority on harmonizing, wherever possible, separate constitutional provisions so as to give effect to all; and repeal of a specific constitutional provision by implication is never favored. State v. Jackson, 119 Miss. 727, 81 So. 1 (1919). The Board's purpose, as prominently expressed in its constitutional charter and complementary legislation, is to manage and control the educational institutions under its charge 'to the greatest advantage of the people of the State', uninfluenced by political considerations and free of domination by the Chief Executive of the State. The statutory powers and duties of the Board, enumerated at length in Miss. Code Ann. § 37-101-15, are clearly directed toward this concept of the Board as a nonpolitical and independent agency autonomous within its sphere of operations in all fields of higher education. But the autonomy of the Board, and hence its ability to act independently of the Attorney General and other governmental officers, extends only to those highly important functions for which it was created. Just as the Board could not, independently of the legislature, levy and collect taxes for the support of state universities, so too it cannot, without a specific constitutional grant, act in those areas expressly and constitutionally entrusted to the authority of the Attorney General. Proper functioning of the Board as an educational agency is not dependent on its ability to retain private counsel in cases of this sort, which are of state-wide interest. Thus, the power so to act may not be implied from the terms of § 213-A.

We emphasize that this case does not concern the authority which the Board may legally exercise in employing counsel in the discharge of many activities, which may be of a purely local, administrative, or proprietary nature. For example, the Board may need legal assistance in purchasing real estate, collecting debts from others, preparing and reviewing employment contracts with professional staff, and other matters similarly related to the Board's ordinary functions. Whether the Board may engage counsel, independently of the Attorney General's office, to assist in matters of this kind is not presented by this case, and we express no opinion thereon.

But in actions of indisputable statewide interest, where the Attorney General is specifically empowered to act for state agencies by long-established constitutional doctrine, due regard for Mississippi's Constitution by applying the familiar rule of pari materia interpretation mandates that the Board not be allowed to usurp his constitutional prerogative. See St. Louis & San Francisco R. Co. v. Benton County, 132 Miss. 325, 96 So. 689 (Miss.1923); State v. Jackson, supra.

Moreover, in the eventuality of a conflict of interest between state agencies-- for example, between the Board and one or more junior colleges or other educational entities joined as defendants in this cause-- the Attorney General has given his personal assurance to this court to take whatever steps may be necessary to protect all interests, including compliance with such orders as this court may see fit to enter. **We hold that the Board is without power to engage counsel in this cause to represent its official interests independently, and over the objection of the State's Attorney General, and the Attorney General's motion to strike is hereby**

Page 27 of 45

**sustained.**

The Attorney General's ability to maintain actions depends on the public interest nature of the litigation. The Courts have been the final arbiters of the public interest nature asserted by the Attorney General. In *Blumenthal v. Barnes*, 261 Conn. 434, 804 A. 2d 152, (2002), the Connecticut Supreme Court held that the Attorney General had no common law authority to sue the president of a non profit corporation in relation to private gifts which had been made to the corporation, although the common law authority to sue extended to charitable and public gifts made to the corporation.

In *State v. City of Oak Creek*, 232 Wis. 2d 612, 605 N. W. 2d 526, (2000), the Wisconsin Supreme Court held that the Attorney general had no standing to sue to challenge the validity of a statute. Rather, the Attorney General had a duty to defend the statute. The Court acknowledged, however, that the Attorney general may have standing if directed by the governor to challenge the statute or if there if the case results in the granting of a petition for original jurisdiction.

## VI. ATTORNEY GENERAL ACTIONS IN RELATION TO THE GOVERNOR AND IN ITS RELATIONSHIP TO THE EXECUTIVE FUNCTION.

Existing cases provide guidance as to the appropriateness of actions by an Attorney General against the Governor, in relation to the Governor's authority, his executive functions, in particular, his faithful execution of the laws. The following cases are illustrative:

In *Perdue v. Baker*, 586 S. E. 2d 606, (Sept. 4, 2003), the Georgia Supreme Court was faced with the issue whether the Attorney General had the authority under state law to appeal a court decision invalidating a state redistricting statute despite the Governor's order to dismiss the appeal. Because there was constitutional authority for the General Assembly to vest the Attorney General with specific duties and a state statute vested the Attorney General with the authority to litigate in

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 50 of 67

the voting rights action, the Supreme Court held that the Attorney General had the power to seek a final determination on the validity of the State Senate redistricting statute under the federal Voting Rights Act. The Court affirmed the trial court's ruling that the Governor had no clear legal right to order the Attorney General to dismiss the appeal filed on behalf of the State of Georgia in the United States Supreme Court. Thus, the Governor's application for a writ of mandamus was denied. In this case, both the Governor and the Attorney General argued that each had the sole right to determine the public interest. The Court stated:

> ...we reject the broader claim by each officer that he has the ultimate authority to decide what is in the best interest of the people of the State in every lawsuit involving the State of Georgia. By giving both the Governor and Attorney General the responsibility for enforcing state law, the drafters of our constitutions and the General Assembly have made it less likely that the State will fail to forcefully prosecute or defend its interests in a court of law or other legal proceeding. This overlapping responsibility is also consistent with the existing practice in state government. Most important, it provides a system of checks and balances within the executive branch so that no single official has unrestrained power to decide what laws to enforce and when to enforce them.
>
> We also reject the dissent's narrow characterization of the Attorney General's role as merely that of legal counsel to the Governor. To imply that the Georgia Rules of Professional Conduct control the Attorney General's relationship to the Governor ignores the important and independent role assigned to the Attorney General under our constitution. Accepting the dissent's argument would eviscerate the Attorney General's separate constitutional role.
>
> The State of Georgia is not one branch of government, one office, or one officer. The State's authority resides with the people who elect many officers with different responsibilities under valid law.
>
> 2. Our conclusion that both officers have the duty to enforce state laws is consistent with the language and legislative history of article V of the 1983 Georgia Constitution. The first paragraph on the Governor's duties and powers in the Executive Article states the following: "The chief executive powers shall be vested in the Governor. The other executive officers shall have such powers as may be prescribed by this Constitution and by law."
>
> This provision made two changes from previous constitutions. It added the word "chief" to the first sentence and added the second sentence referring to the relationship between the Governor and other executive officers.

...............................................................

Page 29 of 45

On the other hand, the executive branch generally has the power and authority to control litigation as part of its power to execute the laws, and a law that removes from the executive branch sufficient control of litigation may well violate separation of powers. **However, the executive branch does not have the authority to decline to execute a law under the guise of executing the laws: "To contend that the obligation imposed ... to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the Constitution and entirely inadmissible."** The power to forbid the execution of the laws would enable the executive branch to nullify validly enacted statutes. In that situation, the executive branch would encroach upon the legislative power to repeal statutes or upon the judicial branch's power of judicial review. What the executive branch cannot do directly, it cannot do indirectly. Thus, even though the executive branch generally has the power and authority to control litigation, it cannot exercise this power in order to prevent the execution of a law.

In *State ex rel. Condon v. Hodges*, 349 S.C. 232, 562 S. E. 2d 623, (2002), the Supreme Court of South Carolina exercised its original jurisdiction to address the issue whether the Attorney General had the authority to bring suit against the Governor. Defendants argued that the Attorney General was violating the South Carolina Constitution and the South Carolina Code by suing the Governor in his official capacity. The Constitution provides:

The Governor shall take care that the laws be faithfully executed. To this end, the *Attorney General shall assist and represent the Governor, but such power shall not be construed to authorize any action or proceeding against the General Assembly or the Supreme Court*

In *Condon v. Hodges*, the Supreme Court determined that the Attorney General had the authority to sue the Governor and in the process of doing so, he was not prohibited by Rules of Ethics from doing so. The Court stated:

There is no provision in the South Carolina Code or Constitution that explicitly prevents the Attorney General from bringing a civil action against the Governor. Further, "[a]s the chief law officer of the State, [the Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such *power* and *authority as public interests may from time to time require,* and may institute, conduct and maintain all such suits and *proceedings* as *he deems* necessary

Page 30 of 45

for *the enforcement of the laws of the State,* the *preservation of order,* and the *protection* of *public rights."*

*State ex rel. Daniel v. Broad River Power Co., 157 S.C. 1, 68, 153 S.E. 537, 560 (1929), aff'd 282 U.S. 187, 51 S.Ct. 94, 75 L.Ed. 287 (1930)* (citation omitted and italics added by *Daniel* court). *Cf. State v. Beach Co., 271 S.C. 425, 248 S.E.2d 115 (1978)* (while Attorney General has broad statutory authority, and arguably common law authority, to institute actions involving welfare of State, that authority is not unlimited). The Attorney General has a dual role. He is an attorney for the Governor and he is an attorney for vindicating wrongs against the collective citizens of the State. *See Porcher v. Cappelmann, 187 S.C. 491, 198 S.E. 8 (1938)* (Attorney General represents sovereign power and general public). Allowing the Attorney General to bring an action against the Governor when there is the possibility the Governor is acting illegally is consistent with the duties of this dual role. Further, because the office of attorney general exists to properly ensure the administration of the laws of this State, the Attorney General is merely ensuring that Proviso 72.109 is being administered the way in which the General Assembly intended. *See Langford v. McLeod, 269 S.C. 466, 238 S.E.2d 161 (1977)* (office of attorney general exists to properly ensure administration of laws of this State).

The above precepts lead to the conclusion that the Attorney General can and should bring an action against the Governor if there is the possibility the Governor is acting improperly...

From this language and the fact there is no statutory or constitutional prohibition against the Attorney General suing the Governor, we find the Attorney General has the authority to sue the Governor when he is bringing the action in the name of the State for the purpose of asserting that a separation of powers violation has occurred. Moreover, as stated previously, the Attorney General can bring an action against the Governor when it is necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights.

...........................................

Defendants query whether the Attorney General's action of bringing suit against the Governor violates the Rules of Professional Responsibility. Defendants state the Attorney General and the Governor have an attorney-client relationship, and that the Attorney General has violated Rule 1.7(a) of Rule 407 of the Rules of Professional Responsibility, which states "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: ... (2) Each client consents after consultation."

Defendants contend if the Governor had requested the Attorney General represent him in this matter, the Attorney General would be required to do so. *See S.C.Code Ann. § 1-7-50.* In that event, the Attorney General would be on both sides of the action which Defendants assert is impermissible. Defendants also assert that because the Attorney General is currently representing the Governor in other legal matters, the Attorney General cannot ethically bring the instant action against the Governor.

Page 31 of 45

We have previously found that an analogous situation did not create a conflict of interest. *Cf. Langford v. McLeod, supra* \*\*629 (original proceeding brought for declaratory judgment as to status, responsibility, and duty of Attorney General in representing municipal employees in civil actions; Court held Attorney General may represent public officials in civil suits as well as criminal ones without being subject to imposition of conflicting or unethical duties); *State ex rel. McLeod v. Snipes*, 266 S.C. 415, 223 S.E.2d 853 (1976) (Attorney General sought declaratory judgment that statute requiring him to represent officers of State in criminal proceedings was in conflict with constitutional provision designating Attorney General as chief prosecutor of State; Court held no conflict of interest arose from two duties of Attorney General as he could appoint members of his staff or solicitors or assistant solicitors to participate in prosecution and defense).

**Furthermore, the Attorney General, as noted above, has a dual role of serving the sovereign of the State and the general public. Thus, the Attorney General is not violating the ethical rule against conflicts of interest by bringing an action against the Governor.**

While the Attorney General is required by the Constitution to "assist and represent" the Governor, the Attorney General also has other duties given to him by the General Assembly, and elaborated on by the Court, which indicate the Attorney General can bring an action against the Governor.

In *People ex. Rel. Deukmejian v. Brown*, 172 Cal. Rptr. 478, (1981), the Attorney General of California sought a peremptory writ of mandate to compel the Governor, the Controller, the State Personnel Board, and the Public Employment Relations Board to perform their statutory and constitutional duties with regard to the recently enacted State Employer-Employee Relations Act. The Supreme Court of California held that the Attorney General could not maintain the action where the Attorney General had represented certain state clients, given them legal advise with regard to the pending litigation, and then withdrawn and sued the same clients on the next day on the cause of action arising out of the identical controversy.

The Attorney General argued, however, that his common law powers authorized him to commence such an action. The Supreme Court responded:

2. Article V, section 1, of the California Constitution provides that "The supreme executive power of this State is vested in the Governor. The Governor shall see that

the law is faithfully executed."

Article V, section 13, defines the powers of the Attorney General inter alia in this manner: "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State." The constitutional pattern is crystal clear: if a conflict between the Governor and the Attorney General develops over the faithful execution of the laws of this state, the Governor retains the "supreme executive power" to determine the public interest; the Attorney General may act only "subject to the powers" of the Governor.

Consistent with the Constitution, Government Code section 12010 provides: "The Governor shall supervise the official conduct of all executive and ministerial officers." (Spear v. Reeves (1906) 148 Cal. 501, 504, 83 P. 432.) The Attorney General is an executive officer who "shall report to the Governor the condition of the affairs of his office" (Gov. Code, s 12522).

We recognize there are cases in other jurisdictions that permit their attorneys general to sue any state officer or agency, presumably without restriction. Such opinions arise, however, under the peculiarities of the prevailing law in those several states, and are not persuasive here. (See, e. g., Conn. Com'n. v. Conn. Freedom of Information ( 1978) 174 Conn. 308, 387 A.2d 533); Feeney v. Commonwealth (1977) 373 Mass. 359, 366 N.E.2d 1262; E.P.A. v. Pollution Control Bd. (1977) 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50; Commonwealth ex rel. Hancock v. Paxton (Ky.1974) 516 S.W.2d 865.)

On the other hand, several jurisdictions have prevented the attorney general from acting without constitutional or statutory authority. A federal court found it incongruous for an attorney general, purporting to act for the people, to mount "an attack by the State upon the validity of an enactment of its own legislature." (Baxley v. Rutland (D.Ala.1976) 409 F.Supp. 1249, 1257; see also Hill v. Texas Water Quality Bd. (Tex.Civ.App.1978) 568 S.W.2d 738; Motor Club of Iowa v. Dept. of Transp. (Iowa 1977) 251 N.W.2d 510, 515; People ex rel. Witcher v. District Court, etc. (1976) 190 Colo. 483, 549 P.2d 778; Garcia v. Laughlin (1955) 155 Tex. 261, 285 S.W.2d 191, 194; State v. Hagan (1919) 44 N.D. 306, 175 N.W. 372, 374; State v. Huston (1908) 21 Okl. 782, 97 P. 982, 989.)

Arizona, the constitution of which, like ours, declares that its governor "shall take care that the laws be faithfully executed" (*159 Ariz.Const., art. V, s 4), reached the same conclusion as we do herein. In Arizona State Land Department v. McFate (1960) 87 Ariz. 139, 348 P.2d 912, 918, the supreme court of that state declared in an unanimous opinion, "Significantly, these powers are not vested in the Attorney General. Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed."


## VII. APPLICATION OF ORGANIC ACT AMENDMENTS, LOCAL LAWS

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 55 of 67

## AND CASE LAW TO PRESENT CONTROVERSY

## A. REQUIREMENTS OF THE PROCUREMENT APPEALS BOARD

The Attorney General has brought this action [alternative writ of mandamus] to compel *I Maga'lahi* to appoint members of the Guam Procurement Appeals Board. This Board has been created by the Legislature to provide a form for appeals from procurement practices. This is a Board that has never been empaneled since its creation in 1986. The enabling statute has gone through amendments for the most part to allow greater eligibility for membership. Prior to the amendments, a member was required to have five years of procurement experience for eligibility. To date, only two members have ever been confirmed to this Board.

The Board serves an important governmental function because this Board is the final administrative body where challenges to awards of government bids and contracts can be made. The absence of such a Board has required aggrieved parties to file court actions and seek judicial remedies even though Guam law provides an administrative appeal level where the challenges could be resolved. Instead, the courts of Guam have been substituted as the body where challenges can be brought forth. Incumbent governors have been criticized in the past for their failure to empanel such Board. Criticism in the past has come from the legislative branch. The legislature has also seen fit to amend the act to allow for flexibility in the composition of its membership.

In bringing this action, the Attorney General has alleged that while *I Maga'lahi* has been in office for approximately ten (10) months, he has yet to make the required appointments to the Procurement Appeals Board. 5 G.C.A. §5710 provides that the "members of the Board shall be appointed by the Governor". 5 G.C.A. §5702(f) further provides that "the Governor shall appoint three (3) alternate members to the Board". It is apparent that among the countless and innumerable

tasks within the Governor's responsibilities with regard to his faithful execution of the laws, he is no less required to make the said appointments to the Procurement Appeals Board. This is a responsibility provided by local law that *I Maga'lahi* must also faithfully execute.

## B. DOES THE ATTORNEY GENERAL HAVE AUTHORITY TO SUE THE GOVERNOR?

In determining whether the Attorney General has authority or the requisite standing to bring the mandamus action, the Court must extensively review the Attorney General's powers and ascertain whether such powers authorize him to bring the present action or whether he is expressly excluded by a statute from filing the present action. Thus, unless there is a specific statute that prevents the filing of this mandamus action, at a minimum, the Attorney General's common law powers authorize the filing of this action.

Generally, the powers of an Attorney General are found in the respective state constitution or in the enactments of the various state legislatures. These are the enumerated or express powers. It is also not disputed that the Attorney General has common law powers which has its roots in the English system. The extent of the Attorney General's enumerated powers as well as his common law powers have been the subject of many state court decisions. These decisions are not uniformed and are conflicting to some degree.

Petitioner, the present Attorney General, advocates his position to be a constitutional office, i.e., he exercises authority pursuant to a congressional mandate as expressed in the Organic Act of Guam. Since his position was created by Congress, he wields authority under an analogous "supremacy clause" because of his designation as the **"Chief Legal Officer of the Government of Guam"** in the Organic Act. The Attorney General boldly asserts that he needs no other authority other than this designation to represent the government of Guam in all matter in which it is

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 57 of 67

interested, to undertake all actions for the public benefit and to prosecute individuals for the commission of crimes. The Attorney General also asserts that the local legislature has no authority to diminish his present powers but it may augment such powers. Furthermore, the Attorney General argues that the nature of his office inherently provides him common law powers associated with every Attorney General. Thus, in addition to his designation as the Chief Legal Officer of the government of Guam, he also possesses common law powers similarly possessed by other Attorneys General. It is this designation as the Chief Legal Officer in the Organic Act of Guam, it is argued, as well as his common law powers inherent in that office that authorize him to bring this action against *I Maga'lahi*.

Respondent, *I Maga'lahi*, argues on the contrary that there is no statute which expressly authorizes the Attorney General to bring a mandamus action against him. Furthermore, since the Organic Act designates *I Maga'lahi* as the chief executive officer in the executive branch, he alone is entrusted with the faithful execution of the laws, not the Attorney General. The present action is an attempt to wrestle away from him his responsibilities in the execution of the laws. *I Maga'lahi* further argues that the Attorney General has no common laws powers under the Organic Act nor does he have such powers under local law. Furthermore, even if he had statutory common law powers, the Governor's designation as the chief executive officer under the Organic Act of Guam negates any common law authority that the Attorney General may have in bringing the present action.

Does the Organic Act's designation of the Attorney General as Chief Legal Officer supply him with inherent common law powers? Does the Attorney General possess common law powers? Even if the Court were to conclude that the Attorney General has no common law powers which emanate from his Organic Act position, a review of Guam's laws shows that the Attorney General

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 58 of 67

has been granted common law powers by the Guam Legislature. This grant of common law powers is contained in §30103 of 5 G.C.A. The Attorney General possesses common law powers which are not defined. The common law powers include those undertakings specifically mentioned in Section 30103 but are not limited to them. Thus, he has powers to bring actions which affect the public interest **unless expressly limited by any law of Guam to the contrary.**

Under his common law powers, an Attorney General has the power to maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights. It is in the furtherance of these stated purposes that he has been held to have had authority to sue state officers, departments and agencies.

In the pursuit of these stated purposes, can the Attorney General sue the Governor? It would appear that under his common law powers, the Attorney General would have authority to sue the Governor unless there is a specific statute which expressly limits this power to do so. This is so because case law has upheld the right of the Attorney General to sue state officers for enforcement of state laws. The right to sue the Governor under the Attorney General's common law power was recognized and upheld in *State ex rel. Condon v. Hodges*, supra. Since the Attorney General's authority to sue has been answered in the affirmative, the Court must proceed to ask the next question.

Does the Governor's executive powers expressly limit the Attorney General's power to bring this action. The Governor's executive powers stand on the same level as the Attorney General. The Governor also occupies a constitutional office under the creation of Congress in the Organic Act of Guam. The Governor is the executive branch's chief executive officer. The Attorney General is the head of the Department of Law and the Department of Law is within the Executive Branch. The

Page 37 of 45

Governor is entrusted with the faithful performance of the laws. The Governor is entrusted with appointment powers. He and not the Attorney General appoints members of boards and commissions. It is in this context of the separation of powers [the Attorney General's office is in the executive branch and the Governor is the head of the said branch] that the Governor argues that he cannot be sued by the Attorney General. He is the head of the executive branch, charged with the faithful execution of the laws, and the sole determinant of the public interest.

The Organic Act makes the Governor the chief executive officer charged with the general supervision and control over the executive branch of the government of Guam and charged with the faithful execution of the laws. The Organic Act makes the Attorney General the Chief legal Officer of the government of Guam. The Governor is head of the executive branch but the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.

With regard solely to the executive branch, does the Governor's control over the executive branch expressly include control over the Attorney General such that the present action cannot be maintained?

Assuming that there were some conflict in the roles within the executive between the Governor and the Attorney General, the statutory authority of the Attorney General should prevail because his statute was enacted subsequent in time by congress and it is specific to an office and not general as the Governor's supervisory and control power over the executive branch. The Court notes that the Attorney General no longer is subject to the removal authority of the Governor. Thus, the

Governor's appointive control over this part of the executive has been removed from his immediate control. The Attorney General is now elective and he may be removed not by the Governor but through procedures specified in Section 1422 of the Organic Act. The Attorney General may also be removed for cause in accordance with procedures established by the Legislature in law. The whole legislative intent behind the elective Attorney General was to remove the Attorney General from the control of the Governor and make the office independent. Therefore, it does not appear that the Governor's supervision and control over the executive branch renders the Attorney General hapless in bringing suits against the Governor. In similar fashion, the existence of the Department of Education within the executive branch does not render invalid the present school board merely because the Governor has general supervision over the executive branch. The placement of the education system within the control of the government of Guam has similar effect to the creation of the office of the Attorney General as the chief legal officer of the government of Guam and its resulting placement outside the reach of the executive head.

In ascertaining whether the Attorney General can file this action against the Governor, the final question the Court must ask is whether the Rules of Professional Conduct prevent the Attorney General from bringing the mandamus suit. Is the Attorney General so prevented?

*I Maga'lahi* argues that there was a violation of ethical duties when the Attorney General filed this mandamus action against him because in doing so the Attorney General brought suit against his own client. This is necessarily so because the Attorney General is the attorney for the government of Guam and has cognizance over all legal matters involving the executive branch. *I Maga'lahi* is the head of the executive branch. As head of the executive branch, *I Maga'lahi* is the client of the Attorney General.

Page 39 of 45

Guam's Rule of Professional Conduct [1.7(a)] mandates that a lawyer shall not "be directly adverse to another client" absent a waiver. *I Maga'lahi* has never given the Attorney General a waiver, but the Attorney General has filed this action against *I Maga'lahi.* The Attorney General has therefore violated his ethical duties and should be enjoined from doing so.

*I Maga'lahi* argues that in *People ex. Rel. Deukmejian v. Brown*, the California Supreme Court held that it was not ethical for the Attorney general to file suit against the Governor, the very person he was supposed to represent. The *Deukmejian v. Brown* case, however, was one where the Attorney General had represented state clients, given them legal advice with regard to the pending litigation, then withdrew from their representation and sued the same clients the next day on a cause of action arising out of the identical controversy. The Court held this was improper conduct by the Attorney General and it was a violation of the rules of professional conduct. The decision in *Deukmejian v. Brown* was narrow, however. The Supreme Court, while acknowledging the dual role of the Attorney General, [as the representative of state agencies and the guardian of the public interest] determined that his common law powers did not authorize the Attorney General to sue the Governor because the California state constitution designated the Attorney General the chief legal officer **subject to the powers and duties of the Governor.** If there was a conflict between the two offices, the Governor retained the supreme power to determine the public interest because the Attorney General's common law power was subject to the express powers and duties of the Governor.

Most jurisdictions recognize a dual role with the Office of the Attorney General. Some of these jurisdictions have recognized and upheld the common law powers of an Attorney General to bring an action against state officers in the enforcement of the laws, the preservation of the public

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 62 of 67

order and the protection of the public interest. It was the public interest in *Condon v. Hodges* that lead the South Carolina Supreme Court to conclude that the Attorney General could and should bring an action against the Governor if there is the possibility he may be acting improperly. Moreover, the Court held that any existing attorney-client relationship between the Attorney General and the Governor would not prevent the bringing of the action. Moreover, it did not represent a conflict of interest. Because of the Attorney General's dual role, he is not violating the rules of ethics against conflicts of interest by bringing an action against the Governor.

The Attorney General has also cited the court to two Superior Court decisions in which dual representation was not a disqualifying factor. In *People v. Castro*, CF 324-98, then Judge Frances Tydingco-Gatewood ruled that Guam's Rules of Professional Responsibility could not be mechanically applied to the Attorney General's office and did not disqualify the Attorney General from prosecuting the Defendant even though it was representing the Defendant in a civil matter with regards to the claim filed against the Defendant under the Government Claims Act. The Court held that the "mechanical application of the Guam Rules of Professional Conduct to the Attorney general's Office is disfavored because the Attorney General is 'the only one of its kind' and is entitled to a presumption of impartiality".

In *Attorney General of Guam v. Y'Asela Pereira*, Super. Ct. No.SP32-03, this Court recognized the special statues of the Attorney General as the chief legal officer of the government of Guam and his dual role in serving the government of Guam and the public interest.

If the Court were to agree with the Governor and disable the Attorney General from bringing suit against him which the Attorney General has filed in the name of the public interest, [enforcing the laws of Guam by requiring the Governor to perform an act required by law - the appointment

Case 1:04-cv-00035    Document 3    Filed 07/13/2004    Page 63 of 67

of members to the Procurement Appeals Board], would there be any other protector or guardian of the public interest who would be able to do so? It would appear that a person aggrieved with a procurement process might forego filing a suit to require the governor to make an appointment because there might not be standing to commence such a suit. An aggrieved person may not have standing to allege injury or harm because his appeal may be brought directly to the courts. Thus, he may not be injured in that sense to have the requisite standing to sue the Governor to make appointments to the Board.

Moreover, a ruling by this Court that the Governor cannot be sued by the Attorney General because he is the Attorney General's client may very well result in a type of judicial grant of immunity from suits. Officers of the executive branch may avoid suit when they act improperly or in violation of the law because they derive legal representation from the Attorney General. This cannot be the case nor can this be sound public policy because no one is above the law. It would be unreasonable for this Court to hold that the Attorney General cannot sue the Governor because the faithful execution of the laws rests solely with the Governor. Whether the Governor may be sued to answer why he has not made appointments to the Procurement Appeals Board is the issue herein, not when he should make appointments. The Governor states that in the prioritization of his many areas of responsibility in the execution of the laws, he is in the process and is still interviewing individuals for membership in the said Board. These are issues, however, that relate to the merits of the petition. The Court, upon a return on the alternative writ may very well agree with the Governor's position - that in the execution of the laws, he may need and should be afforded additional time to make his appointments. But, as the Court *in Purdue v. Baker,* supra, acknowledged: the Governor's executive power [his faithful execution of the laws of Guam] cannot

be used to prevent the execution of another law, i.e., his duty under Guam law to make appointments to the Procurement Appeals Board.

The Court also finds that the better view regarding the Attorney General's dual role is one where the public interest supercedes any conflict in the duties of the Attorney General in favor of the public interest. The general public interest should not be subservient to the Governor's interest as it relates to the faithful execution of the laws. The Governor, like the Attorney General, represents the people, and the public's interest should or must prevail over the individual interests of the governor as well as the Attorney General. In coming to this conclusion, the Court does not intimate that the Attorney General has the final determination of what is in the public interest. The Governor may very well have a different view of what is the public interest. When their positions conflict as to the public interest, as in the controversy before the court, it is appropriate that the Courts determine what the public interest calls for.

## DITETMINASION[8]

For the reasons stated above, the Court hereby finds that in the issuance of the alternative writ of mandate herein, the Superior Court of Guam had jurisdiction to entertain the petition filed by the Attorney General against the Governor of Guam, a mandamus action seeking the Governor to empanel the Procurement Appeals Board. The Attorney General of Guam, like the Governor, is a constitutional officer, and he is designated in the Organic Act of Guam as the Chief Legal Officer of the Government of Guam. As Chief Legal Officer of the government of Guam, the Attorney General inherently possesses common law powers. The Guam Legislature has also bestowed common law powers to the Attorney General - powers which are broad but undefined, emerging and

---

[8]Conclusion

Page 43 of 45

not limited to - unless expressly limited by any law of Guam to the contrary. The common law powers of an Attorney General trace its origin to the English legal system. Petitioner, as Attorney General, has the dual responsibility of (1) representing the Governor, his directors, agencies and other entities in all matters in which the said officials or the government is in anywise involved and (2) being the protector and the guardian of the public interest [a generally accorded common law power]. The public interest arises when there is a need to bring an action for the enforcement of the laws of Guam, the preservation of the order, and the protection of public rights.

In protecting the public interest, the Attorney General has authority to bring an action against the Governor for the enforcement of the laws of Guam. As part of his constitutional [Organic Act] duties in relation to his faithful execution of the laws, the Governor is mandated by law to appoint members to the Procurement Appeals Board. The Court finds no federal or local law exists which expressly prevents the Attorney General from filing an action against the Governor of Guam. Its absence accords common law authority for the Attorney General to proceed with the present action. While the Attorney General has a duty to represent the Governor, there is no conflict with that representation whenever he brings an action against the Governor in the name of the government or in his name, when brought in the name of the public interest. Moreover, there is no violation of the rules of professional responsibility whenever he brings such an action.

The Court also finds and agrees with the Governor's position that he alone is charged with the faithful execution of the laws of Guam. The Court finds that *I Maga'lahi* alone should determine who to appoint as members to vacant positions on boards and commissions of the government of Guam. He alone has discretion in prioritizing among his many areas of responsibilities in the execution of the laws of Guam. But, in bringing this action, the Attorney

Case 1:04-cv-00035   Document 3   Filed 07/13/2004   Page 66 of 67

General is not usurping nor is he attempting to wrestle the executive power from the Governor. *I Maga'lahi* remains the appointing authority. He alone appoints, no one else. Whether *I Maga'lahi* should make appointments to the Procurement Appeals Board at this juncture, or whether he should be given more time to make the remaining appointments, taking into consideration the prioritization that may be necessary in the execution of the laws [the competing public interest claims before the Court], these questions do not concern the jurisdiction of the Court or Petitioner's standing, but relate solely to Petitioner's request whether the Attorney General's prayer for relief should be granted on the merits of his application. The Court, however, expresses no opinion on the merits of the Attorney General's mandamus request. It has only been directed by the Supreme Court to determine whether it has jurisdiction to entertain Petitioner's action and in that regard whether the Attorney General has standing to bring the mandamus action. This Court thus concludes that it has jurisdiction to hear the alternative writ filed by the Attorney General. The Attorney General, under his constitutional and common law powers, has authority and standing to file the present action [brought in the public interest] against the Governor

*Este i sinneda i Kotte*[9].

SO ORDERED this 10th day of November, 2003.

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

---

[9]These are the findings of the Court.

Page 45 of 45

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam Dated at Hagåtña, Guam

NOV 1 0 2003

Ann D.L. Rivera
Deputy Clerk, Superior Court of Guam