



FILED
DISTRICT COURT OF GUAM

JUL 1 4 2004

MARY L. M. MORAN
CLERK OF COURT

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| THE GOVERNMENT OF GUAM, by and through the ATTORNEY GENERAL OF GUAM,<br><br>        Plaintiff,<br><br>vs.<br><br>FELIX P. CAMACHO, in his official capacity as the Governor of Guam,<br><br>        Defendant. | Civil Action Case No. 04-00035<br><br>**AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |

ORIGINAL

**TABLE OF CONTENTS**

Table of Authorities ii

Applicability of the Writ of Quo Warranto 2

THE ORGANIC ACT POWERS OF THE GOVERNOR
AND THE ATTORNEY GENERAL 4

The Governor Has No Authority to Investigate Allegations of
Criminal Wrongdoing or to Appoint a "Special Prosecutor" 4

The Powers of the Attorney General in the Organic Act and at
Common Law 8

Criteria for Issuance of a Preliminary Injunction 15

THE TRADITIONAL TEST 16

Because the Office of Special Prosecutor is Not Authorized by the Organic Act or
Otherwise, and the Governor Therefore Has No Authority to Appoint a Special
Prosecutor, there is a Significant Likelihood of Success on the Merits 16

There Exists a Significant Threat of Irreparable Injury if the Injunction
is Not Issued 17

The Balance of Hardships Favors the Applicant 19

The Public Interest Favors Granting an Injunction 19

THE ALTERNATIVE TEST 19

Conclusion 21

Certificate of Service 23

i

# TABLE OF AUTHORITIES

## Cases

*American Legion Post No. 279 v. Barrett*, 20 N.E.2d 45 (Ill. 1939)........................................... 10

*Bordallo v. Baldwin*, 624 F.2d 932 (9th Cir. 1980).................................................... 4, 11

*Brown v. California Dept. of Transportation*, 321 F.3d 1217 (9th Cir. 2003) ................................ 16

*Buckner v. Veuve*, 63 Cal. 304, 1883 WL 1445 (Cal. 1883) ......................................................... 3

*Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir. 2003).................... 16

*Department of Mental Health v. Coty*, 232 N.E.2d 686 (Ill. 1967)............................................. 11

*Earth Island Institute v.United States Forest Service*, 351 F.3d 1291 (9th Cir. 2003)..................... 16

*El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032 (9th Cir. 2003) ........................................................ 16

*Government of Guam v. United* States, Civ. No. 82-0001 (D.C. Guam August 3, 1982)............. 5

*Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority*, 98 Ill.2d 58, 74 Ill.Dec. 548, 456 N.E.2d 50 (1983) ........................................................................................................... 11, 13

*Haeuser v. Dept. of Law*, 97 F.3d 1152 (9th Cir. 1996)..................................................... 4

*In re House of Representatives (Special Prosecutor)*, 575 A.2d 176 (R.I. 1990)................. 12 -14

*In re: Request of Governor Felix P. Camacho Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*, 2004 Guam 10 (Guam Sup. Ct. June 11, 2004) ..................................................................................... 4, 11

*In the matter of the application of David K. Sherwood*, 22 Haw. 385, 1914 WL 1757 (Sup. Ct. Hawaii. Terr. 1914) ................................................................................................ 3

*Miller v. California Pacific Medical Center*, 19 F.3d 449, 460 (9th Cir. 1994) .......................... 17

*Moylan v. Camacho*, Special Proceeding Case No. SP230-03 (Superior Court of Guam Nov. 10, 2003)...................................................................................................... 10

*Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (Md. App. 1975) ........................................... 13-15

ii

*Nat'l Ctr. For Immigrants Rights, Inc. v. INS*, 743 F.2d 1365 (9th Cir. 1984) ............................ 16

*Nelson v. Ada*, 878 F.2d 277 (9th Cir. 1989).............................................................................. 9

*Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446 (1915) ..... 2

*People ex rel. Castle v. Daniels*, 132 N.E.2d 507 (Ill. 1956) ...................................................... 11

*People ex rel. Hartigan v. E. & E. Hauling, Inc.*, 607 N.E.2d 165 (Ill. 1992)............................ 11

*People ex rel. Palmer v. Woodbury*, 14 Cal. 43 (Cal. 1858) ........................................................ 3

*People ex rel. Smith v. City of San Jose*, 100 Cal.App.2d 57, 222 P.2d 947 (1950)..................... 3

*People of the Territory of Guam v. Camacho*, 1 Guam Rep. 501 (Sup. Ct. Guam 1975)......... 5, 6

*People v. Moylan*, Case No. CM0864-03, "Decision and Order" (Superior Court of Guam Jan. 23, 2004)........................................................................................................................ 5

*Raich v. Aschcroft*, 352 F.3d 1222 (9th Cir. 2003)................................................................ 15, 19

*Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004)............................................................................ 16

*State ex rel. Carter v. Stevens*............................................................................................... 17

*State ex rel. Carter v. Stevens*, 29 Or. 464, 44 P. 898 (1896)........................................................ 3

*State ex rel. Woods v. Block*, 189 Ariz. 269, 942 P.2d 428 (1997) ............................................... 2

*State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976) ............................ 10

*State of Illinois v. Bristol-Myers Co.*, 470 F.2d 1276 (7th Cir. 1972)......................................... 10

*State v. Gattavara*, 47 P.2d 18 (Wash. 1935)............................................................................. 9

*State v. Rollins*, 116 R.I. 528, 359 A.2d 315 (1976) .................................................................. 13

*Suitor v. Nugent*, 98 R.I. 56, 199 A.2d 722 (1964) .................................................................... 13

*Territorial Prosecutor for the Territory of Guam v. Superior Court of Guam*, 1983 WL 30224 (D.Guam A.D. 1983)............................................................................................... 4, 9

*United States v. Machado*, 306 F.Supp. 995 (N.D.Cal. 1969) ...................................................... 3

*United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172 (9th Cir. 1987) ....................... 17

iii

*Wirtz v. National Maritime Union of America*, 399 F.2d 544 (2nd Cir. 1968) ............................... 3

**Statutes**

48 U.S.C. § 1421 ....................................................................................................................... 2, 4

48 U.S.C. § 1421a...................................................................................................................... 6

48 U.S.C. § 1421g(d)(1)........................................................................................................... 7, 8

48 U.S.C. § 1421g(d)(2)........................................................................................................... 7, 8

48 U.S.C. § 1422 .................................................................................................... 5, 11, 17

**Guam Statutes**

P.L. No. 25-44 ........................................................................................................................ 8, 12

**Rules**

Fed.R.Civ.P. 81(a)(2) .............................................................................................................. 4

iv

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| THE GOVERNMENT OF GUAM, by and through the ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> vs. <br><br> FELIX P. CAMACHO, in his official capacity as the Governor of Guam, <br><br> Defendant. | Civil Action Case No. 04-00035 <br><br><br> **AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |

Plaintiff Government of Guam has moved the Court for an Order setting date for a hearing on plaintiff's Motion for Preliminary Injunctive Relief seeking the following relief:

1. That the Court issue a judgment declaring that defendant Governor Felix P. Camacho is usurping, intruding, and unlawfully holding and exercising the functions, powers and duties of the Office of Attorney General; and ordering defendant Governor Felix P. Camacho enjoined and restrained him from exercising the powers and duties of said office;

1

2. That the Court issue a declaratory judgment that the appointment or attempted appointment of a "special prosecutor," however denominated, by the Governor is an impermissible violation of the doctrine of separation of powers, and in particular, a violation of the powers and duties of the Office of Attorney General as "chief legal officer" of the Government of Guam, and thereby violates the Organic Act of Guam, 48 U.S.C. § 1421; and

3. That the Court issue a preliminary injunction enjoining the Governor, his successors, agents, employees, and all persons acting in concert with him from exercising or attempting to exercise any of the powers and duties of the Office of Attorney General by, *inter alia*, exercising any authority with respect to the investigation and/or prosecution of suspected crimes or criminal activity within the Territory of Guam, said authority being entirely within the powers and duties exclusively reserved to the Attorney General as Chief Legal Officer by Congress; or by appointing or attempting to appoint a "special prosecutor," however denominated, to investigate and prosecute allegations of criminal wrongdoing within the Territory of Guam.

## Applicability of the Writ of *Quo Warranto*

"An action in *quo warranto* is an extraordinary proceeding, addressed to preventing a continued exercise of authority unlawfully asserted." *State ex rel. Woods v. Block*, 189 Ariz. 269, 272, 942 P.2d 428, 431 (1997). "Historically *quo warranto* was 'the prerogative writ by which the government (could) call upon any person to show by what warrant he holds a public office or exercise a public franchise.' *Newman v. United States ex rel. Frizzell*, 238 U.S. 537, 545-546, 35 S.Ct. 881, 883, 59 L.Ed. 1446 (1915); *Wirtz v. National Maritime Union of*

2

*America*, 399 F.2d 544, 548 (2nd Cir. 1968)." *United States v. Machado*, 306 F.Supp. 995, 998 (N.D.Cal. 1969). "*Quo warranto* lies to prevent the usurpation of an office." *Buckner v. Veuve*, 63 Cal. 304, 1883 WL 1445 (Cal. 1883). "The writ or order need not recite the facts showing that the petitioner is entitled to it, and is in the nature of a summons commanding the respondent to show by what authority he claims to hold the office, and, in effect, is an order to show cause." *In the matter of the application of David K. Sherwood*, 22 Haw. 385, 1914 WL 1757 (Sup. Ct. Hawaii. Terr. 1914). "The definition of this process is, that it is in the nature of a writ of right of the public against him who usurps any office, franchise, or liberty; to inquire by what authority he supports his claim, in order to determine his right." *People ex rel. Palmer v. Woodbury*, 14 Cal. 43, 46 1859 1129 (Cal. 1858).

Notice pleading is all that is required. The courts have held that "'a complaint which pleaded in general terms that defendant was 'usurping, intruding into, and unlawfully holding and exercising the office of Supervisor * * *' was sufficient." *People ex rel. Smith v. City of San Jose*, 100 Cal.App.2d 57, 59, 222 P.2d 947, 949 (1950) (editorial ellipsis in original); *People ex rel. Palmer, supra* ("The allegations of the complaint sufficiently show that the defendant is in possession of the place, and this without lawful authority, and this we take to be a sufficient allegation of intrusion and usurpation.").

And, in *quo warranto* proceedings, the burden of proof is reversed. "The ordinary rule in civil actions which imposes the burden upon the plaintiff to allege and prove his title does not apply in a *quo warranto* proceeding, the object of which is to require the occupant of a public office to show by what right or authority he holds and exercises the same; and, if he fails to show a complete title to it, judgment must go against him." *State ex rel. Carter v. Stevens*, 29 Or. 464, 472, 44 P. 898, 899 (1896); *accord, People ex rel. Smith v. City of San Jose, supra*.

3

1 Accordingly, the burden is on the defendant to show by what right he holds title to the office of

2 "special prosecutor."

3 The District Court of Guam, Appellate Division, has previously recognized that while

4 there is no statutory provision for the writ of *quo warranto*, the common law writ is available, if

5 instituted by the government. *Territorial Prosecutor for the Territory of Guam v. Superior*

6 *Court of Guam*, 1983 WL 30224 (D.Guam A.D. 1983) (citing *U.S. v. Machado*, *supra*). Finally,

7 the Federal Rules of Civil Procedure govern the conduct of the action as the writ is expressly

8 provided for in the rules. *See* Fed.R.Civ.P.,81(a)(2).

9

10

## THE ORGANIC ACT POWERS OF THE GOVERNOR
## AND THE ATTORNEY GENERAL

### The Governor Has No Authority to Investigate Allegations of Criminal Wrongdoing or to Appoint a "Special Prosecutor"

14 The "Organic Act of Guam," 48 U.S.C. § 1421 *et seq.*, functions as Guam's constitution.

15 *See Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980); *Haeuser v. Dept. of Law*, 97 F.3d

16 1152, 1156 (9th Cir. 1996); *see generally*, *In re: Request of Governor Felix P. Camacho*

17 *Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*,

18 2004 Guam 10, ¶¶ 19-32 (Guam Sup. Ct. June 11, 2004). The complaint in *quo warranto* and

19 the declaratory judgment is intended to clarify and delimit the executive powers of the Governor

20 of Guam to the extent the exercise of those powers is in conflict with the powers and duties of

21 the Office of Attorney General, the "chief legal officer of the government of Guam" under the

22 Organic Act of Guam. *See* 48 U.S.C. § 1421 *et seq*. The section of the Organic Act pertinent to

23 the discussion here that addresses the Governor's power while seemingly quite broad, is still

24 very specific and defined.

25

4

The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam. He may grant pardons and reprieves and remit fines and forfeitures for offenses against local laws. He may veto any legislation as provided in this chapter. *He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam, and shall commission all officers that he may be authorized to appoint.* He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam.

48 U.S.C. § 1422 (emphasis added).[1]

With respect to the Governor's purported authority to appoint a "special prosecutor" or otherwise exercise investigative and prosecutorial functions, the Act is particularly specific with respect to the Governor's appointment powers, which refers to all officers and employees of the

---

[1] The Governor doubtless intends to argue that as he is "responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam," *see* 48 U.S.C. § 1422, *and see* Complaint, Exhibit 1, he is perforce authorized not merely to appoint someone to the office of special prosecutor, but, by necessity, to establish the office itself (as it is nowhere else provided for by law). Prior to the 1998 amendments to the Organic Act which removed the Office of Attorney General from the Governor's appointment authority, it may have been true, and, in fact, that may very well have been the practice historically. But the 1998 amendments to the Organic Act establishing the organically independent Office of Attorney General as "chief legal officer" changed all that. For that reason, reliance on historical practice or reference to the cases the Governor will likely cite which pre-date the Organic Act amendments, *see, e.g., People v. Camacho*, 1 Guam rep. 501 (1975), and *Government of Guam v. United* States, Civ. No. 82-0001 (D.C. Guam August 3, 1982), are inapposite, for they fail to take into consideration the significant structural changes to the balance of powers within the Government of Guam. Indeed, if anything, in light of the 1998 amendments to the Organic Act, a close reading of those cases supports the Attorney General's argument, not the Governor's, for those cases held it was a violation of the doctrine of separation of powers for the Legislature to abrogate the Governor's then-authority to appoint and remove the Attorney General. The Governor does not have that authority any longer, not since the election of Guam's first organically established Attorney General and "chief legal officer." Further, the Governor's reference in Exhibit 1 to *People v. Moylan*, Superior Court of Guam Case No. CM0864-03, "Decision and Order" dated January 23, 2004 as support for the argument that he has authority to appoint special prosecutors is simply wrong. That decision did not address the Governor's Organic Act authority, but merely denied a motion to disqualify a particular prosecutor and dismiss the complaint based upon allegations of conflict of interest. It is a limited decision that in no way stands for the Governor's assertion that he can unilaterally invade the province of the Office of Attorney General and appoint special prosecutors. Accordingly, unless the Governor intends to invoke his power to declare martial law in support of his argument that he can create an office out of thin air not otherwise authorized by Congress in the Organic Act, the Governor is not merely invading the province of the Attorney General with his intended appointment, but is invading the province of Congress and the Legislature of Guam as well. In short, before attempting to appoint anyone to the office of "special prosecutor," the Governor must first disregard the separation of powers doctrine, assume the legislative mantle of Congress, and "legislate" the office of "special prosecutor" into existence all by himself. This, he clearly has no authority to do.

5

executive branch "that he may be authorized to appoint." There is nothing in the Organic Act or the laws of Guam that authorizes the Governor to appoint a special prosecutor because, among other reasons, there is no such office authorized by the Organic Act or otherwise by the Legislature of Guam. Since the Organic Act is very clear concerning the powers of the governor, one cannot read into the Governor's powers an implied authority to create offices out of whole cloth, or to make an appointment to an office that does not exist. The statute compels one to read it by its terms and nothing more. When it comes to the appointment power, it specifically states the Governor "shall commission all officers *that he may be authorized to appoint*." *Id.* (emphasis added). There is no authority to appoint someone to a nonexistent office.

The Organic Act is very specific concerning the separation of powers. "The government of Guam shall consist of three branches, Executive, Legislative and Judicial." 48 U.S.C. § 1421a. In *People of the Territory of Guam v. Camacho*, 1 Guam Rep. 501 (Sup. Ct. Guam 1975), the Supreme Court held invalid under the separation of powers doctrine of the Organic Act a local statute that authorized the appointment of a special prosecutor by the judiciary. In the case at bar, there is, of course, no local law authorizing the Governor to appoint anyone to the office, so this Court may never even reach the separation of powers issue. And although *Camacho* was decided over 20 years ago, at a time when the Governor appointed the Attorney General, the point to note is that there has been no effort by Congress or the Guam Legislature since *Camacho* to authorize the Governor to establish the office of "special prosecutor," let alone appoint anyone to fill it.

What has happened in the interim since *Camacho* was decided were Congressional amendments to the Organic Act in 1998. At that time, Congress fundamentally changed the

6

nature of the Office of the Attorney General, "organically" establishing the position as the "Chief Legal Officer" of the Government of Guam, 48 U.S.C. § 1421g(d)(1), and giving the Guam Legislature the option to provide that the Attorney General may be elected, 48 U.S.C. § 1421g(d)(2). The purpose of the Congressional amendments establishing the Office in the Organic Act and the subsequent Guam legislative action providing that it shall be an elected position was to remove the Attorney General from the sphere of political influence, specifically to insulate the Office from the executive and legislative branches of the Guam government. Congress' intent was to "organically" establish the position, and the Guam Legislature's intent was to provide that the office holder would be elected rather than appointed as it had previously, so that the office holder would be immune from political interference from other branches of government.

In sum, plaintiff is seeking a Declaratory Judgment that affirms the common law duties and powers of the Attorney General as "chief legal officer," and delimits the Governor's authority to intrude upon or otherwise compromise the powers and duties of the Attorney General as envisioned in the Organic Act. As the Governor has no independent Organic Act authority to create the office of "special prosecutor," he certainly has no authority to appoint anyone to the position. And since the 1998 amendments to the Organic Act, whatever historical practice may have been, he has no authority to investigate or oversee the prosecution of allegations of criminal wrongdoing on Guam. That is reserved to the Attorney General alone.

7

## The Powers of the Attorney General in the Organic Act
## and at Common Law

Prior to 2002, with the election of the Guam's first Organic Act empowered Attorney General, the Attorney General was a cabinet position, appointed by the Governor of Guam. In 1998, the United States Congress amended the Organic Act to provide that there shall be an Attorney General of Guam who shall be the "chief legal officer of the government of Guam," 48 U.S.C. § 1421g(d)(1). By establishing the Office of the Attorney General in the Organic Act itself, and defining the holder of that office as "chief legal officer of the government of Guam," Congress intended to prevent the Legislature of Guam from diminishing, reducing or destroying those powers inherent in the office at common law.

The 1998 amendment further authorized the Guam Legislature to determine how this constitutional officer was to be selected, whether by election or appointment. 48 U.S.C. § 1421g(d)(2). In 1999, pursuant to Congressional authorization in the Organic Act as amended, the Legislature of Guam passed P.L. No. 25-44 providing that the Attorney General of Guam would be elected in the next gubernatorial election. Guam legislative history also reflects that it was the intent of the Legislature to insulate the Office of Attorney General from politics by declaring that the holder of the Office was to be elected, no longer appointed or to be removed by, or to serve at the pleasure of, the Governor.

The phrase "chief legal officer," is a legal term of art used by a select number of States. Guam's Organic Act provision arose after local law had already created and empowered an Office of the Attorney General, but nowhere in the Congressional record is there any evidence that the Legislature of Guam was still authorized to prescribe the powers and duties of the Attorney General under the Organic Act, or that the Governor retains any residual powers to appoint a "special prosecutor" as was true previously, when the Attorney General was appointed

8

by, and served at the pleasure, of the Governor.[2] And there is no evidence that Congress intended to ratify pre-existing local law in this regard. Indeed, case law holds to the contrary. *Nelson v. Ada*, 878 F.2d 277 (9th Cir. 1989) (there is no implied ratification of prior inconsistent local law by Congressional silence in amending the Organic Act). Accordingly, the Governor's anticipated citations to cases which pre-date the Organic Act are unavailing. Since the 1998 amendments to the Organic Act, whatever authority the Governor held in the past to oversee the investigation and prosecution of alleged criminal wrongdoing is just that, a thing of the past.

Congress intended to make Guam's Attorney General autonomous and independent, and that intent is reflected in its deliberate choice of the term "chief legal officer." Courts in many states recognize that the independence of the Attorney General reflects a conscious choice by the framers of their constitutions to provide an additional check and balance in the traditional tripartite scheme of government. *State v. Gattavara*, 47 P.2d 18 (Wash. 1935). The Attorney General is the people's "watchdog." Guam's elected Attorney General offers what no other elected or appointed official can bring to the government of Guam, uniformity, consistency and a coherent legal policy for the government of Guam removed from the political control, oversight and interference by the executive and legislative branches. Placing the legal affairs in the hands of a single official, the Attorney General, and vesting in that Office the discretion to,

---

[2]By way of comparison, the case of *Territorial Prosecutor for the Territory of Guam v. Superior Court of Guam*, 1983 WL 30224 (D.Guam. A.D.) is instructive. In that case the U.S. District Court of Guam Appellate Division held that a local act by the Guam Legislature creating a territorial prosecutor, the Territorial Prosecutor's Act, setting forth limitations on the Governor's broad appointment and removal powers was "inconsistent with the mandate of the Organic Act in that it impermissibly encroaches upon the Governor's removal powers under the Organic Act. As noted by that court, "the legislature may not enact a law encroaching upon the Governor's authority and powers which are mandated by the Organic Act.... [T]o permit the legislature to do so, not only would [] render the concept of separation of powers meaningless, and be inconsistent with the mandate of the Organic Act, but it could possibly result in the Governor being divested of his executive authority and power at the whim of the legislature." *Id.* \*5. Similarly, in the case at bar, without Organic Act authorization, neither the Legislature nor the Governor may encroach upon the powers and duties of the Attorney General as "chief legal officer." Else, it would render the term meaningless and could result in the Attorney General being divested of his authority as chief legal officer at the whim of the Governor. That is precisely the controversy presented here.

9

1  *inter alia*, appear in certain proceedings affecting the legal interests of the government of Guam

2  creates uniformity, consistency and efficiency.

3  For an excellent discussion of the powers of the Attorney General at common law and

4  application of the Organic Act in view of the Attorney General's statutorily derived common

5  law powers, *see*, "Decision and Order," entered by then Superior Court of Guam Judge, now

6  United States Magistrate Judge Joaquin V. E. Manibusan, Jr. in *Moylan v. Camacho*, Special

7  Proceeding Case No. SP230-03, pp. 12 –37 (Superior Court of Guam Nov. 10, 2003). A true

8  and correct copy of Judge Manibusan's Decision and Order is attached for the convenience of

9  the Court. As "chief legal officer," the Attorney General is endowed with certain inherent

10 common law powers, which extend the Attorney General's powers and duties beyond those

11 created by statutory law. *See, e.g., State of Illinois v. Bristol-Myers Co.,* 470 F.2d 1276 (7th Cir.

12 1972). Indeed, in *Moylan v. Camacho, supra,* Guam Superior Court Judge Manibusan has

13 already held that it is "undisputed that an Attorney General possesses common law powers." *Id.*

14 at 20.

15

16 At common law, the powers of the Attorney General have been delineated as "to

17 institute, defend or intervene in any litigation or quasi-judicial administrative proceeding which

18 he determines in his sound official discretion involves a legal matter of compelling public

19 interest." *State of Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266, 271 (5th Cir. 1976). In

20 states where the Office of Attorney General is constitutionally created, such as Illinois, the

21 Attorney General's powers are regarded as powers that could not be diminished by local

22 legislation. *American Legion Post No. 279 v. Barrett,* 20 N.E.2d 45, 51 (Ill. 1939) ("the General

23 Assembly may not take away from a constitutional officer the powers or duties given him by the

24

25

10

constitution"); *People ex rel. Castle v. Daniels*, 132 N.E.2d 507, 509 (Ill. 1956) ("the Attorney General, whose office is created by the Illinois constitution, ... is the chief law officer of the State and has those powers which resided in the Attorney General at common law ... and neither the legislature nor the courts can deprive him of his constitutionally granted authority"); *Department of Mental Health v. Coty*, 232 N.E.2d 686, 689 (Ill. 1967) ("the common-law powers of the Attorney General were preserved to him by the constitution and while the General Assembly can impose additional power and duties upon him, it cannot strip him of his common-law powers"); *Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth.,* 456 N.E.2d 50, 67 (Ill. 1983) ("while the legislature may add to his powers, it cannot reduce the Attorney General's common law authority in directing the legal affairs of the state"); *People ex rel. Hartigan v. E. & E. Hauling, Inc.*, 607 N.E.2d 165, 170 (Ill. 1992) ("although the legislature may add to the Attorney General's common law powers, it may not detract from them").

Accordingly, the Attorney General respectfully submits that in the absence of express provisions in the law to the contrary, not only are those common law powers "inherent" in the Office of the Attorney General, they are inalienable. *Cf. Bordallo v. Baldwin*, 624 F.2d 932, 934 (9th Cir. 1980) (Guam Legislature cannot lawfully reduce the governor's functions with respect to the governance of the Guam hospital to "mere ministerial function of validating appointments made by others to Guam Hospital's governing body" in derogation of the Governor's ultimate responsibility in the Organic Act for the governance of the hospital); *In re: Request of Governor Felix P. Camacho Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of Guam*, 2004 Guam 10, ¶ 75 (noting instances wherein "the Legislature may limit the Governor's power by 'otherwise provid[ing] ... under the laws of Guam.' 48 U.S.C. § 1422.") (editorial brackets in the original). These two cases involved attempted legislative

11

abrogation of the *Governor's* Organic Act powers, but the analysis is the same as applied to the question presented here, namely: whether the Governor has the power or authority to abrogate or otherwise diminish the common law powers of the Attorney General as "chief legal officer" under the Organic Act who, himself, stands on equal constitutional footing as the Governor. While the Governor may have had the power to appoint a special prosecutor before the 1998 Organic Act amendments organically establishing the Attorney General as "chief legal officer," and before the Guam Legislature passed P.L. No. 25-44 establishing the position as an elected office, the Governor has no authority to usurp or invade the province of that office now. Not unless Congress otherwise provides.

In *In re House of Representatives (Special Prosecutor)*, 575 A.2d 176 (R.I. 1990), the Supreme Court of Rhode Island issued an advisory opinion to the House of Representatives on the validity of proposed legislation that would have created a procedure for the appointment of a special prosecutor to investigate and prosecute any crime involving certain public officials, including the Governor; Lieutenant Governor; Secretary of State; Attorney General and any assistant attorneys general; and persons serving as directors of departments within the executive branch. The procedures envisioned that upon receipt of an application, the chief justice of the Rhode Island Supreme Court would appoint a special prosecutor from among the members of the Rhode Island bar and define the limits of the special prosecutor's jurisdiction.

The Rhode Island Supreme Court found the proposed law invalid as a violation of the doctrine of separation of powers in two respects. First, the Court found the law would compromise the independence of the judiciary by imposing administrative duties on the chief justice that would effectively eliminate the chief justice from participating in any appeals involving the special prosecutor. Pertinent to the case at bar, the Court also found that the

12

legislation would unconstitutionally interfere with the common law powers and duties of the attorney general with respect to his authority to supervise and direct criminal investigations and prosecutions. The decision in the case is directly on point:

> **As a constitutional officer, the individual who holds the office of Attorney General in this state is in a unique position independent from the other branches of government.** In Rhode Island the Attorney General is an elected official, who is different from attorneys general in many other states and the Federal government wherein the attorney general is appointed by the chief executive officer. **There have been instances in which other jurisdictions have invalidated the appointment of a special prosecutor on the basis of the constitutional status of the attorney general.** In *Murphy v. Yates*, 276 Md. 475, 494, 348 A.2d 837, 847 (1975), the court concluded that "the General Assembly may not abrogate the common law powers of the Attorney General of Maryland * * * having been constitutionally stated as those 'prescribed by law.'" The court also reasoned, "If an office is created by the Constitution * * * the position can neither be abolished by statute nor reduced to impotence by the transfer of duties characteristic of the office to another office created by the legislature." Id. at 492, 348 A.2d at 846. *See also Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority*, 98 Ill.2d 58, 74 Ill.Dec. 548, 456 N.E.2d 50 (1983).

> **The core function of the constitutionally established office of Attorney General is the power and discretion to prosecute crimes. This court has held that the essential duty of the Attorney General is that of "public prosecutor."** *Suitor v. Nugent*, 98 R.I. 56, 58, 199 A.2d 722, 723 (1964). A key aspect of the Attorney General's role as public prosecutor is the element of discretion. **"It is well settled in this state that the Attorney General is the only state official vested with prosecutorial discretion."** *State v. Rollins*, 116 R.I. 528, 533, 359 A.2d 315, 318 (1976).

13

> **The proposed legislation transfers full prosecutorial authority to a special prosecutor appointed by a member of the judicial branch of government. It is our opinion that this transfer of power to the special prosecutor severely infringes upon the fundamental powers of the Attorney General.** Accordingly, we find that the proposed legislation violates article IX, section 12, of the Rhode Island Constitution.

575 A.2d 179-80 (emphasis in bold added; editorial ellipsis in original).

In *Murphy v. Yates*, 276 Md. 475, 348 A.2d 837 (Md. App. 1975), the Maryland Court of Appeals held that an act creating the office of state prosecutor as an independent unit within the executive branch was an unconstitutional invasion of the constitutionally recognized common law powers and duties of the state's attorneys and Attorney General. The court first held that the Maryland Legislature was without authority to limit the constitutional duties and powers of the Attorney General. "It seems clear to us that from and after the adoption of the Constitution of 1867, the General Assembly was without power to limit or modify the constitutional duties of either the State's Attorneys or the Attorney General by transferring the duties of either of these offices to another officer created by statute." *Id.*, 276 Md. 489, 348 A. 844. Later in the opinion, the Court held that the argument that the special prosecutor's powers and duties were "concurrent" with the Attorney General and state's attorneys did not ameliorate the fact that it was nevertheless an invasion of their constitutional offices.

> We do not find persuasive the contention that the duties imposed on the Special Prosecutor are concurrent with the powers of the State's Attorneys. **The simple fact is that the Special Prosecutor's power to initiate an investigation and to commence prosecution if a State's Attorney does not act is a clear invasion of the State's Attorney's most awesome discretionary power: to determine whether or not to prosecute.** Furthermore, the Special Prosecutor is empowered by the Act to represent the State in any appeal or post conviction proceeding resulting from his prosecutions. **Such power is an invasion on the constitutional duty imposed upon the Attorney General. Moreover, in each instance the power is transferred**

14

**from what has traditionally been an elected official to an appointed official.** Praiseworthy though the purpose of the General Assembly might have been in enacting the legislation, the result can only be validly achieved by a constitutional amendment.

*Id.*, 276 Md. 495, 348 A. 848 (emphasis in bold added). It is noteworthy that the Maryland court was troubled by the Legislature's transfer of core prosecutorial functions from an elected to an appointed official. In the case at bar, not only is the Governor's appointment wholly unauthorized by the Organic Act or even local legislation (assuming the legislature were authorized to enact such legislation by the Organic Act), it transfers those core prosecutorial functions from an elected to an appointed officer. The Governor's appointment of a special "prosecutor" is an affront to the intent of both Congress and the Legislature of Guam.

## CRITERIA FOR ISSUANCE OF A PRELIMINARY INJUNCTION

In the Ninth Circuit, there are two tests for the issuance of preliminary injunctive relief, the "traditional" test and an alternative test. "The traditional test for granting preliminary injunctive relief requires the applicant to demonstrate: (1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction." *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003) (citations omitted).

The alternative test for issuance of a preliminary injunction "requires the applicant to demonstrate either: a combination of probable success on the merits and the possibility of irreparable injury; or serious questions going to the merits and that the balance of hardships tips sharply in the applicant's favor." *Raich v. Aschcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003). "These two tests are not inconsistent. Rather, they represent a continuum of equitable discretion, whereby 'the greater the relative hardship to the moving party, the less probability of success

15

must be shown.' *Nat'l Ctr. For Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)." *Id.* "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir. 2003); *accord, Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir. 2004); *Earth Island Institute v. United States Forest Service*, 351 F.3d 1291, 1297-98 (9th Cir. 2003); *Brown v. California Dept. of Transportation*, 321 F.3d 1217, 1221 (9th Cir. 2003); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003). Under either test, a preliminary injunction is due to be issued.

## THE TRADITIONAL TEST

**Because the Office of Special Prosecutor is Not Authorized by the Organic Act or Otherwise, and the Governor Therefore Has No Authority to Appoint a Special Prosecutor, there is a Significant Likelihood of Success on the Merits**

There is no authority for the Governor's actions, either in federal law under the Organic Act or in Guam law, making declaratory and injunctive relief and *quo warranto* particularly appropriate. Historical practice aside, nothing in the present Organic Act as amended permits the exercise of any such authority. In short, the Governor's actions rest on no statute, federal or local. They are wholly without legal authority, *ultra vires*. The Governor's actions are a blatant violation of the doctrine of separation of powers as set forth in the Organic Act itself. The absence of authority for the Governor's actions and the violation of the separation of powers makes likelihood of success on the merits and judgment for the plaintiff not merely significant, but inevitable.

16

## There Exists a Significant Threat of Irreparable Injury
## if the Injunction is Not Issued

In certain cases, particularly where a significant likelihood of success on the merits is shown, irreparable injury is presumed.[3] Even without a presumption of injury, the threat of irreparable injury in the case at bar is easily demonstrated. The Attorney General cannot perform his duties as chief legal officer responsible for the enforcement of Guam's laws in the shadow of an unlawfully appointed and constitutionally unauthorized "special prosecutor" (who responds only to the Governor and to the Governor alone) to investigate and countermand or usurp the prosecutorial discretion of the Attorney General. The Governor is attempting to exercise powers Congress expressly took away from him, that is, supervision and control of the Office of Attorney General. There is no longer any authority in the Organic Act or elsewhere for the creation by the Governor of the office of "special prosecutor," and his argument that 48 U.S.C. § 1422 authorizes him to do so because he is "responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam," is simply unavailing. The Governor has no business investigating or overseeing the prosecution of alleged criminal wrongdoing. Absent Congressional authorization, the Governor's actions complained of here not only invade the province of the Attorney General to investigate and prosecute criminal wrongdoing, a responsibility now reserved exclusively to the Office of the Attorney General by Congress, but also invade the province of the local legislature to even establish such an office in the first place (assuming, of course, that the Legislature of Guam was itself authorized under the

---

[3] *See Miller v. California Pacific Medical Center*, 19 F.3d 449, 460 (9th Cir. 1994) ("if the Board demonstrates that it is likely to prevail on the merits, we presume irreparable injury"). In *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, (9th Cir. 1987), the court held that in statutory enforcement actions brought by the government irreparable injury to the government had to be presumed. That holding dovetails perfectly with the fact that in *quo warranto* actions, the burden of proof is reversed, and it is the defendant who must prove by what right he holds office, not the government to prove the office is being usurped. *See again, State ex rel. Carter v. Stevens*, 29 Or. 464, 472, 44 P. 898, 899.

17

Organic Act to create such an office and endow it with duties and powers otherwise reserved at common law to the Attorney General). What the facts of this case present is the creation of a "special prosecutor" beholden only the political whims and caprices of the Governor, in no ways answerable to the electorate. That is not what Congress had in mind in insulating the Office of the Attorney General from political influence in the Organic Act, nor is it what the local Legislature envisioned in making the Attorney General an elected office.

The essential role of the Attorney General, relative to other constitutional offices, if the Governor is not enjoined, would be radically transformed from that envisioned by Congress. In effect, the Governor would be become a super-Attorney General, within unfettered discretion to usurp the constitutional or Organic Act authority of the Attorney General as intended by Congress.

The independence of the Attorney General is critical to the integrity of law enforcement and prosecution services that the people of Guam have come to expect from the designated elected Attorney General. It is for the Attorney General to reconcile the interests of individual government officials with the interests of the Territory and of the people. Sometimes this responsibility requires the Attorney General to take positions to which individual officials or agencies object. To permit these officials, even the Governor, to displace the Attorney General's determination of what best serves the public interest is to tear down the edifice of independence built by the 1998 Congressional Amendments.

18

## The Balance of Hardships Favors the Applicant

The danger to the very essence of the Office of Attorney General as envisioned in the Organic Act cannot be underestimated. An injunction works no hardship upon the Governor at all. His power to manage and supervise the Executive Branch remains the same. All that he may lose should the injunction issue is the power to usurp the powers and duties of the Attorney General, a power he never had to begin with, at least, not since the 1998 amendments to the Organic Act and the 199 amendments to local law.

## The Public Interest Favors Granting an Injunction

The Governor's actions completely undermine the role accorded the Attorney General by the people of Guam, by the Legislature of Guam, and by the Congress. There is nothing more detrimental for public – a public that insists upon objective, independent enforcement of the rule of law – than to have the creation of a legally unauthorized law officer to oversee, harass and usurp the Attorney General it elected. What disserves the public interest most would be to permit the Governor to continue to violate the Organic Act. To preserve the public interest requires that the creation of such an office without authority in the law, and the appointment of anyone to fill that office, must be enjoined.

## THE ALTERNATIVE TEST

As noted previously, the alternative test for issuance of a preliminary injunction in the 9th Circuit "requires the applicant to demonstrate either: a combination of probable success on the merits and the possibility of irreparable injury; or serious questions going to the merits and that the balance of hardships tips sharply in the applicant's favor." *Raich v. Aschcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003).

19

With respect to the first alternative, the likelihood of probable success and the possibility of irreparable injury have clearly been demonstrated. The Governor has no authority to appoint anyone to the office of "special prosecutor," because the office does not exist, nor is it authorized under the Organic Act. In order for the Governor to appoint someone to the position, he would have to, in essence, legislate the office into existence by himself, an obvious violation of the doctrine of separation of powers. Moreover, even if the office had been established by the Guam Legislature, which it has not, it would literally take "an act of Congress" for the Governor to get over the constitutional hurdle imposed by the 1998 amendments to the Organic Act establishing the Attorney General as chief legal officer for the government of Guam, because the Governor's attempted appointment of anyone to the position of "special prosecutor" is an unlawful and inorganic usurpation of the powers and duties of the Office of Attorney General. And the possibility of irreparable injury, as discussed earlier, is presumed where, as here, the Governor is violating Guam's constitution in his usurpation of the role and function of the Attorney General.

Similarly with respect the second part of the alternative test – serious questions going to the merits and that the balance of hardships tips sharply in the applicant's favor – a preliminary injunction is clearly warranted. The questions presented here on the merits are, indeed, very serious, for those questions go to the very heart of Congressional intent in the Organic Act with respect to the separation and distribution of powers and duties in the Territorial Government of Guam. As demonstrated previously, the Governor will suffer no hardship, for he cannot suffer the loss of a power he did not have to begin with; but the hardship to the Office of the Attorney General, and to the people of Guam who elected him, is quite severe, and will result in a return to the days of political cronyism devoid of independent prosecutorial discretion and judgment.

20

That is not what Congress intended in organically establishing the Office as "chief legal officer for the government of Guam," nor is it what the Guam Legislature intended in making the Office an elected position. Accordingly, under the alternative test, a preliminary injunction is due to be issued.

## CONCLUSION

The establishment of the Attorney General in the Organic Act by Congress as a "constitutional" or "organic" officer, and the Legislature of Guam's decision that the position be elected, were intended to protect against the very thing the Governor has stated he intends to do, namely: attempt to seize control of the Office of Attorney General by appointing a super-Attorney General to harass him and undermine his efforts. But it was the intent of Congress and the Legislature of Guam to insulate the Attorney General from politics so that the enforcement of law is responsive to the public directly, not to the political whims of other government officials.

Based upon the foregoing, plaintiff respectfully submits that a preliminary injunction is due to be issued as follows:

an injunction enjoining the Governor, his successors, agents, employees, and all persons acting in concert with him from exercising or attempting to exercise any of the powers and duties of the Office of Attorney General by, *inter alia*, exercising any authority with respect to the investigation and/or prosecution of suspected crimes or criminal activity within the Territory of Guam, said authority being entirely within the powers and duties exclusively reserved to the Attorney General as Chief Legal Officer; or by appointing or attempting to appoint a "special prosecutor,"

21

however denominated, to investigate and prosecute allegations of criminal wrongdoing within the Territory of Guam.

Respectfully submitted this 14th day of July, 2004.

OFFICE OF THE ATTORNEY GENERAL
**DOUGLAS B. MOYLAN, Attorney General of Guam**

Robert M. Weinberg
Assistant Attorney General

22

1

**CERTIFICATE OF SERVICE**

2

This is to certify that I have this day served opposing counsel with a copy of the

3

foregoing by hand delivery, or by depositing same in the United States Mail, postage

4

prepaid, and properly addressed to:

5

Shannon Taitano, Esq.

6

Legal Counsel, Governor's Office
P.O. Box 2950

7

Hagåtña, Guam 96932

8

this 14th day of July, 2004.

9

OFFICE OF THE ATTORNEY GENERAL
DOUGLAS B. MOYLAN, Attorney General of Guam

10

11

12

Robert M. Weinberg
Assistant Attorney General

13

14

15

16

17

18

19

20

21

22

23

24

25

23