SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Post Office Box 2950
Hagatña, Guam 96932
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

MICHAEL A. PANGELINAN, ESQ.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

*Attorneys for Defendant*
Honorable Felix P. Camacho,
Governor of Guam

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| THE GOVERNMENT OF GUAM, by and through the ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> vs. <br><br> FELIX P. CAMACHO, in his official capacity as the Governor of Guam <br><br> Defendants. | CIVIL CASE NO. 04-00035 <br><br> MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER |

Comes now the Governor of Guam, by and through his counsel of record, and submits his opposition to the Attorney General's *ex parte* application for issuance of an order to show cause and temporary restraining order. The Governor respectfully requests that the Court deny the Attorney General's *ex parte* application on the following grounds:

**I. A TEMPORARY RESTRAINING ORDER CANNOT ISSUE BECAUSE THERE IS NO JUSTICIABLE CASE OR CONTROVERSY BEFORE THE COURT**

The Attorney General's Verified Complaint in Quo Warranto requests injunctive and declaratory relief to prevent the Governor from conducting an investigation of the Attorney General's Office or from appointing a special prosecutor to prosecute alleged wrongful conduct of the Attorney

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

1

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 1 of 10

General's Office. (See Attorney General's Verified Complaint in Quo Warranto filed July 13, 2004, ¶¶ 8,11,13,15,18). In his Complaint, the Attorney General alleges that the requested injunctive relief is necessary because the Governor "formally announced an 'ongoing investigation' by his office into alleged violations of the laws of Guam by ... the Attorney General and members of his staff." (Complaint, ¶ 8). The Attorney General repeats several times in his Complaint his assertion that the Governor has exercised "investigative and prosecutorial functions" and that the Governor has "announced his intent to appoint a special prosecutor." (Complaint, ¶ 11,13,15,18).

In an attempt to support these assertions, the Attorney General relies upon Governor Camacho's July 6, 2004 letter (*See* Exhibit 1 to Plaintiff's Complaint), which responds to the Attorney General's July 1, 2004 letter. (See Declaration of Michael A. Pangelinan filed herewith "(Pangelinan Decl."), Exhibit "A"). In the Attorney General's July 1 letter to the Governor, the Attorney General inquires about an investigation of "possible criminal wrongdoing pertaining to [the Attorney General's Office's] purchase of a teleprompter machine." (Pangelinan Decl. Ex. "A" p.1). From these two letters, and from the repeated assertions in the Attorney General's Complaint, it is clear that the only alleged issue in controversy is the Governor's authority to appoint a special prosecutor to prosecute a potential crime by the Attorney General's Office. However, as is clear from the Attorney General's letter, any investigation of the Attorney General's Office is handled by the Guam Police Department, not the Governor. Moreover, as is clear from the Governor's letter, the Governor has not indicated that he intends to appoint a special prosecutor to investigate or prosecute the Attorney General's Office. Thus, based upon the specific issue brought before this Court, the alleged controversy forming the basis of the Attorney General's Complaint in this case has not yet ripened.

For a request for injunctive relief to even be considered by the Court, there must be a justiciable case or controversy that is ripe for resolution. *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). The ripeness doctrine exists in order to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements..." *Id.* at 148-49. "Consequently, ripeness is a predicate upon which the Court's jurisdiction in its absolute, and not discretionary, sense is based." *McDonough v. United States Department of Labor*, 646 F.Supp. 478, 481 (D.Me. 1986).

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

2

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 2 of 10

Here, the Attorney General seeks a temporary restraining order to enjoin the Governor:

> from exercising or attempting to exercise any of the powers and duties of the Office of the Attorney General by, inter alia, exercising any authority with respect to the investigation and/or prosecution of suspected crimes or criminal activity within the Territory of Guam, said authority being entirely within the powers and duties exclusively reserved to the Attorney General as Chief Legal Officer; or by exercising, appointing or attempting to appoint to the office, or otherwise perform the functions and duties of a "special prosecutor," however denominated, to investigate and prosecute allegations of criminal wrongdoing within the Territory of Guam.

(*See* Attorney General's Ex Parte Application filed July 13, 2004 at p. 2). In support of his request for a temporary restraining order, the Attorney General cites the Governor's July 6 letter in which he refers to his "ability to appoint, when appropriate, a special prosecutor" and in which the Governor refers to an ongoing investigation of possible wrongful actions by the Attorney General's Office.

In addition to the special prosecutor question, the Attorney General is taking exception to any criminal investigation being conducted by any department other than his Office. The Attorney General's assertion that the investigation of these crimes, or any crimes, remains the exclusive purview of his office is: (1) a misstatement of the law, and (2) an erroneous conclusion made based upon a misrepresentation of fact.

As acknowledged in the Attorney General's July 1, 2004 letter, the Governor's office is not "investigating" any criminal action. Instead, the Governor's office requested a criminal investigation by the Guam Police Department. Criminal investigations are not within the exclusive purview of the Attorney General's Office. Allegations of wrongdoing by any public official, including law enforcement officials, are always subject to investigation by the Guam Police Department. 10 G.C.A. § 77103(a)(2))("The [Guam Police] Department is charged with the enforcement of all criminal laws. Each police officer is authorized to enforce the law.") Allegations against the Attorney General's Office are no exception. Even the cases cited by the Attorney General in his Memorandum speak only to the Attorney General's purview to "prosecute" crimes. (*See e.g.*, Attorney General's Amended Memorandum filed July 14, 2004, pp. 10-11). It is the job of the Guam Police Department to investigate allegations of criminal conduct and this by no means creates any controversy between the Attorney General's Office and the Governor to be resolved by this Court.

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

3

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 3 of 10

With respect to the Attorney General's assertion that a temporary restraining order is needed to prevent the Governor from appointing a special prosecutor to investigate allegations of wrongdoing by the Attorney General's Office, there is no statement of intent to appoint a special prosecutor for such purpose in the Governor's July 6 letter. In the first paragraph of the Governor's letter, the Governor is responding to a legal statement made by the Attorney General in his July 1 letter concerning the Governor's authority to appoint a special prosecutor. In the second paragraph of the Governor's letter, the Governor actually refrains from indicating any course of action and instead states that he is "precluded from disclosing to you the results from an ongoing investigation. . ." Although the parties may have a difference of opinion as to the Governor's Organic Act authority, such a difference when posed in a theoretical or abstract context does not create a justiciable controversy.

And even if there were such a statement of intent, mere threatened action is not ripe enough to be a justiciable case or controversy under Article III of the United States Constitution. *Mathes v. Carlson*, 534 F.Supp. 226, 228-29 (S.D. Mo. 1982)(denying on ripeness grounds temporary restraining order based on threat by federal prison officials to transfer plaintiffs to Federal correctional facility); *Parker v. United States*, 948 F.Supp. 24, 26 (E.D.N.C. 1996)(denying on ripeness grounds temporary restraining order to enjoin an intended settlement agreement where no evidence of a final settlement agreement was before the court).

## II. A TEMPORARY RESTRAINING ORDER CANNOT ISSUE BECAUSE THE ATTORNEY GENERAL HAS NOT SHOWN THAT *IMMEDIATE IRREPARABLE INJURY* WILL OCCUR ABSENT A RESTRAINING ORDER

The Attorney General requests the extraordinary relief of a temporary restraining order but he fails to establish the most important prerequisite necessary to obtain such relief. For a temporary restraining order to issue, it must "clearly appear from specific facts ... that *immediate* and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." F.R.C.P. 65(b)(emphasis added). Although the Ninth Circuit test for issuance of a temporary restraining order requires a showing of either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in the moving party's favor (*See Arcamuzi v. Continental Airlines, Inc.*, 819 F.2d 935, 937 (9th Cir.

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

4

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 4 of 10

1987)), according to the Ninth Circuit, "*under any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury.*" *Id* (emphasis added); *Arakaki v. Cayetano*, 198 F.Supp.2d 1165, 1173 (D.Hawaii 2002). "Under Fed.R.Civ.Proc. 65(b), a temporary restraining order may not be granted absent specific facts showing that an 'immediate and irreparable injury' will otherwise result." *Belgard v. State of Hawaii*, 883 F.Supp. 510, 517 (D.Hawaii 1995)(citing *Sampson v. Murray*, 415 U.S. 61, 67 (1974).

Here, the Attorney General appears to be asserting that his office will suffer irreparable injury if the Governor is not restrained from appointing a special prosecutor to investigate and prosecute alleged criminal activity of the Attorney General's Office. (*See* Attorney General's Ex Parte Application For Issuance of Order to Show and Temporary Restraining Order and Motion for Preliminary Injunctive Relief filed July 13, 2004). However, in his pleadings, the Attorney General presents no facts to show that this alleged irreparable injury will immediately occur absent a restraining order.

As explained above, the Governor's remarks in his July 6 letter do not threaten any action at all. The Governor's July 6 letter *does not* announce that the Governor is conducting an investigation, it only confirms that an investigation *by the Guam Police Department* is ongoing, and it *does not* announce that the Governor intends to appoint a special prosecutor. There is no announcement in the letter that the Governor intends to take any particular action. Even the Attorney General's July 1 letter references an alleged statement by the Governor's Chief of Staff that the Governor may appoint a special prosecutor "if warranted." There has been no clear showing by affidavit, or in any of the Attorney General's pleadings, of specific facts to establish that *immediate* irreparable injury will be suffered by the Attorney General in the absence of a temporary restraining order. Such a specific factual showing is a prerequisite under F.R.C.P. 65(b) that must be satisfied before the Court may grant such an extraordinary injunctive remedy. The prerequisite has not been satisfied here.

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

5

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 5 of 10

## III. THE COURT SHOULD DENY THE ATTORNEY GENERAL'S REQUEST FOR A TEMPORARY RESTRAINING ORDER BECAUSE HE LACKS STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

Under the Ninth Circuit test for the granting of a temporary restraining order, the Court must consider the likelihood of success on the merits. The Attorney General's likelihood of success is not as strong as he would have this Court believe. In support of his argument on this point, the Attorney General places significant emphasis on the constitutional doctrine of separation of powers. However, that doctrine has no application to the issues being presented, nor does it support the Attorney General's position in any way.

Separation of powers applies to the three traditional branches of the government – the executive, the judiciary and the legislature. The Attorney General's Office is a part of the executive branch, as is the Governor's Office. Thus, the separation of powers doctrine has no application when the dispute of power involves two offices of the same branch of government. Even the Attorney General's citations are inapposite. *In re House of Representatives (Special Prosecutor)*, 575 A.2d 176 (R.I. 1990), applies to an enactment that would have given the *judiciary* the authority to appoint a special prosecutor. *Murphy v. Yates*, 348 A.2d 837 (Md. App. 1975), applies to a *legislative* attempt to create a special prosecutor's position. In both of the supporting cases cited by the Attorney General, one of the other branches of government sought to interfere with the executive branch of government, thus the separation of powers doctrine was implicated.[1]

However, in the present case, the Governor of Guam is the chief executive. 48 U.S.C. § 1422 ("The executive power of Guam shall be vested in an executive officer whose official title shall

---

[1] To further illustrate the Attorney General's failure to grasp the separation of powers doctrine, in footnote 1 of his memorandum, he states that in order to succeed in appointing a special prosecutor, the Governor would have to "disregard the separation of powers doctrine, assume the legislative mantle of Congress, and legislate the office of special prosecutor into existence." The Attorney General fails to recognize that the Governor of Guam and Congress are *not* co-equal branches of the same government, thus, the separation of powers doctrine *would not be* implicated in the Attorney General's hypothetical. Instead, the doctrine of federalism would be implicated (but for the fact that Guam is not a separate state, but is also a federal entity). Moreover, subsequent creation of a special prosecutor's position by Congress *would also not* implicate the separation of powers doctrine since Guam is a federal entity whose governmental framework is subject to Congressional control.

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

6

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 6 of 10

be the 'Governor of Guam.'") As the Island's chief executive, the Governor "shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." *Id.* Inclusive in his responsibility to faithfully execute the laws of Guam is his ability to prosecute crimes when necessary. "Where the constitution commands the Governor to take care that the laws be faithfully executed, the power to supersede a District Attorney may be implied." *People v. Malek*, 416 N.Y.S.2d 470, 473 (1979). The *Malek* case also dealt with a constitutionally created office, the County District Attorney. In that case, the responsibility for the prosecution of crimes was constitutionally transferred from the state Attorney General to District Attorneys. Notwithstanding a constitutional transfer of the prosecutorial function, the court upheld the Governor's authority to direct the appointment of a special prosecutor. Further, contrary to the Attorney General's position that his common law powers vest him with exclusive prosecutorial functions, the *Malek* court held that "the historical role of the attorney-general [is] to serve the Governor in the performance of his constitutional duty to see to it that the laws of the State are executed." *Id.*

Thus, there is no strong likelihood that the Attorney General will prevail in his argument that the Governor is without authority to appoint a special prosecutor since the Organic Act of Guam empowers the Governor to faithfully execute the laws of Guam and the historical, common-law function of an Attorney General is *not* an exclusive prosecutorial function but such empowerment as is necessary for him to serve the Governor in the prosecution of crimes.

### IV. THE COURT SHOULD ABSTAIN FROM HEARING THIS ACTION SINCE THERE IS AN OPPORTUNITY FOR THE ISSUES PRESENTED TO BE LITIGATED IN THE LOCAL COURTS OF GUAM

In its *ex parte* application and supporting pleadings, the Attorney General asks this Court to restrain the Governor from exercising or attempting to exercise investigative and prosecutorial functions believed by the Attorney to be bestowed solely upon his office. The Attorney General argues that the Governor has no authority in local law or under the Organic Act to appoint a special prosecutor and his alleged act of doing so invades the province of the Attorney General to investigate and prosecute criminal wrongdoing. (See Memorandum in Support of Motion for Preliminary Injunctive Relief at p. 17). There is already an opportunity for the very issues presented to this Court to be

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd                                           7

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 7 of 10

litigated in the Superior Court of Guam in *People v. Moylan*, Superior Court of Guam Case No. CM864-03. Accordingly, based on federal abstention principles the Court should abstain from hearing this matter and allow the local courts to decide this important issue of local concern.

The doctrine of abstention was established by the U.S. Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine requires that a federal court refrain from interfering with an ongoing state action that implicates state interests where there is an adequate opportunity to raise federal issues in the state proceeding. *See id.*; *Attorney General of Guam v. Thompson*, Dist. Ct. of Guam Civil Case No. 03-00008 (Order Apr. 1, 2003) (discussing *Younger* abstention doctrine). In *Younger*, the Supreme Court adopted a strong federal policy against federal court interference with pending state court proceedings. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("*Younger* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."). "*Younger* [and its progeny] express equitable principles of comity and federalism. They are designed to allow the State an opportunity to 'set its own house in order' when the federal issue is already before a state tribunal." *Ohio Bureau of Employment Serv. v. Hodory*, 431 U.S. 471, 479 (1977). *Younger* abstention is proper where "(1) there are ongoing state judicial proceedings, (2) that implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Confederated Salish v. Simonich*, 29 F.3d 1398, 1405 (9th Cir. 1994). *See Middlesex County Ethics Comm.* 457 U.S. at 432 (stating same). If the *Younger* doctrine applies, the case must be dismissed. *See H.C. v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000); *Confederated* Salish, 29 F.3d at 1402 ("When *Younger* abstention is applicable, the district court 'must dismiss the action.'"); Attorney *General of Guam v. Thompson*, District Court of Guam Civil Case No. 03-00008, April 1, 2003 Order at p. 8 (dismissing case under *Younger* where all three criteria met). All three *Younger* requirements are satisfied here.

First, there is an ongoing action in the Superior Court of Guam. *People v. Moylan* is an ongoing criminal misdemeanor action currently pending before the Superior Court of Guam. (See July 14, 2004 Declaration of Louie Yanza in Support of Objection to Suggestion for Referral to United

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

8

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 8 of 10

States Magistrate Judge.) That criminal action was brought on September 29, 2003, well before this action was filed and trial has been scheduled by the local court.

Second, both the local and federal proceedings implicate important local issues. In *People v. Moylan*, a Special Prosecutor was appointed by the Governor. On June 23, 2004, the defendant filed a written notice that he intends to challenge the Governor's authority to appoint a special prosecutor and that such challenge is forthcoming. (See Pangelinan Decl., Exhibit "B.") Here, the Attorney General presents the identical issue; he seeks to have this Court declare that the Governor has no legal authority to make such appointments.[2] Accordingly, both the local and federal actions involve a review of the scope and powers of the Governor and Attorney General, which are important issues of local concern. *See Attorney General of Guam v. Thompson*, District Court Civil Case No. 03-00008, Apr. 1, 2003 Order at p. 8 (finding that important local issues were implicated where both local and federal proceedings involve a review of the "scope and powers of the Attorney General, the Legislature, and the autonomous government agencies, and the Attorney General's responsibility to establish legal policy for the Government of Guam.").

Third, there is an adequate opportunity in the local proceeding for litigation of the issues presented in this action. Under this requirement, even if the litigant has yet to raise the federal claims in state court, the federal court should assume that the state procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary. *See Pennzoil Co. v. Texaco*, 481 U.S. 1, 15 (1987) (finding that *Younger* abstention was proper even where litigant made no effort in state court to present his federal claims since there is no state procedure barring the presentation of such claims). It is inconsequential that defendant in *People v. Moylan* has yet to present his constitutional challenge as there is no bar to the local court adjudicating such issues. Moreover, if and when the challenge to

---

[2] Although the Governor has appointed a special prosecutor in *People v. Moylan*, this appointment is *not* being challenged by the Attorney General in this present action. As pointed out above, the Attorney General is requesting injunctive relief because the Governor "formally announced an 'ongoing investigation' by his office into alleged violations of the laws of Guam by ... the Attorney General and members of his staff." (Complaint, ¶ 8). The Attorney General repeats several times in his Complaint that his action is to curtail the Governor from carrying out his "announced [ ] intent to appoint a special prosecutor." (Complaint, ¶ 11,13,15,18).

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

9

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 9 of 10

the Governor's appointment authority is raised in the Superior Court case, a ruling from this Court could affect the outcome of this challenge in the Superior Court. Accordingly, there is an adequate opportunity for litigation in the local proceeding of the very issues presented in this action. Having satisfied all three requirements under *Younger*, dismissal of this action is warranted.

## V.  CONCLUSION

For the foregoing reasons, the Governor respectfully requests that the Court deny the Attorney General's Ex Parte Application for Order to Show Cause and Temporary Restraining Order based on the Attorney General's failure to establish a justiciable case or controversy for this Court to resolve, based on the Attorney General's failure to show that a temporary restraining order is necessary to avoid *immediate* and irreparable injury, based on the Attorney General's failure to show a strong likelihood of success on the merits and since there is already an adequate opportunity for the issues presented for this Court's determination to be litigated in *People v. Moylan*.

Dated this 15th day of July, 2004.

**SHANNON TAITANO, ESQ.**
**OFFICE OF THE GOVERNOR OF GUAM**

**MICHAEL A. PANGELINAN, ESQ.**
**CALVO AND CLARK, LLP**
Attorneys for the Honorable Felix P. Camacho,
Governor of Guam

By: _____
       MICHAEL A. PANGELINAN

MEMORANDUM IN OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE
OF ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
T040714.382-0007.CT (Opposition to TRO) v4.wpd

10

Case 1:04-cv-00035   Document 12   Filed 07/15/2004   Page 10 of 10