SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Post Office Box 2950
Hagåtña, Guam 96932
Telephone:    (671) 472-8931
Facsimile:    (671) 477-4826

MICHAEL A. PANGELINAN, ESQ.
JANALYNN CRUZ DAMIAN, ESQ.
CALVO AND CLARK, LLP
Attorneys at Law
655 South Marine Drive, Suite 202
Tamuning, Guam 96913
Telephone:    (671) 646-9355
Facsimile:    (671) 646-9403

Attorneys for Defendant
Honorable Felix P. Camacho,
Governor of Guam

FILED
DISTRICT COURT OF GUAM

JUL 27 2004

MARY L. M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

THE GOVERNMENT OF GUAM, by and
through the ATTORNEY GENERAL OF
GUAM,

                    Plaintiff,

        vs.

FELIX P. CAMACHO, in his official capacity
as the Governor of Guam

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL CASE NO. 04-00035

**OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF**

COMES NOW the Governor of Guam (the "Governor"), by and through his counsel of record, and submits his opposition to the motion for preliminary injunctive relief filed by the Attorney General of Guam (the "Attorney General").

## I.    INTRODUCTION

The Attorney General has moved for a preliminary injunction against the appointment of a special prosecutor to investigate alleged criminal conduct by the Attorney General. According to the Attorney General, he alone, among all duly-elected office holders of Guam, is free from any independent investigation into his office or his actions. Also according to the Attorney General, the

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

ORIGINAL

1

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 1 of 35

1 crisis is so severe that the Governor must be enjoined from acting even before any determination is
2 made by the Governor to appoint a special prosecutor.

3 These facts make it abundantly clear that the Attorney General has not met and cannot
4 meet the difficult burden necessary to justify a preliminary injunction. The Attorney General is not
5 challenging an appointment of a special prosecutor. He is challenging the *possibility* of an appointment,
6 a possibility that itself is incapable of creating any irreparable harm.

7 The Attorney General also enjoys no possibility of success on the merits. The Governor
8 has not attempted to divest the Attorney General of his discretionary judgment to initiate, pursue and
9 conclude investigations and prosecutions of alleged violations of the laws of Guam. The Governor may
10 act pursuant to his own powers to ensure the faithful execution of the laws of Guam, a power granted
11 to him by the Organic Act of Guam and comparable to the powers granted to the governors of the fifty
12 States. The Attorney General asserts that absent some specific Organic Act or statutory provision
13 authorizing the appointment of a special prosecutor, the Governor has no inherent power to make such
14 an appointment. But the inevitable and unacceptable consequence of the Attorney General's position
15 would be that the Attorney General would be removed from any accountability for possibly criminal
16 conduct. Nothing in the Organic Act or in local law supports such a conclusion.

17 The Attorney General's position is based in part on hyperbole and misdirection. The
18 issue in this case is solely whether the Governor is empowered to appoint a special prosecutor where
19 the Attorney General is disqualified from acting. Therefore, arguments in regard to situations where
20 the Attorney General has no conflict of interest – *i.e.*, where he is not the subject of the Guam police
21 department's criminal investigation – are simply inapposite and irrelevant.[1] The question here is

22

23 _____

[1] To support the assertion that his common law powers include an exclusive grant of
24 prosecutorial functions, the Attorney General cites to the Decision and Order entered in *Moylan v.*
*Camacho*, Superior Court of Guam Special Proceeding Case No. SP230-03 (Nov. 10, 2003). The
25 Decision and Order is of minimal relevance in this matter because it is limited to the jurisdictional issue
26 of whether the Attorney General has the authority to bring an action, as a representative of the public
interest, against the Governor to compel enforcement of a Guam law. While the Decision and Order
27 establishes that the Attorney General is granted general common law powers, it is silent as to the
exclusivity of the Attorney General's prosecutorial duties and the Governor's authority to execute the
28 laws of Guam through the appointment of a special prosecutor. Therefore, the Attorney General's

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                                2

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 2 of 35

1 whether Congress possibly intended to rewrite the Organic Act to place the Attorney General uniquely
2 above the law. The Governor respectfully submits that Congress did not.

3 ## II. ARGUMENT

4 To receive preliminary injunctive relief, the Attorney General must demonstrate: (1)
5 likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of
6 hardships favors the applicant; and (4) whether any public interest favors granting an injunction. *See*
7 *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003). These factors are measured by the actual
8 circumstances presented in the case, and not by any hypothetical situations suggested by the Attorney
9 General. *See National Coalition for Public Ed. and Religious Liberty v. Harris*, 489 F. Supp. 1248,
10 1251 (S.D.N.Y. 1980) ("A federal court does not sit to render a decision on hypothetical facts.").

11 ### A. THE ATTORNEY GENERAL HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

12
13 #### 1. The Governor's Powers and Duties Under the Organic Act of Guam Includes the Authority to Appoint a Special Prosecutor When the Attorney General Is Disqualified from Acting
14

15 The Attorney General contends that the Governor has "no authority to investigate or
16 oversee the prosecution of allegations of criminal wrongdoing in Guam. That is reserved to the
17 Attorney General alone." Memorandum In Support of Motion for Preliminary Injunctive Relief, p. 7.
18 However, neither the Attorney General nor a prosecuting attorney acting at his direction can objectively
19 investigate charges against the Attorney General. This is a simple conflict of interest. *See State v.*
20 *Cope*, 50 P.3d 513 (Kan. App. 2002) ("A conflict of interest exists in the prosecution of a criminal case
21 whenever the circumstances of the case evidence a reasonable possibility that the prosecutor's office
22 may not exercise its discretionary function in an evenhanded manner"); *People v. Lee*, 2003 WL
23 22208357, *3 (Colo. App. 2003)[2] (disqualification of a prosecutor is justified whenever "reasonably
24 necessary to ensure the integrity of the fact finding process, the fairness or appearance of fairness of

27 citation is inapposite.

28 [2] This case is attached hereto for the Court's reference.

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                                    3

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 3 of 35

1  trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal
2  justice system").[3]

3        Given that the objectivity and impartiality of the Attorney General will be called into
4  question if a special prosecutor is not appointed by the Governor, the simple question is whether the
5  Governor may appoint a special prosecutor under such circumstances to protect the public's interest in
6  the fair and faithful applications of the laws. And the simple answer to that question is "yes."

7        The Governor of Guam is the chief executive of Guam pursuant to the Organic Act of
8  Guam. *See* 48 U.S.C. § 1422 ("The executive power of Guam shall be vested in an executive officer
9  whose official title shall be the 'Governor of Guam.'"). The Organic Act provides that "[t]he Governor
10  shall have general supervision and control of all departments, bureaus, agencies and other
11  instrumentalities of the executive branch of the government of Guam." *Id.* As Guam's chief executive,
12  the Organic Act also mandates that the Governor "shall be responsible for the faithful execution of the
13  laws of Guam and the laws of the United States applicable in Guam." *Id.*

14        These are constitutional-level, plenary powers no different than those granted to the
15  President of the United States or the governors of the fifty States. They must be interpreted to achieve
16  their broad purpose of granting the Governor the ultimate executive power of the executive branch. *See*
17  *Nixon v. Fitzgerald*, 475 U.S. 731 (1982) ("This grant of authority establishes the President as the chief
18  constitutional officer of the Executive Branch, entrusted with supervisory and policy responsibilities
19  of utmost discretion and sensitivity."); *Haeuser v. Dep't of Law*, 97 F.3d 1152, 1156 (9th Cir. 1996)
20  ("The Organic Act serves the function of a constitution for Guam."); *In re Request of Governor Felix P.*
21  *Camacho Relative to the Interpretation and Application of Sections 6 and 9 of the Organic Act of*
22  *Guam*, 2004 Guam 10, ¶ 38 ("[T]he Governor's power of 'general supervision and control of all the
23  departments, bureaus, agencies, and other instrumentalities of the executive branch of the government
24  of Guam,' means that the Governor is vested with the overall power to manage, direct, or oversee such
25  entities."); *In re Advisory Opinion to the Governor*, 732 A.2d 55, 99 (R.I. 1999) ("[S]uch a vesting of

26
27
28        [3] Further, a prosecuting attorney who will act as a witness at trial also must be disqualified. *See*
    *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985).

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                    4

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 4 of 35

1 [executive] power must be deemed to include, at a minimum, the right to superintend how the laws of
2 this state will be executed, especially if the Governor's corresponding duty to take care that the laws of
3 the state are faithfully executed is to have any meaning whatsoever. Moreover, because the constitution
4 designates the Governor as the *chief*-executive officer, it implies that the Governor will be able to
5 appoint, manage, and control *subordinate* executive officials and entities that will be available to assist
6 him or her in executing the laws.") (citation omitted and emphasis in original).

7 The Governor's plenary powers to ensure the faithful execution of the laws of Guam
8 specifically embrace the necessity of appointing a special prosecutor where the Attorney General is
9 disqualified from acting. In *People v. Camacho*, 1 Guam Rep. 501 (1975)[4], the Supreme Court of
10 Guam affirmed the Governor's authority to appoint a special prosecutor. "[A] prosecutor acts as an
11 agent of the executive in carrying out the executive's constitutional duty of enforcement of the laws."
12 *Id.* at 508 (citing *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965)). The Court found that the
13 Governor, as the Organic Act officer charged with responsibility for faithful execution of the laws of
14 Guam, was the appropriate person to appoint a special prosecutor. *See id.*

15 This decision that the faithful execution of the laws includes the power to appoint a
16 special prosecutor when the Attorney General is disqualified is consistent with the laws of the States.
17 For example, New York's courts have reasoned that its state constitution does not vest prosecuting
18 functions exclusively to the district attorney or preclude the Governor from appointing a special
19 prosecutor:

20 The attempt to read into the Constitution a provision that district attorneys shall be the
 exclusive prosecuting officers within their respective counties must therefore fail.
21 Indeed the Constitution itself contains a plain implication to the contrary. Article IV,
 section 3, commands the Governor to 'take care that the laws are faithfully executed.'
22 *Necessarily this implies power on the part of the Governor to supersede a district*
 *attorney where that official's conduct is reasonably called into question* Here is a
23 clear indication that district attorneys are not the sole possessors of the function of
 criminal prosecution.
24
25 *In re B. Turecamo Contracting Co., Inc.*, 21 N.Y.S.2d 270, 275 (1940)(emphasis added); *People v.*
 *Malek*, 416 N.Y.S.2d 470, 473 (1979) ("Where the constitution commands the Governor to take care
26
 that the laws be faithfully executed, the power to supercede a District Attorney may be implied.").
27

28 [4] This case is attached hereto for the Court's reference.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                    5

Case 1:04-cv-00035   Document 22   Filed 07/27/2004   Page 5 of 35

1    Other courts that have considered the issue have echoed this principle. One court

2    examined an assertion similar to the Attorney General's carried out to its unreasonable conclusion:

3        If the contention of defendant's counsel [challenging the validity of the actions of a
         court-appointed special prosecutor when the elected prosecutor is disqualified] is to
4        prevail, then, if a prosecuting attorney should be for any reason disqualified, all the
         wheels of criminal justice would be brought to a standstill for the reason that there
5        would be no vacancy in the office that the governor could fill, and no power in the court
         to make a temporary appointee who could in all things discharge the duties pertaining
6        to the office in question. . . . *The law does not intend any such absurdity, and will not
         permit such a failure of justice.*
7

8    *State v. Moxley*, 14 S.W. 969, 971(Mo. 1890) (emphasis added); accord *Teleco, Inc. v. Corporation

9    Commission of Oklahoma*, 649 P.2d 772, 775 (Ok. 1982) ("If personal disqualification prevents the

10   attorney general from fulfilling the duties of his office, the Governor may, if he should so desire,
11
     appoint special counsel to perform this function."). As these cases show, the Governor has the
12
13   executive authority to appoint a special prosecutor to ensure the faithful execution of the laws of Guam

14   where the Attorney General is disqualified.

15                          2.    **The Organic Act of Guam Does Not Grant Exclusive Prosecutorial**
16                                **Functions to the Attorney General**

17                The Attorney General's position is that the prosecutorial powers he possesses are
18
     exclusive, and therefore there can be no independent investigation into his actions because he must
19
20   control all criminal investigations. Yet, the Attorney General fails to identify any specific provision

21   of the Organic Act that supports this conclusion. The Attorney General generally asserts that his

22   designation as "chief legal officer" can be equated with exclusive prosecutor and that the Governor's

23   appointment of a special prosecutor would therefore be inorganic. However, the Organic Act simply
24
     designates the Attorney General as the "chief legal officer" without creating any specific powers
25
26   (plenary, exclusive, or otherwise) in that office. The Organic Act only contains a general grant covering

27   all executive officers (such as the Attorney General) that permits them to have "the powers and duties

28   as may be conferred or imposed on them by law ...." 48 U.S.C. § 1422c(b). And it most particularly

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                          6

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 6 of 35

does not contain any plenary or exclusive authority to control any criminal investigation into his office. *See* 48 U.S.C. § 1421g(d)(1). *See also Wilder v. Attorney General of Virginia*, 439 S.E.2d 398 (Va. 1994) (rejecting the attorney general's argument that the appointment of a special prosecutor allowed the governor to remove duties and powers from the constitutional office of attorney general because the attorney general failed to allege the specific constitutional provision that was violated by the governor's appointment).

In this case, the Organic Act actually specifically provides that prosecutorial functions *are not* exclusively reserved to the Attorney General. In the same section of the Organic Act that establishes the Attorney General's position (48 U.S.C. § 1421g), Congress also provided for the creation of the Office of Public Prosecutor. *See* 48 U.S.C. § 1421g(c) ("The Government of Guam may by law establish an Office of Public Prosecutor . . ."). Thus, it appears that Congress expressly intended the definition of Attorney General's role as "chief legal officer" to be distinct from the role of a public prosecutor. Accordingly, any prosecutorial functions enjoyed by the Attorney General are granted to his office by local law. *See* 5 G.C.A. § 30104 ("The Attorney General shall have cognizance of all matters pertaining to public prosecution. . .").

The Attorney General argues that the 1998 amendments to the Organic Act allowing the election of the Attorney General reflect congressional intent to make the office "autonomous and independent." He asserts that *People v. Camacho* is now inapposite because it "fail[s] to take into consideration [this] significant structural changes to the balance of powers within the Government of Guam." Motion for Preliminary Injunctive Relief, p.5, n.1. However, Congress only altered the powers of the Guam Legislature as to the procedure for the selection of the Attorney General, providing simply that: "Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

7

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 7 of 35

which the Governor of Guam is elected." 48 U.S.C. § 1421g(d)(2). This is hardly a grant of exclusive powers.

### 3. The Guam Code Does Not Grant Exclusive Prosecutorial Functions To the Attorney General

The Attorney General's enumerated powers under Guam's local laws do not include the exclusive authority to investigate, pursue and prosecute violations of the laws of Guam, especially not when it may be the Attorney General who is alleged to have violated the law. Moreover, any intent or interpretation that it does grant such exclusivity would be inorganic, as such an interpretation is contrary to the Organic Act provision which provides that the Governor "shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422. *See also* 48 U.S.C. § 1423a ("The legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam.").

Although the Attorney General is also designated in Guam law as public prosecutor, the Guam Code actually provides that prosecutorial functions may be granted to attorneys other than the Attorney General. "Prosecuting attorney" is defined as "any attorney, by whatever title designated, having by law the right of duty to prosecute any offense in behalf of the Territory." 8 G.C.A. § 5.60. The Note to § 5.60 further explains: "At present the Attorney General is the prosecuting attorney. However, from time to time, *'special prosecutors' may be created and perhaps some day the function may be transferred to a separate office.* Section 5.60 is flexible enough to accommodate all of these possibilities." *Id.* (emphasis added). *See State v. Schlein*, 854 P.2d 296, 305 (Kan. 1993) (notes and comments of local statutes are one indication of legislative intent); *Lessner v. Rubinson*, 592 A.2d 678 (Pa. 1991) (notes are persuasive and should be given weight in the construction of statutes). Thus, there

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

8

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 8 of 35

is nothing in the Guam Code granting the Attorney General *exclusive* authority to conduct and supervise all criminal prosecutions in Guam.

The Attorney General also points to his common law powers for further support of his position. *See* 5 G.C.A. § 30103 (granting common law powers to the Attorney General). However, "the historical role of the attorney-general is to serve the Governor in the performance of his constitutional duty to see to it that the laws of the State are executed." *People v. Malek*, 416 N.Y.S.2d 470, 473 (1979); *see also Hansen v. Barlow*, 456 P.2d 177 (Utah 1969) (At common law, "the redress of public injuries in the name of the king was instituted by the Attorney General by an information which, as the name imports, merely informed the Chancellor of the existence and nature of the public wrong; it being considered beneath the dignity of the king to pray for relief in his own courts."); *accord State v. Hunter*, 270 A.2d 343, 345 (Md. App. 1970) ("At common law in England, the Attorney General was entrusted with the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the Crown was interested.").

### 4. The Separation of Powers Doctrine Is Inapplicable

Finally, the Attorney General asserts that the Governor's actions are a "blatant violation" of the separation of powers doctrine as set forth in the Organic Act. That is impossible – only a single branch of government is even before the Court. The Governor is an executive officer. So too is the Attorney General.[5] Notwithstanding his assertions of independence and insulation from the executive and legislative branches, the Organic Act only creates three possible branches of Government. *See* 48

---

[5] The Governor also has the organic authority to appoint an Attorney General to fill a vacancy created in the elective office during the last six months of the Attorney General's elected term. *See* 48 U.S.C. § 1421g(d)(2). This underscores the fact that the Attorney General is an office within the executive branch, that prosecutes the laws of Guam under the larger umbrella of the Governor's executive powers. *See also* 5 G.C.A. §§ 3102 and 30101(a) (the Attorney General is the head of the Department of Law, a department within the executive branch).

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd                                                              9

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 9 of 35

U.S.C. § 1421(a) (creating the executive, legislative, and judicial branches). Consequently, the issue presented in this case involves two members of the same branch of government (the executive) and the doctrine of separation of powers is inapplicable.

## B. APPOINTMENT OF A SPECIAL PROSECUTOR CREATES NO THREAT OF IRREPARABLE INJURY

The Attorney General first seeks to benefit from a presumption of irreparable injury. However, to benefit from such a presumption, the movant must show significant likelihood of success on the merits. *See Miller v. California Pacific Medical Center*, 19 F.3d 449 (9th Cir. 1994). As set forth above, the Attorney General is extremely *unlikely* to prevail on the merits of his motion. Therefore, the Attorney General is not entitled to the presumption of irreparable injury.

Absent the presumption, the Attorney General has made no true showing of specific facts to establish that irreparable injury will be suffered by the Attorney General in the absence of a preliminary injunction. "There is a strong presumption that public officers exercise their duties in accordance with law. An injunction will not issue to restrain official conduct without a clear showing of abuse of lawful duty or wrongful usurpation of power." *Laughlin v. Cummings*, 105 F.2d 71 (C.A.D.C. 1939). The Attorney General's motion relies only on *reports* indicating that the Governor *may* be in the *process* of appointing a special prosecutor for a matter which *may* result in criminal charges against the Attorney General. None of this creates a certain threat of injury. The provisions in the Organic Act providing that the Governor shall be responsible for the faithful execution of Guam's laws and that the Governor is Guam's chief executive conclusively demonstrate that the Governor is empowered to execute the laws through the appointment of a special prosecutor when the Attorney General is disqualified from acting. The Attorney General has failed to establish the Governor's wrongful usurpation of power because the Governor is acting within his organically prescribed power.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

10

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 10 of 35

Moreover, even the appointment of a special prosecutor cannot create an irreparable injury, especially when limited to matters in which the Attorney General is disqualified from acting. The Attorney General broadly asserts that he "cannot perform his duties as chief legal officer responsible for the enforcement of Guam's laws in the shadow of an unlawfully appointed and constitutionally unauthorized 'special prosecutor' (who responds only to the Governor and to the Governor alone) to investigate and countermand or usurp the prosecutorial discretion of the Attorney General." Motion for Preliminary Injunctive Relief, p. 17. This argument is without merit.

The Attorney General seeks to enjoin the Governor from appointing a special prosecutor to investigate and/or pursue charges against the Attorney General. "Such an appointment is intended to confer an authority to function only as to matters concerning which a district attorney is disqualified, and in which, in all conscience, he ought not to act." *Sloane v. Hammond*, 254 P. 648, 649 (Cal. App. 1927). In this context, an appointment of a special prosecutor "prevent[s] the perpetration of great wrongs, and it neither affects the 'office' of district attorney nor relieves an incumbent of the office from the discharge of its general duties." *Id.* Thus, even though the Attorney General is an organic office, the appointment of a special prosecutor would not constitute an infringement of his powers in cases in which the Attorney General is disqualified to act. No usurpation can occur.

## C. THE BALANCE OF HARDSHIPS FAVORS THE GOVERNOR

The Attorney General asserts that an injunction imposes no hardship on the Governor and that the Governor's power to manage and supervise the executive branch will be unaffected if this Court enjoins the Governor from appointing a special prosecutor. This assertion contravenes the specific command in the Organic Act that the Governor "shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422. If the Court grants the injunction sought by the Attorney General, the Governor will be enjoined from the

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

11

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 11 of 35

faithful execution of certain of his duties under the Organic Act, and in truth, it will be the Governor's powers that are being usurped.

## D. THE GRANTING OF AN INJUNCTION WOULD BE A DISSERVICE TO THE PUBLIC INTEREST

The public interest in denying this injunction is strong. It is inappropriate and contrary to the public interest for the Attorney General to investigate and pursue criminal charges against himself or his office. By bringing this motion to enjoin appointment of a special prosecutor, the Attorney General has demonstrated his refusal to acknowledge the necessity of disqualifying himself from this matter. If the injunction is granted, even on a temporary basis, it will make the Attorney General immune (at least so long as the injunction lasts) from criminal investigation or prosecution.

It would be an extraordinary act contrary to the public interest for a federal court to enjoin an ongoing criminal probe into violations of local law by a locally elected official. It would be even more extraordinary and harmful if that injunction also had the effect of granting that official immunity from prosecution for violations of local laws. The position asserted by the Attorney General does not promote accountability of the chief legal officer. It insulates the Attorney General from any criminal investigation, and places him above the law. The Governor does not believe he exaggerates in stating that it is difficult to imagine relief that could be more contrary to the public interest.

//
//
//
//
//
//

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

12

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 12 of 35

### III. CONCLUSION

For the foregoing reasons, the Governor respectfully requests that the Court deny the Attorney General's Motion for Preliminary Injunctive Relief.

Dated this 27th day of July, 2004.

**SHANNON TAITANO, ESQ.**
**OFFICE OF THE GOVERNOR OF GUAM**

**MICHAEL A. PANGELINAN, ESQ.**
**JANALYNN CRUZ DAMIAN, ESQ.**
**CALVO AND CLARK, LLP**
Attorneys for the Honorable Felix P. Camacho,
Governor of Guam

By: _____
        MICHAEL A. PANGELINAN

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**
CIVIL CASE NO. 04-00035
MR040723.382-0007.CT (Oppo. to Prelim. Injunct.)v4.wpd

13

Case 1:04-cv-00035     Document 22     Filed 07/27/2004     Page 13 of 35

**ATTACHMENTS TO OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF**

1.  *People v. Lee*, 2003 WL 22208357 (Colo. App. 2003)

2.  *People v. Camacho*, 1 Guam Rep. 501 (1975)

*People v. Lee*, 2003 WL 22208357 (Colo. App. 2003)



▷
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. A PETITION FOR REHEARING IN THE COURT OF APPEALS OR A PETITION FOR CERTIORARI IN THE SUPREME COURT MAY BE PENDING.

Colorado Court of Appeals,
Div. III.

The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Sonny LEE, Defendant-Appellant.

No. 01CA2165.

Sept. 25, 2003.
As Modified on Denial of Rehearing Dec. 24, 2003.

Defendant was convicted in the District Court, Boulder County, Carol Glowinsky, J., of kidnapping, sexual assault, and accessory to crime. Defendant appealed. The Court of Appeals, Marquez, J., held that: (1) defendant did not have reasonable expectation of privacy in telephone calls from jail; (2) prosecutor's campaign for district attorney did not disqualify her from prosecuting defendant's trial; (3) disqualification of prospective juror who could not read or write English did not violate constitutional right to serve as juror; and (4) reasonable doubt instruction did not constitute plain error.

Affirmed.

**[1] Criminal Law** 🔑1036.1(4)

110k1036.1(4) Most Cited Cases

Defendant waived claim on direct appeal that wiretaps of his telephone conversations while incarcerated at county jail violated state wiretapping statute and that trial court erred by denying his

motion to suppress them, where he did not raise the claim with trial court.

**[2] Telecommunications** 🔑495
372k495 Most Cited Cases

Defendant did not have reasonable expectation of privacy in telephone calls from jail, and thus, warrantless wiretapping of his telephone conversations did not violate Fourth Amendment. U.S.C.A. Const.Amend. 4.

**[3] Searches and Seizures** 🔑24
349k24 Most Cited Cases

Warrantless searches violate constitutional guarantees because they are presumptively unreasonable. U.S.C.A. Const.Amend. 4.

**[4] Searches and Seizures** 🔑23
349k23 Most Cited Cases

**[4] Searches and Seizures** 🔑26
349k26 Most Cited Cases

The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. U.S.C.A. Const.Amend. 4.

**[5] Searches and Seizures** 🔑42.1
349k42.1 Most Cited Cases

In the absence of a reasonable expectation of privacy, law enforcement officials are free to conduct a warrantless search, notwithstanding whether the search is also justified by exigent circumstances or some other exception to the warrant requirement of the Fourth Amendment. U.S.C.A. Const.Amend. 4.

**[6] Prisons** 🔑4(6)
310k4(6) Most Cited Cases

Prisoners have little, if any, reasonable expectation of privacy while incarcerated. U.S.C.A. Const.Amend. 4.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**[7] Searches and Seizures** ☞171
349k171 Most Cited Cases

**[7] Searches and Seizures** ☞185
349k185 Most Cited Cases

Consent to search may be expressed or implied.
U.S.C.A. Const.Amend. 4.

**[8] Searches and Seizures** ☞26
349k26 Most Cited Cases

A Fourth Amendment violation occurs only if a
defendant has a justifiable expectation of privacy.
U.S.C.A. Const.Amend. 4.

**[9] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

A showing of mere partiality by the district attorney
is not sufficient to disqualify him from prosecuting
trial; allegations of interest must show a concern in
the outcome of the matter such that the district
attorney will either reap some benefit or suffer some
disadvantage. West's C.R.S.A. § 20- 1-107(2).

**[10] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

An appearance of impropriety may be basis for
disqualification of a district attorney. West's C.R.S.A.
§ 20-1-107(2).

**[11] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

The fundamental inquiry in a motion to disqualify a
district attorney is whether disqualification appears
reasonably necessary to ensure the integrity of the
fact finding process, the fairness or appearance of
fairness of trial, the orderly or efficient
administration of justice, or public trust or confidence
in the criminal justice system.

**[12] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

Trial courts have broad discretion in determining
whether they should disqualify a district attorney
from prosecuting a particular case. West's C.R.S.A. §
20-1-107(2).

**[13] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

Because an appearance of impropriety by a district
attorney for purposes of disqualification is almost
entirely dependent on context, determinations
grounded on this legal basis must turn on the
circumstances of each particular case. West's
C.R.S.A. § 20-1-107(2).

**[14] Criminal Law** ☞1035(1)
110k1035(1) Most Cited Cases

Defendant waived claim on direct appeal that, for
purposes of disqualification, there was actual
impropriety in district attorney's role in transferring
him to another county in order to record defendant's
telephone calls from jail, where defendant did not
raise that claim before trial court.

**[15] Criminal Law** ☞639.1
110k639.1 Most Cited Cases

Prosecutor's campaign for district attorney did not
taint judicial proceedings, so as to warrant
prosecutor's removal from trial for kidnapping, sexual
assault, and accessory to crime; change of venue
cured any possible taint from publicity surrounding
campaign, and potential political benefit from
defendant's conviction was not sufficiently distinct
from her professional responsibility. West's C.R.S.A.
§ 20-1-107(2).

**[16] Jury** ☞43
230k43 Most Cited Cases

Statutory disqualification of prospective juror who
could not read or write English did not violate
constitutional right to serve as juror. U.S.C.A.
Const.Amend. 14; West's C.R.S.A. § 13-71-
105(2)(b).

**[17] Jury** ☞42
230k42 Most Cited Cases

**[17] Jury** ☞43
230k43 Most Cited Cases

The fact finder, at a minimum, must be able to
understand all of the evidence presented and evaluate
that evidence in a rational manner. West's C.R.S.A. §
13-71-105(2)(b).

**[18] Jury** ☞43
230k43 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Whether a prospective juror should be disqualified under the statute requiring ability to read, speak, an understand English is a question of fact for resolution by the trial court. West's C.R.S.A. § 13-71-105(2)(b).

**[19] Jury** 🗝38
230k38 Most Cited Cases

**[19] Jury** 🗝41
230k41 Most Cited Cases

**[19] Jury** 🗝42
230k42 Most Cited Cases

The United States Constitution does not forbid the states to prescribe relevant qualifications for their jurors; states remain free to confine the selection to citizens to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. U.S.C.A. Const.Amend. 14.

**[20] Criminal Law** 🗝1038.1(4)
110k1038.1(4) Most Cited Cases

Trial court's instruction that if prosecution failed to prove each of elements beyond reasonable doubt, it should find defendant not guilty, did not constitute plain error by requiring jury to convict unless it found prosecution had failed to prove all elements, in trial for kidnapping, sexual assault, and accessory to crime; jury was also instructed that defendant was not guilty if prosecutor failed to prove any one or more of elements beyond reasonable doubt.

**[21] Criminal Law** 🗝1038.1(2)
110k1038.1(2) Most Cited Cases

**[21] Criminal Law** 🗝1038.3
110k1038.3 Most Cited Cases

Where counsel fails to object or tender instructions on the omitted issues, appellate courts will consider only plain error in the giving of, or failure to give, pertinent instructions.

**[22] Criminal Law** 🗝1030(1)
110k1030(1) Most Cited Cases

Plain error is grave error that seriously affects the substantial rights of the accused.

**[23] Criminal Law** 🗝1030(1)

110k1030(1) Most Cited Cases

Plain error is an error that is both obvious and substantial.

**[24] Criminal Law** 🗝1134(3)
110k1134(3) Most Cited Cases

The appropriate standard of review for an ambiguous instruction is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

**[25] Criminal Law** 🗝822(1)
110k822(1) Most Cited Cases

In reviewing a challenge to an allegedly ambiguous instruction, courts are required to consider the instructions as a whole, and there is no error if the instructions, taken together, adequately inform the jury of the law.

Ken Salazar, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge MARQUEZ.

*1 Defendant, Sonny Lee, appeals the judgment of conviction entered on jury verdicts finding him guilty of second degree kidnapping, two counts of first degree sexual assault, and accessory to a crime. We affirm.

Defendant was one of six men who kidnapped and sexually assaulted a woman in Boulder County in 1999. After his arrest, defendant was transferred to the Adams County jail for the purpose of recording his telephone conversations because, as a suspected gang member, he posed a security threat for possible retaliation against the witnesses and because he had stated to an inmate that he would contact people on the outside to help him escape.

Defendant moved to disqualify the district attorney, contending that her campaign remarks would deny him a fair trial because a jury would assume she would prosecute only a meritorious case. The trial court denied this motion, but granted defendant's motion for change of venue, and the case was transferred to Mesa County.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

I.

Defendant contends the trial court erred by denying his motion to suppress wiretaps of his phone calls from the Adams County jail because they violated the federal and state wiretap statutes and the prosecution failed to prove that he consented to the wiretaps. We disagree.

A.

[1] As a threshold matter, we note that defendant relies on certain state and federal statutes in his brief on this issue. Defendant concedes that the argument about the state wiretap statute was not raised before the trial court. Thus, we decline to address the state statute here. *See People v. Inman,* 765 P.2d 577 (Colo.1988)(appellate review of a suppression ruling is limited to the legal bases set forth in the trial court's ruling and not necessarily the grounds alleged in the motion); *People v. Gee,* 33 P.3d 1252 (Colo.App.2001)(accord).

B.

[2] Because defendant had no reasonable expectation of privacy, we also reject his contention of failure to prove consent.

When reviewing a trial court's suppression order, we defer to its findings of fact, but review its conclusions of law de novo. We must determine whether the trial court applied the correct legal standards to the facts of the case and whether sufficient evidence in the record supports its legal conclusions. *People v. Haley,* 41 P.3d 666 (Colo.2001).

[3] Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable. *People v. Hill,* 929 P.2d 735 (Colo.1996).

[4] However, the touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

[5][6] In the absence of a reasonable expectation of privacy, law enforcement officials are free to conduct a warrantless search notwithstanding whether the search is also justified by exigent circumstances or some other exception to the warrant requirement of the Fourth Amendment. Prisoners have little, if any, reasonable expectation of privacy while incarcerated. *People v. Salaz,* 953 P.2d 1275 (Colo.1998); *see United States v. Peoples,* 71 F.Supp.2d 967 (W.D.Mo.1999)(curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security); *see also People v. Blehm,* 44 Colo.App. 472, 623 P.2d 411 (1980)(defendant had no justifiable expectation that her conversations in jail with her husband were private).

*2 [7] An exception to the federal wiretap law, 18 U.S.C. § 2511(2)(c) (2000), is that it is not unlawful for law enforcement officials to intercept a wire, oral, or electronic communication where one of the parties to the communication has given prior consent to the interception. Furthermore, consent may be expressed or implied. *United States v. Peoples, supra.*

The essential issue is not whether the prosecution proved consent, but whether there is evidence in the record to support the trial court's findings of fact, and as long as there is support for them, we will not overturn those findings. *People v. Thomas,* 853 P.2d 1147 (Colo.1993); *see United States v. Hammond,* 286 F.3d 189 (4th Cir.2002)(the consent exception applies to prison inmates required to permit monitoring as a condition of using prison telephones).

[8] Here, the trial court properly applied the standard set forth in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that a Fourth Amendment violation occurs only if a defendant has a justifiable expectation of privacy. *See People v. Gallegos,* 179 Colo. 211, 499 P.2d 315 (1972); *People v. Palmer,* 888 P.2d 348 (Colo.App.1994).

Defendant does not dispute that his phone calls were from jail, and the trial court found from circumstantial evidence, including a video, a handbook, and posted signs, that defendant was aware that his telephone calls were monitored. The court also considered defendant's own recorded statements: "I think their phones here are recorded," and "It's not a good idea to talk on the phone." The court noted the physical location of the telephones, which were extremely close to each other, with no walls or other barriers between them. There was also a door in the immediate vicinity of the telephones

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

through which other people could enter at any time. These factors undercut a reasonable expectation of privacy.

The trial court held that defendant's incarceration and the unreasonableness of any expectation of privacy in telephone calls from jail, especially when he received notice of the monitoring, precluded any relief.

We conclude that even if defendant did not consent, the court's determination that he had no reasonable expectation of privacy is supported by the record, and we will not disturb it on review.

II.

We also reject defendant's contention that the trial court erred in denying his motion to remove the prosecutor on the grounds that her bid for the elected office of district attorney had tainted the judicial proceedings.

Section 20-1-107(2), C.R.S.2002, provides, in relevant part, that a motion to disqualify a district attorney shall not be granted unless "the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial."

Prior to its amendment in 2002, and at the time the trial court here ruled, § 20-1-107 provided: "If the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend, the court having criminal jurisdiction may appoint a special prosecutor to prosecute or defend the cause." Colo. Sess. Laws 1977, ch. 214 at 858-59.

[9] The term "interested" in the prior statute was not defined or qualified. However, the supreme court interpreted the term to mean that disqualification is warranted when the district attorney has some involvement in the defendant's case such that the district attorney's ability to continue the prosecution fairly would be impaired. A showing of mere partiality is not sufficient. Allegations of interest must show a concern in the outcome of the matter such that the district attorney will either reap some benefit or suffer some disadvantage. *People v. C.V.,* 64 P.3d 272 (Colo.2003).

*3 [10] Under the prior statute, an appearance of impropriety has also been the basis for disqualification. An appearance of impropriety has

been defined as a circumstance where the district attorney has an interest in the matter aside from his or her professional responsibility of upholding the law. *People v. C.V., supra; see People v. Palomo,* 31 P.3d 879 (Colo.2001).

[11][12] The fundamental inquiry is whether disqualification appears reasonably necessary to ensure the integrity of the fact finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system. Trial courts have broad discretion in determining whether they should disqualify a district attorney from prosecuting a particular case. A court commits an abuse of discretion if it makes a manifestly arbitrary, unreasonable, or unfair decision. *People v. Palomo, supra; see People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

[13] Because an appearance of impropriety is almost entirely dependent on context, determinations grounded on this legal basis must turn on the circumstances of each particular case. Whether an appearance of impropriety exists and the remedy therefor are uniquely questions for the trial court and must be committed to that court's broad discretion. *People v. County Court,* 854 P.2d 1341 (Colo.App.1992).

[14] While defendant here contends that there was actual impropriety in the district attorney's role in transferring him to Adams County for the purpose of recording his phone calls, that contention was not raised before the trial court and will not be addressed here.

[15] Further, the record supports a determination that there was no appearance of impropriety. Although the trial court denied defendant's motion to remove the district attorney, it granted his motion for change of venue. On appeal, defendant does not identify any manner, other than pretrial publicity related to the campaign, in which his trial was unfair because of the participation of this particular district attorney. The change of venue would have cured any publicity problem. Additionally, the district attorney's potential political benefit from defendant's conviction is not sufficiently distinct from her professional responsibilities to warrant any finding of an improper interest in the outcome of the case. *See People v. Dist. Court,* 189 Colo. 159, 538 P.2d 887 (1975)(rejecting speculation that potential political gain would cause district attorney, who was a candidate for mayor, to overextend effort to convict).

Therefore, the trial court did not abuse its discretion.

### III.

[16] Defendant next contends that the trial court violated a prospective juror's constitutional right to serve as a juror and violated defendant's constitutional right to equal protection when the trial court granted the prosecution's challenge for cause because the juror, who could speak and understand English, could not read or write English. We are not persuaded.

**\*4** Section 13-71-105(2)(b), C.R.S.2002 provides that a prospective juror shall be disqualified based on the inability to read, speak, and understand the English language.

[17] The fact finder, at a minimum, must be able to understand all of the evidence presented and evaluate that evidence in a rational manner. *People v. Hayes,* 923 P.2d 221 (Colo.App.1995).

[18] Whether a prospective juror should be disqualified under the statute is a question of fact for resolution by the trial court. *People v. Duncan,* 33 P.3d 1180 (Colo.App.2001); *People v. Rodriguez,* 638 P.2d 802 (Colo.App.1981).

Here, the trial court's determination that the prospective juror could not read English is supported by the record. The juror informed the court that he was unable to read or write English and would not understand the written exhibits. Under the statute, the juror was not qualified for service. *See People v. Rodriguez, supra.*

In the trial court, defendant objected to disqualification of the juror, arguing that under the Constitution each citizen has a right to serve and should be accommodated. He did not specifically challenge the constitutionality of § 13-71-105(2)(b). Nor did he raise the statutory construction issue articulated in his reply brief. Therefore, we address only the question of a juror's constitutional right to serve.

Defendant relies on *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), for the proposition that mandatory presumptions violate the Fourteenth Amendment. He argues that the blanket exclusion of people who understand English, but do not read or write English, violates the constitutional rights of those people. However, both cases addressed the constitutionality of jury instructions involving a presumption that could have been understood to shift the burden of persuasion. Here, we are concerned with a juror's qualifications, not instructions.

[19] Further, the United States Constitution does not forbid the states to prescribe relevant qualifications for their jurors. The states remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. *Carter v. Jury Comm'n,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *see Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)(states may prescribe relevant qualifications for their jurors).

Thus, we perceive no error.

### IV.

[20] Finally, we reject defendant's contention that the trial court committed structural error by giving improper instructions on reasonable doubt.

[21][22][23] Where, as here, counsel fails to object or tender instructions on the omitted issues, appellate courts will consider only plain error in the giving of, or failure to give, pertinent instructions. Plain error is grave error that seriously affects the substantial rights of the accused. It is an error that is both obvious and substantial. *People v. Stewart,* 55 P.3d 107 (Colo.2002); *see Wilson v. People,* 743 P.2d 415 (Colo.1987). Structural error does not apply here. *See Griego v. People,* 19 P.3d 1 (Colo.2002).

**\*5** [24][25] The appropriate standard of review for an ambiguous instruction is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Further, we are required to consider the instructions as a whole, and there is no error if the instructions, taken together, adequately inform the jury of the law. *People v. Sherman,* 45 P.3d 774 (Colo.App.2001).

Here, the elements of the crime instructions included the following: "After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty of [the charged crime]." *See* CJI-Crim. 11:04, 12:01 (1983).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Defendant argues that by using the word "each" in the elemental instructions, the trial court in effect told the jury that it must convict unless it found that the prosecution had failed to prove all the elements. We disagree.

Divisions of this court have rejected a similar argument. *See People v. Howard,* --- P.3d ----, 2003 WL 21755956 (Colo.App. No. 01CA2465, July 31, 2003); *People v. Bogle,* 743 P.2d 56 (Colo.App.1987); *People v. Freeman,* 739 P.2d 856 (Colo.App.1987). We find those holdings persuasive and apply them here.

The trial court also provided the jury with an instruction on the presumption of innocence, which stated in pertinent part:

> The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.
> ....
> If you find from the evidence that each and every element has been proven beyond a reasonable doubt, you will find the defendant guilty. If you find from the evidence that the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt you will find the defendant not guilty.

*See* CJI-Crim. 3:04 (1983).

In addition, the jury was instructed: "No single rule describes all the law which must be applied. Therefore, the rules must be considered together as a whole." Absent evidence to the contrary, we presume that the jury understood and heeded the trial court's instructions. *Copeland v. People,* 2 P.3d 1283 (Colo.2000).

Thus, we hold that the elemental instructions here, considered in conjunction with the rest of the trial court's instructions, do not rise to the level of plain error.

The judgment is affirmed.

Judge ROY and Judge HUME [FN*] concur.

> FN* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2002.

2003 WL 22208357 (Colo.App.)

END OF DOCUMENT

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 22 of 35

*People v. Camacho,* 1 Guam Rep. 501 (1975)

## THE PEOPLE OF THE TERRITORY OF GUAM, Plaintiff

### v.

## CARLOS G. CAMACHO; KURT S. MOYLAN; FRANK F. BLAS; JOSE Q. TAITANO; MELVIN S. ILAGAN; JOHN D. GILLIAM; MARIA C. DUENAS, and JOE T. SAN AGUSTIN; GREGORIO SANCHEZ, and JOSE B. SARMIENTO and AUGUSTO M. GOGUE, Defendants

### Criminal Nos. 41F-75, 47F-75, 46F-75, 44F-75, 37F-75, 42F-75, 40F-75, 39F-75, 45F-75, 38F-75, 43F-75

### Supreme Court of Guam

### November 24, 1975

Motion to dismiss indictments filed under Independent Special Prosecutor Act of 1974, which provided for a special prosecutor independent of the executive branch and appointed by the Chief Judge of the Superior Court. The Supreme Court, Hefner, Associate Justice by designation, held the act to be a usurpation of the executive power and invalid under the separation of powers doctrine of the Organic Act of Guam.

#### 1. Constitutional Law—Bills of Attainder

Where defendants claiming Independent Special Prosecutor Act of 1974 was a Bill of Attainder were an ascertainable class and the act may have recited sufficient activities deemed reprehensible, but there was no declaration of guilt or imposition of legislative judgment and verdict or prescription of punishment, in short, where there was no trial by legislature, there was no Bill of Attainder. (Public Law 12-173)

#### 2. Courts—Supreme Court

For purposes of hearing motion to dismiss defendants' indictments, Supreme Court of Guam was not an appellate court.

#### 3. Dismissal and Nonsuit—Neglected Claims—Determination

On motion to dismiss indictments, claim judge abused his discretion in appointment of special prosecutor could not be determined one way or the other where no testimony was taken on the matter and defense counsel did not advance the claim further.

#### 4. Organic Act of Guam—Separation of Powers Doctrine—Prosecutorial Functions

The prosecution of offenses is a purely executive branch function that must be carried out by an official of that branch, and legislative power is the authority to make laws, not to enforce them or appoint the agents charged with enforcement, and public law providing for a special prosecutor independent of the executive branch, appointed by the judicial

501

branch through the Chief Judge of the Superior Court, who also had duty to set the salary, violated the separation of powers doctrine as set forth in the Organic Act of Guam and was an invalid usurpation of the executive branch's power by the legislative branch; and indictments filed under the act would be dismissed. (Public Law 12–173)

---

Before RAKER, *Associate Justice* by designation, WEEKS, *Associate Justice* by designation, and HEFNER, *Associate Justice* by designation

HEFNER, *Associate Justice* by designation

### JUDGMENT

The various defendants have joined in a motion to dismiss the indictments filed against them on several grounds. The basic issue to be determined is whether Public Law 12–173, the Independent Special Prosecutor Act of 1974, is in conflict with the Organic Act of Guam. After a review of the points and authorities submitted, all of the grounds except one can be summarily dealt with.

[1] The defendants assert that Public Law 12–173 is a Bill of Attainder and therefore violates 48 U.S.C. Sec. 1421b(j) and the United States Constitution, Article I, Section 10. It is clear that all the elements necessary to find a bill of attainder are not present. The defendants may be an ascertainable class and Public Law 12–173 may recite sufficient activities deemed reprehensible but there is no declaration of guilt, or imposition of legislative judgment and verdict or a prescription of punishment. In short, there has been no trial by Legislature.

The defendants next argue that this Court does not exist pursuant to *Agana Bay Development Company (Hong Kong) Ltd. v. Supreme Court of Guam*, Civil Case No. 74-177.

[2] This Court, at the hearing on August 23, 1975, made its position clear. The Supreme Court of Guam is not an

502

appellate court for the purpose of this hearing. The effect of the *Agana Bay* case, supra, is limited by the decision of Judge Curtis, United States District Judge, in his opinion in Civil Case 75-049, *Sanchez, et al. v. Supreme Court of Guam*. See also *Look v. Government of Guam*, 497 F.2d 669, 700 (9th Cir. 1974).

[3] Thirdly, the defendants claim the Chief Judge of the Superior Court abused his discretion in the appointment of Mr. St. Pierre as Special Prosecutor. Since no testimony was taken and counsel for the defendants have not advanced this ground further, there is nothing upon which this Court can determine one way or the other whether this argument has merit.

Of major concern to the Court is whether the Special Prosecutor Act, Public Law 12-173, violates the basic concept of the separation of powers and therefore violates the Organic Act of Guam.

The pertinent provisions of the law challenged by the defendants are the following:

A Special Prosecutor independent of the Executive Branch of government should be properly appointed by the Judicial Branch of government, and Section 6 of the Organic Act of Guam (Chapter 8A, Title 48, U.S.C.A.) provides authority for the Legislature to vest such appointment other than in the Governor of Guam. Public Law 12-173, Section 2(d).

The establishment of an independent Special Prosecutor is an appropriate exercise by the Legislature of the power under Section 11 of the Organic Act of Guam which extends to "all subjects of local application" in that all such activities are alleged to have occurred in Guam. Public Law 12-173, Section 2(e).

The Chief Judge of the Superior Court of Guam is authorized and directed to appoint a Special Prosecutor and a Deputy Special Prosecutor with the experience, abilities and reputation necessary to perform the responsibilities in these offices who shall have the duties and powers prescribed by this Act. The Deputy Special Prosecutor shall have such duties as are assigned by the Special Prosecutor and in his absence shall serve as the Special Prosecutor.

503

The Chief Judge shall establish the salaries for the Special Prosecutor and the Deputy Special Prosecutor. Public Law 12–173, Section 3 as amended.

The Organic Act of Guam, 48 U.S.C. Sec. 1421 et seq., provides in part:

The government of Guam shall consist of three (3) branches, Executive, Legislative and Judicial . . . . Sec. 1421a.

The executive power of Guam shall be vested in an executive officer whose official title shall be the "Governor of Guam."

> \*　　　　　　\*　　　　　　\*

The Governor shall have general supervision and control of all the departments, bureaus, agencies and other instrumentalities of the executive branch of the government of Guam. . . . He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam, and shall commission all officers that he may be authorized to appoint. He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam. Sec. 1422.

The Governor shall, except as otherwise provided in this Act or the laws of Guam, appoint, by and with the advice and consent of the Legislature, all heads of executive agencies and instrumentalities. Sec. 1422c(a).

All officers shall have such powers and duties as may be conferred or imposed on them by law or by executive regulation of the Governor not inconsistent with any law. Sec. 1422c(b).

The Governor shall, from time to time, examine the organization of the executive branch of the government of Guam, and shall determine and carry out such changes therein as are necessary to promote effective management and to execute faithfully the purposes of this Act and the laws of Guam. Sec. 1422c(c).

The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this Chapter and the laws of the United States applicable to Guam. Sec. 1423(a).

It is clear, indeed uncontested, that the Organic Act of Guam does establish the traditional three branches of government and the concept of separation of powers.

Both the Special Prosecutor and the defendants agree that prosecution is an executive function. *United States v. Nixon*, 94 S.Ct. 3090.

The Special Prosecutor argues that if the Legislative Branch does not have the power to authorize and direct a member of the Judicial Branch to appoint a prosecutor "or for that matter, any other executive officer," then the judiciary would have no power to appoint any judicial or non-judicial officer and therefore the courts could not operate. The Special Prosecutor then relies upon § 1422 of the Organic Act to support the conclusion that the Act allows the Legislative Branch to appoint officers and employees of the Executive Branch.

The first matter which must be decided is whether the vesting of the appointment of the Special Prosecutor in a court is a valid exercise of the legislative power of the Guam Legislature.

The same issue confronted the United States House of Representatives when it considered House Resolution 11401 which would have appointed a three judge panel to appoint a Special Prosecutor for the so-called "Watergate affair". Legal scholars as well as members of the House of Representatives differed as to the constitutionality of such an appointment. The U.S. House of Representatives did not pass House Resolution 11401 and solved the problem in another manner and was able to avoid the problem of the validity of such an appointment. The Court in *Nader v. Bork*, 366 F.Supp. 104 (D.C. 1973), deplored the suggestion of the appointment of a Special Prosecutor by the courts at page 109 but no final judicial determination was made as to its validity.

There are two basic differences between the United States Constitution and the Organic Act of Guam in relation to

505

the power of the Legislative Branch to appoint Executive Branch officials.

First, Article II, Section 2, Clause 2 of the United States Constitution provides:

> He [the President] shall have power by and with the Advice and Consent of the Senate to make Treaties, provided two-thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointment are not herein otherwise provided for, and which shall be established by Law; *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.* (Emphasis added.)

For appointment to the Executive Branch by someone other than the Governor, the Special Prosecutor relies on 48 U.S.C. Sec. 1422 which does not have comparable provisions as emphasized above and specifically does not vest appointment power in the courts of law.

Secondly, the doctrine of separation of powers has developed by case law and interpretation of the United States Constitution. It does not specifically set up the three branches of Government. However, the Organic Act of Guam, in 48 U.S.C. Sec. 1421a, does this.

By reading the Organic Act of Guam in its entirety and comparing it with the United States Constitution, the conclusion is inescapable that the Guam Legislature is more limited in Executive Branch appointments than that reserved to the United States Congress. Not only does the Organic Act specifically establish the three branches, but it also spells out the power of the Governor as head of the Executive Branch. If one was to conclude from 48 U.S.C. 1422 and 1422(a) that the Guam Legislature had unlimited rights of appointment and removal of Executive Branch officers and employees, the entire concept of separation of

Case 1:04-cv-00035    Document 22    Filed 07/27/2004    Page 29 of 35

powers and the authority granted the Governor would be meaningless. 48 U.S.C. 1423(a) makes it clear that the Legislative Branch does not have that unlimited right of appointment.

Therefore, this Court must look to the specifics of Public Law 12–173 and apply the Organic Act of Guam with all the significance and reasoning for the separation of powers in mind.

One of the earliest United States Supreme Court cases dealing with the appointment of executive officials by courts of law is *Ex parte Siebold*, 100 U.S. 371 (1879). The court sustained the appointment of supervisors of congressional elections by judges, pursuant to legislation enacted by the United States Congress. The Court discussed the application of Article II, Section 2, Clause 2 of the Constitution. Even though this clause provided clear authority for the Legislative Branch to vest the appointment of executive officers in the courts of law, the court considered whether the Legislative Branch had the power to impose on the courts the appointments.

The Court stated:

> It is no doubt usual and proper to vest the appointment of inferior officers in that department of the government, executive or judicial, or in that particular executive department to which the duties of such officers appertain. ... But as the Constitution stands, the selection of the appointing power ... is a matter resting in the discretion of Congress.

In discussing some older cases where the courts declined to exercise certain duties imposed by Congress, the Court stated:

> The law of 1792 which required the circuit courts to examine claims to revolutionary pensions, and the law of 1849, authorizing the district judge of Florida to examine and adjudicate upon claims for injuries suffered by the inhabitants of Florida from the American army in 1812, were rightfully held to impose upon the courts

507

powers not judicial, and were therefore, void. But the duty to appoint inferior officers, when required thereto by law, is a constitutional duty of the courts; and in the present case there is no such incongruity in the duty required as to excuse the courts from its performance, or to render their acts void. It cannot be affirmed that the appointment of the officers in question could, with any greater propriety, and certainly not with equal regard to convenience, have been assigned to any other depositary of official power capable of exercising it. Neither the President, nor any head of department, could have been equally competent to the task.

At first blush one may consider *Siebold* as authority for the appointment of a special prosecutor by the courts. However, the "incongruity" which concerned the United States Supreme Court also concerns this Court when considering the express establishment of the three branches of Government (Sec. 1421a), the vesting of the executive power in the Governor and that "He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." (From Sec. 1422)

As pointed out in *United States v. Cox*, 342 F.2d 167 (1965), a prosecutor acts as an agent of the executive in carrying out the executive's constitutional duty of enforcement of the laws.

The normal way by which an executive officer is designated is by executive appointment. Once the appointment is vested in the courts it is suspect. Public Law 12–173 not only vests the appointment power in the Chief Judge of the Superior Court of Guam but it also states that the Chief Judge shall establish the salaries for the appointees (Special Prosecutor and the Deputy Special Prosecutor). The Chief Judge shall fill any vacancy and pursuant to Section 12, the Chief Judge of the Superior Court has the sole and exclusive power to dismiss the Special Prosecutor.

It must be noted that none of the statutes considered in the cases referred to herein, which deal with the appoint-

508

ment of executive officials by the Judiciary, approach the scope and authority of Public Law 12–173.

One does not need to ponder long on how the Legislative Branch could effectively decimate the Executive Branch by designating a member of the Judicial Branch with the powers given in Public Law 12–173. If a judge is given the power to appoint and remove executive officials along with the power to establish the salaries from funds appropriated by the Legislature, the Legislature then could reduce the funds appropriated for the Executive Branch and divert the funds to the judicially appointed officials.

Support for Public Law 12–173 cannot be found in using the examples cited by the Special Prosecutor. It is true that 28 U.S.C. 546 provides for the appointment by the courts of United States attorneys. The statute was sustained in *United States v. Solomon*, 216 F.Supp. 835 (S.D.N.Y. 1963), but the power given to the District Courts by the law is only an interim one to fill any vacancy in the office. The President, by filling the vacancy, can divest the appointee of his job. In addition, the President is empowered instantly to remove any United States attorney whom the court may appoint. *Solomon*, supra at page 843.

28 U.S.C. 565 provides for the appointment by the courts of the United States marshals. Once again this is to temporarily fill a post which is vacant until the vacancy is filled permanently. *Siebold*, supra at page 397.

Under the Criminal Justice Act of 1964, as amended (78 Stat. 552, 18 U.S.C. 3006A), the courts appoint defense counsel for a particular case where the defendant cannot afford counsel. A review of Subsection (b) of § 3006A demonstrates the great difference in the appointment process there and the one provided for in Public Law 12–173. 18 U.S.C. 3006A simply cannot be used as support for Public Law 12–173.

The appointment of defense counsel on a case by case

509

basis by the court is far removed from the appointment of a prosecutor who serves for a term of at least a year, whose salary is fixed by the court and whose removal and discharge is vested in the court. The ethical problem of such a prosecutor appearing in the appointing judge's court is obvious.

Another problem exists with Public Law 12–173. The Court must look to what the appointee does and what his function is, even assuming he is properly appointed. An appointment by itself may not violate the separation of powers doctrine but once the appointee begins to function, there may be such a violation unless there is some authority to authorize the activity.

In the case of *United States v. Nixon*, supra, a Special Prosecutor represented the Government. Article II, Section 2 of the United States Constitution authorizes Congress to vest in the Attorney General the power to conduct the criminal litigation of the United States Government. 28 U.S.C. Sec. 516. Congress also vested in the Attorney General the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533. Pursuant thereto, the Attorney General delegated the authority to represent the United States in the Watergate matter to a Special Prosecutor.

Thus, in the Watergate Special Prosecutor cases, a clear line of authority traceable to the Constitution of the United States is evident, whereby the Special Prosecutor could support his existence and activity from the Legislative Branch. In other words, the appointment of the Special Prosecutor was proper pursuant to 28 U.S.C. 533 and the activity to be engaged in, the prosecution of the cases, was authorized by 28 U.S.C. Sec. 516.

As pointed out above, the Guam Organic Act does not have a provision similar to Article II, Section 2 of the United States Constitution. Rather, the Organic Act states

that the Governor shall have general supervision and control of all departments and agencies of the Executive Branch (48 U.S.C. Sec. 1422) and he shall, except as otherwise provided in the Organic Act of the <u>Laws of Guam</u>, appoint all heads of the executive agencies and instrumentalities with the advice and consent of the Legislature. The issue then is whether the exception underlined above authorizes the appointment of the Special Prosecutor and the activities resulting therefrom.

The legislative power extends to all subjects of legislation of local application not inconsistent with the provisions of the Organic Act. 48 U.S.C. Sec. 1423a.

Public Law 12–173 prescribes the duties, powers and functions of the Special Prosecutor. Simply stated, he is to investigate and prosecute alleged crimes committed by certain persons. As stated in the Special Prosecutor's points and authorities in opposition to defendants' motion for dismissal, the Special Prosecutor is "to invoke the criminal process as provided under the Rules of Criminal Procedure and the Organic Act."

Therefore, it is clear that the Special Prosecutor is to perform the same or substantially similar activity as the Attorney General of Guam who is appointed by the Governor with the advice and consent of the Legislature. Indeed, Public Law 12–173, Section 6(6), affirms this.

At the same time that the Special Prosecutor is exercising his quasi Attorney General powers, he is declared to be independent of the Executive Branch (P.L. 12–173, Section 2(c) and (d)) and shall have exclusive jurisdiction over the offenses alleged to have been committed by the defendants. (P.L. 12–173, Section 5)

[4] Such a prosecutor cannot, consistent with the separation of powers doctrines, perform basic prosecutive functions such as signing indictments, granting immunity, trying cases in the courts and making other basic prosecu-

511

tive judgments. The fact remains that the prosecution of offenses is a purely Executive Branch function that must be exercised by an official of that Branch. Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions. *Springer v. Philippine Islands*, 277 U.S. 189, 202 (1928). See also *United States v. Cox*, supra, where the court stated that the United States attorney is an executive official of the Government and he exercises discretion whether there should be prosecution in a particular case. The court went on to say: "It follows as an incident of the constitutional separation of power, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions."

The incongruity which the United States Supreme Court spoke about in *In re Siebold*, supra, is apparent.

We therefore find that Public Law 12–173 is in violation of the Organic Act of Guam. Not only is the appointment process indicated therein invalid but the functions to be performed by the Special Prosecutor run afoul of the intent of the Organic Act. The doctrine of separation of powers has been violated.

Since the indictments against the defendants are the fruit of the attempted usurpation of power by the Legislative Branch, they must fall from the improperly planted tree, Public Law 12–173.

The indictments of the defendants shall be and the same are hereby dismissed.

Case 1:04-cv-00035    Document 22    Filed 07/27/2005    Page 35 of 35